Daniel S. Ruzumna (DR-2105)
Krista Caner (KC-7358)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone 212-336-2000
Facsimile 212-336-2222

*Attorneys for Claimant Alavi Foundation*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                     :

                        v.                     :

ALL RIGHT, TITLE, AND INTEREST OF ASSA :
CORPORATION, ASSA COMPANY LIMITED,
AND BANK MELLI IRAN IN 650 FIFTH             :
AVENUE COMPANY, INCLUDING BUT NOT
LIMITED TO THE REAL PROPERTY AND          :    Civil Action No. 08 Civ. 10934 (RJH)
APPURTENANCES LOCATED AT 650 FIFTH
AVENUE, NEW YORK, NEW YORK, WITH          :
ALL IMPROVEMENTS AND ATTACHMENTS
THEREON, *ET AL.*,                           :

                Defendants *in rem*.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### ALAVI FOUNDATION'S VERIFIED CLAIM AND
### STATEMENT OF INTEREST IN DEFENDANT PROPERTIES

PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
212-336-2000

Petitioner Alavi Foundation (the "Foundation") hereby makes this formal claim and asserts its interest in certain of the Defendant Properties (collectively referred to as the "Contested Alavi Properties"). The Foundation claims and asserts an interest in the premises known and described as:

- 650 Fifth Avenue, New York, New York ("650 Fifth Avenue" or the "Building");

- 2313 South Voss Road, Houston, Texas (the "Texas Property");

- 55-11 Queens Boulevard, Queens, New York, Block 1325 Lots 1, 6, 7, and 8 (the "Queens Property");

- 4836 Marconi Avenue, Carmichael, California (the "California Property");

- 4204 Aldie Road, Catharpin, Virginia and 4300 Aldie Road, Catharpin Virginia (collectively, the "Virginia Property"); and

- 7917 Montrose Road, Rockville, Maryland and 8100 Jeb Stuart Road, Rockville Maryland (collectively, the "Maryland Property").

The Foundation claims and asserts an interest in the funds on deposit at:

- JP Morgan Chase Bank, N.Y., account number 230484468 ("C68 Account");

- JP Morgan Chase Bank, N.A., account number 230484476 ("C76 Account");

- Sterling National Bank, account number 3802032216 ("S16 Account");

- Sterling National Bank, account number 3802032201 ("S01 Account"); and

- Sterling National Bank, account number 3852524414 ("S14 Account").

And the Foundation claims and asserts an interest in the 650 Fifth Avenue Company (the "Fifth Avenue Company" or the "Partnership"). For the reasons set forth below, the Court should order that a hearing be held to adjudicate the validity of its claims and, after the hearing is concluded, hold that the Foundation has superior right, title and interest in each and every one of the Contested Alavi Properties as compared to the Government.

1

**Relevant Background**

1.      The Foundation is a New York not-for-profit corporation with its only place of business in New York. The Internal Revenue Service has determined the Foundation to be a charitable organization as described in § 501(c)(3) of the Internal Revenue Code.

2.      The Foundation was originally established by the former Shah of Iran to conduct charitable work in the United States, and it was duly organized pursuant to New York's Not-For-Profit Corporation Law in 1973. The Foundation does not have any owners, members or shareholders as a matter of New York law. *See* N.Y. Not-for-Profit Corp. Law ("N-PCL") §§ 501, 601 (McKinney Supp. 2008); *see also Manhattan Eye, Ear & Throat Hosp. v. Spitzer*, 715 N.Y.S.2d 575, 592-593 (N.Y. Sup. Ct. 1999).

3.      Since its inception, the Foundation has made all necessary and appropriate federal tax filings and reports. These filings, called Form 990-PFs, have identified all sources of the Foundation's revenue and have specifically itemized all of the Foundation's non-nominal charitable donations since its inception. Moreover, the Foundation has attempted to cooperate and assist the U.S. government whenever requested. For instance, following a request from the U.S. Department of Justice in 1993, the Foundation provided an affidavit to the United States-Iran Claims Tribunal at the Hague in support of the Department's position that the Foundation was independent and distinct from Iran.

4.      Consistent with its status as a New York not-for-profit corporation, the Foundation has: (a) made required annual filings with New York's Attorney General; (b) met with representatives of New York's Attorney General's Office from time-to-time to apprise them of decisions and activities of the Foundation; and (c) sought and obtained approval from the Attorney General and justices of New York's Supreme Court for actions taken by the Foundation. The Foundation is in good standing with the New York Secretary of State.

2

5.    Today, the Foundation's mission is to promote and support Islamic culture and the study of Persian language, literature and civilization in the United States, and to promote interfaith dialogue and multicultural activities. The Foundation fulfills this mission by financially supporting charitable and philanthropic causes through educational, religious, and cultural programs conducted almost exclusively in the United States. These activities include making grants to U.S. and Canadian colleges and universities; donations to U.S.-based schools teaching the Persian language and to Islamic centers; and grants to Persian art and literature programs in the United States.

6.    The Foundation also fulfills its mission by allowing a number of § 501(c)(3) charitable organizations to use properties owned by the Foundation for religious services and schools rent-free. Properties that are owned by the Foundation and used for this purpose include the Texas Property, the Queens Property, the Maryland Property, and the California Property.

7.    The Foundation's operations are funded in large part by the rental income generated from its partnership interest in the 650 Fifth Avenue Company, which in turn owns and operates the building located at 650 Fifth Avenue, New York, New York.

8.    The Foundation maintains its own bank accounts and prepares its own accounting and financial information. The Foundation pays its own salaries and expenses with the exception that a small portion of the Foundation's salaries are paid for by the Fifth Avenue Company based on work performed on the Fifth Avenue Company's behalf. There is no commingling of funds between the Foundation and the Iranian Government. The Foundation is responsible for its own debts and the Iranian Government has not guaranteed the Foundation's debts. The Foundation does not share offices with the Iranian Government or any agency or

3

representative thereof.

## Interests in the Contested Alavi Properties

9.      The Foundation has valid claims to and superior right, title and interest in the Contested Alavi Properties because they do not constitute and are not derived from proceeds of a violation of the International Emergency Economic Powers Act ("IEEPA") or the proceeds of a violation of any other statute, and were not involved in a transaction or attempted transaction in violation of the money laundering statutes, nor traceable to such property.

### A.      650 Fifth Avenue and the Fifth Avenue Company

10.      The Foundation acquired the property at 650 Fifth Avenue subject to a $12,000,000 mortgage in 1974.  To pay off this mortgage and to obtain funding for new construction on the site, the Foundation obtained two mortgages from Bank Melli in the total amount of $42,000,000 in 1975.  Over the next few years, the building that now stands at 650 Fifth Avenue was constructed using the funds from the mortgages.

11.      Through October 1989, the Foundation, as sole owner of 650 Fifth Avenue, used the rental proceeds from the Building to manage the Building, make mortgage payments, and fund its charitable activities.  Because the Building owned by the Foundation was debt financed, the Foundation, whose revenue would have otherwise been free of federal taxes as a § 501(c)(3) entity, also used the rent proceeds to make all required tax payments during this period of time.

12.      On or about October 31, 1989, the Foundation transferred its ownership interest in the building at 650 Fifth Avenue to the newly-formed Fifth Avenue Company in exchange for a 65% partnership interest in the Fifth Avenue Company.  On or about the same date, Assa Corporation, a New York corporation that was reportedly owned by a Channel Islands corporation called Assa Company Limited, transferred approximately $44,800,000 to the Fifth

4

Avenue Company in exchange for a 35% interest in the Partnership. The Partnership used the $44,800,000 and approximately $1,077,077 from the Foundation to pay in full the outstanding principal and accrued interest of the mortgages on 650 Fifth Avenue held by Bank Melli. These transactions, which resulted in tax savings to the Foundation, were completed with all necessary notice and approval by the Internal Revenue Service, the New York Attorney General's Office, and the Supreme Court of New York.

13. Since October 1989, the Fifth Avenue Company, a duly authorized partnership organized under the laws of New York with its only place of business in New York, New York, has been the sole owner of the Building at 650 Fifth Avenue.

14. In August 1994, Assa Corporation purchased an additional 5% interest in the Fifth Avenue Company from the Foundation for $5,000,000. Since 1994, the Foundation has held a 60% interest and Assa Corporation has held a 40% interest in the Fifth Avenue Company.

15. As the managing partner of the Fifth Avenue Company, the Foundation has worked with the outside property management companies retained by the Partnership to manage and operate the Building. Assa Corporation has not actively participated in the management or operations of the Fifth Avenue Company or any of its assets. Accordingly, in addition to ownership distributions, which were made to both the Foundation and Assa Corporation, the Foundation has received a monthly management fee from the Partnership.

16. The Foundation's interest in the Fifth Avenue Company and any indirect partnership interest in 650 Fifth Avenue arose in and has remained since October 1989, or earlier, i.e., years before any of the alleged conduct that purportedly gives rise to forfeiture. The Foundation's interest in the Fifth Avenue Company and any indirect partnership interest in 650 Fifth Avenue are not subject to forfeiture because they do not constitute and are not derived from

5

proceeds of an IEEPA violation or a violation of any other statute, and were not involved in a transaction or attempted transaction in violation of the money laundering statutes, nor traceable to such property.

**B.    Other Real Properties**

17.    The Texas Property is not subject to forfeiture to the United States. The Foundation has been the legal owner of the Texas Property since in or about 1988 and has permitted other § 501(c)(3) organizations to use it for lawful purposes since that time. The Texas Property does not constitute and is not derived from proceeds of an IEEPA violation or a violation of any other statute, and was not involved in a transaction or attempted transaction in violation of the money laundering statutes, nor traceable to such property.

18.    The Queens Property is not subject to forfeiture to the United States. The Foundation has been the legal owner of Lot 1 of the Queens Property since in or about 1991, and has permitted other § 501(c)(3) organizations to use it for lawful purposes since that time. The Foundation has been the legal owner of Lots 6, 7, and 8 of the Queens Property since in or about 1997 and has permitted other § 501(c)(3) organizations to use it for lawful purposes since that time. The Queens Property does not constitute and is not derived from proceeds of an IEEPA violation or a violation of any other statute, and was not involved in a transaction or attempted transaction in violation of the money laundering statutes, nor traceable to such property

19.    The California Property is not subject to forfeiture to the United States. The Foundation has been the legal owner of the California Property since in or about 1989 and has permitted other § 501(c)(3) organizations to use it for lawful purposes since that time. The California Property does not constitute and is not derived from proceeds of an IEEPA violation or a violation of any other statute, and was not involved in a transaction or attempted transaction in violation of the money laundering statutes, nor traceable to such property.

20.    The Virginia Property is not subject to forfeiture to the United States. The Foundation has been the legal owner of the Virginia Property since in or about 1990 and has maintained it as an investment since that time. The Virginia Property does not constitute and is not derived from proceeds of an IEEPA violation or a violation of any other statute, and was not involved in a transaction or attempted transaction in violation of the money laundering statutes, nor traceable to such property.

21.    The Maryland Property is not subject to forfeiture to the United States. The Foundation has been the legal owner of the Maryland Property located at 7917 Montrose Road since in or about 1981 and has permitted other § 501(c)(3) organizations to use it for lawful purposes since that time. The Foundation has been the legal owner of the Maryland Property located at 8100 Jeb Stuart Road since in or about 1984 and has permitted other § 501(c)(3) organizations to use it for lawful purposes since that time. The Maryland Property does not constitute and is not derived from proceeds of an IEEPA violation or a violation of any other statute, and was not involved in a transaction or attempted transaction in violation of the money laundering statutes, nor traceable to such property.

C.    **Bank Accounts**

22.    The Defendant Sterling National Bank accounts, numbered 3802032216 (the "S16 Account"), 3802032201 (the "S01 Account") and 3852524414 (the "S14 Account" or, collectively, the "Sterling Accounts"), were opened in the name of the Foundation, in or about May 2002, June 2002, and May 2009 respectively. The funds that were deposited into the Sterling Accounts consist largely of the Partnership's distribution of funds generated from legitimate rental payments from 650 Fifth Avenue, the Foundation's investment income, and charitable contributions by individual donors. At no time were any of the Sterling Accounts used to make payments to Assa Corporation, and at no time were any of these accounts involved in a

7

money laundering or attempted money laundering transaction, or traceable to such a transaction or attempted transaction.

23.     The Defendant Property JP Morgan Chase Bank accounts, numbered 230484468 (the "C68 Account") and 230484476 (the "C76 Account" or, collectively, the "Chase Accounts"), were opened in the name of the Fifth Avenue Company, in or about 2007. The Chase Accounts were funded largely through legitimate rental payments from 650 Fifth Avenue. In the year preceding the filing of the amended civil forfeiture complaint (or original civil forfeiture complaint), no owner distributions or any funds whatsoever were transferred from the Chase Accounts to Assa Corporation. Additionally, no management fees were paid from the Chase Accounts to the Foundation in the year preceding the filing of the amended civil forfeiture complaint.

24.     The Sterling Accounts and the Chase Accounts, and the funds contained therein, are not subject to forfeiture because they do not constitute and are not derived from proceeds of an IEEPA violation or a violation of any other statute, and were not involved in a transaction or attempted transaction in violation of the money laundering statutes, nor traceable to such property.

*     *     *     *     *

8

25.    For the properties and accounts listed above, and for the reasons stated above, the Foundation has superior right to, title, and interest in the Alavi Contested Properties than the United States Government.

Executed on:    December 17, 2009
                New York, New York

Respectfully submitted,

PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
212-336-2000

By:_____
Daniel S. Ruzumna (DR-2105)
Krista Caner (KC-7358)

*Attorneys for Claimant Alavi Foundation*

## VERIFICATION OF CLAIM

26.    I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on:    December 17, 2009
              New York, New York


Dr. Houshang Ahmadi,
President and Treasurer of
Alavi Foundation