UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE 650 FIFTH AVENUE AND RELATED
PROPERTIES

1:08-cv-10934-RJH

**MEMORANDUM
OPINION AND ORDER**

Richard J. Holwell, District Judge:

This a civil forfeiture action brought against certain real estate properties and bank accounts that the United States alleges are proceeds of, traceable to proceeds of, or involved in laundering proceeds of, services provided to the Islamic Republic of Iran in violation of the International Emergency Economic Powers Act ("IEEPA").  In several related actions, various victims of terrorism with default judgments against the Iranian Government seek attachment of the defendant properties.  Before the Court are motions by claimants to the defendant properties, 650 Fifth Avenue Company, the Alavi Foundation (the "Foundation"), Assa Corp., and Assa Co. Ltd. (together, with Assa Corp., the "Assa Claimants", and collectively, "Claimants"), to stay interrogatories, depositions and summary judgment motion practice pending resolution of an ongoing federal criminal investigation or the running of the applicable statute of limitations.  For the following reasons, the motions are denied.

## BACKGROUND

The government filed the original complaint in its civil forfeiture action on December 17, 2008 against the Assa Claimants' interest in the defendant properties.  At

that time, the Court entered an order restraining any person from disposing of the defendant properties.

On the same day, the FBI served a grand jury subpoena on the Foundation "in connection with an official criminal investigation of a suspected felony. . . ." (Dec. of D. Ruzumna, June 3, 2011 ("Ruzumna Dec.") Exs. B, C.)  Also on that day, the Department of the Treasury's Office of Foreign Asset Control ("OFAC") added the Assa Claimants to its list of Specially Designated Nationals whose property is blocked pursuant to OFAC regulations authorized by Executive Order.

On November 12, 2009, the government filed an amended complaint against the defendant properties, including the interests of 650 Fifth Avenue Company, the Foundation, and the Assa Claimants.  On April 29, 2010, the Court entered a consent order appointing a monitor to oversee the defendant properties.

On March 1, 2010, Claimants moved [75, 78] to dismiss the amended complaint in the forfeiture action.  The Court denied that motion in a Memorandum Opinion and Order [163] dated March 30, 2011.

Throughout the pendency of the forfeiture action, the government has continued pursuing its criminal investigation.  The government served at least one grand jury subpoena and executed at least one search warrant in 2009.  Moreover, in response to a Freedom of Information Act Request for materials related to the subject matter of the forfeiture action, the government has averred that "there is a pending or prospective law enforcement proceeding relevant to [such] records. . . ." (Ruzumna Dec. Exs. E, F.)  The Alavi Foundation's former President, Farshid Jahedi, was indicted on May 5, 2009 and pled guilty on December 30, 2009 to obstructing justice and destroying documents responsive to a government subpoena in the criminal investigation.  *See United States v.*

*Jahedi*, 09 Cr. 460 (S.D.N.Y.).  However, neither Claimants nor any other person has been indicted on any substantive charges arising from the conduct alleged in the forfeiture action.

In addition, during the pendency of the forfeiture action, various victims of terrorism who have secured default judgments against the Iranian Government have made claims to the defendant properties.  Those plaintiffs have filed actions to attach those properties pursuant to the Terrorism Risk Insurance Act ("TRIA"), P.L. 107-297, § 201, which amended the Foreign Sovereign Immunities Act to permit attachment of assets of state sponsors of terrorism that have been blocked pursuant to OFAC regulations.

Following a conference on May 24, 2011, the Court entered a scheduling order providing for document discovery in the forfeiture and attachment actions.  On June 3, 2011, Claimants moved [174, 177] to stay interrogatories, depositions and summary judgment motion practice pending resolution of the criminal investigation or the running of the applicable statute of limitations.

## LEGAL STANDARD

"There is no question that parties who face both civil litigation and criminal investigation face difficult choices."  *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 575 (S.D.N.Y. 2001) (Lynch, J.).  The Fifth Amendment privilege against self-incrimination creates one such choice:  "though a litigant in a civil action is entitled to avoid answering questions that might lead to self-incrimination, this entitlement often conflicts with the litigant's interest in testifying and obtaining whatever benefits such testimony might provide."  *United States v. Certain Real Prop. and Premises Known as: 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2d Cir. 1995).

This Hobson's choice is not so acute that the Constitution prevents the courts from forcing a litigant to make it. "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (bracketed insertions in original) (quoting *SEC v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). Indeed, "[n]othing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter." *Nosik v. Singe*, 40 F.3d 592, 596 (2d Cir. 1994); *see also Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[T]he Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. . . .") (internal citation omitted). In fact, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify. . . ." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Thus "what is at risk is not [litigants'] constitutional rights . . . but their strategic position in the civil case." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 578 n.4.

Nevertheless, that the Constitution does not prevent litigants from prosecuting civil and criminal actions does not mean that courts have no power to do so. Rather, it is equally well-established that "a court may decide in its discretion to say civil proceedings . . . when the interests of justice seem to require such action. . . ." *Kashi*, 790 F.2d at 1057; *see also Am. Ex. Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 264 (E.D.N.Y. 2002). "Courts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *Trustees of the Plumbers and Pipefitters Nat'l Pension*

*Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995) (Chin, J.); *see also SEC v. Boock*, No. 09 Civ. 8261, 2010 WL 2398918, at *2 (S.D.N.Y. June 15, 2010) ("A stay may be entered to address the interests of a defendant who faces the choice of being prejudiced in the civil litigation if he asserts his Fifth Amendment rights or prejudiced in the criminal litigation if those rights are waived.").

In fact, "[t]he dilemma recurs with sufficient regularity that a consensus has developed on the principles to be applied by district judges in determining motions to stay civil actions while criminal litigation is conducted." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 575. Under those principles, courts in this Circuit assessing requests to stay civil proceedings consider "1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1139. Nevertheless, "[a] stay of the civil case . . . is an extraordinary remedy." *Id*.

"The most important factor at the threshold is" the first factor: "the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (quoting Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)). "If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1139. Hence "[t]he strongest case for granting a stay is where a party under

criminal indictment is required to defend a civil proceeding involving the same matter." *Volmar Distrib., Inc.*, 152 F.R.D. at 39.

With respect to the second factor, "the private interests of and burden on the defendants," *Trustees of the Plumbers and Pipefitters National Pension Fund*, 886 F. Supp. at 1139, "it is universally agreed that the mere pendency of a criminal investigation standing alone does not require a stay." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 578. Rather, the key question is "whether the criminal proceedings have substantially progressed beyond the investigatory stage to the filing of formal charges against a particular defendant, so that there is an imminent likelihood that the defendant will be subject to a criminal proceeding, including a trial, in the very near future." *Parker v. Dawson*, Nos. 06-CV-6191, 06-CV-6627, 07-CV-1268, 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007). Thus "district courts in this Circuit 'generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted.'" *Sterling Nat'l Bank*, 175 F. Supp. 2d at 576 (quoting *Citibank, N.A. v. Hakim*, No. 92 Civ. 6233, 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993)); *see also Am. Ex. Bus. Fin. Corp.*, 225 F. Supp. 2d at 265 ("Granting a stay of discovery may be especially appropriate where a party under criminal indictment is also required to defend a civil suit involving the same matter.").

"A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons": (1) "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued"; and (2) "the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1139; *see also Sterling*

*Nat'l Bank*, 175 F. Supp. 2d at 577 (noting that an indicted defendant's "situation is particularly dangerous, and takes a certain priority" and that "the prejudice to the plaintiff of staying proceedings is somewhat reduced, since the criminal litigation has reached a crisis that will lead to a reasonably speedy resolution").

"Pre-indictment, these factors must be balanced significantly differently." *Id.*   At that stage, "the dangers are at least somewhat more remote" and "the delay imposed on the plaintiff is potentially indefinite" since "[t]here is no telling how complicated the government's investigation may be" or "whether the allegations of the particular civil plaintiff are merely the tip of an iceberg that will result in a lengthy and open-ended investigation. . . ." *Id.*   "Under these circumstances, the likelihood that a civil party can make the necessary showing to obtain the 'extraordinary' remedy of a stay is inevitably much reduced."  *Id.* (internal citation omitted).  Accordingly, "[c]ourts in this district have generally refused to stay a civil proceeding where the defendant has not been indicted but is under criminal investigation."  *In re Wordlcom, Inc. Secs. Litig.*, Nos. 02 Civ. 3288, 02 Civ. 4816, 2002 WL 31729501, at *4 (S.D.N.Y. Dec. 5, 2002); *see also CFTC v. A.S. Templeton Group, Inc.*, 297 F. Supp. 2d 531, 534 (E.D.N.Y. 2003) ("Pre-indictment requests for a stay of civil proceedings are generally denied."); *In re Par Pharmaceutical, Inc.*, 133 F.R.D. 12, 13-14 (S.D.N.Y. 1990) ("The weight of authority in this Court indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment . . . but will deny a stay of the civil proceeding where no indictment has issued.").

Nevertheless, this is "not a hard-and-fast rule" and "[t]here is no question that a court has discretion to stay a civil litigation even in favor of a pending investigation that has not ripened into an indictment. . . ." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 577.

Rather, "each case must be evaluated individually," *id.*, in "a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distrib., Inc.*, 152 F.R.D. at 39. Courts have accordingly exercised their discretion to stay civil forfeiture proceedings even where no party to those proceedings has been indicted. *See, e.g.*, *United States v. All Monies, Negotiable Instruments and Funds in Account No. ALE 238254 F.Z.*, No. 93 Civ. 336, 1996 WL 807890, at *2 (E.D. Tex. 1996); *United States v. All Funds and Other Prop. Contained in Accounts of the United States Nat'l Bank of Or.*, 727 F. Supp. 1372, 1373 (D. Or. 1990).

One way to explain these decisions is that "[t]he tension between self-incrimination concerns and the desire to testify may be especially acute for a claimant in a civil forfeiture proceeding." *4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 83. That is because a "claimant is often subject to criminal prosecution based on the same alleged illegal behavior that supports the confiscation." *Id.* Such a claimant "'faces a dilemma: remain silent and allow the forfeiture or testify against the forfeitability of his property and expose himself to incriminating admissions.'" *Id.* (quoting *United States v. $250,000*, 808 F.2d 895, 900-01 (1st Cir. 1987)).

"In view of this dilemma," the Second Circuit has stated that "upon a timely motion by the claimant, district courts should make special efforts to 'accommodate both the constitutional [privilege] against self-incrimination as well as the legislative intent behind the forfeiture provision.'" *4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 83 (bracketing in original) (quoting *United States v. United States Currency*, 626 F.2d 11, 15 (6th Cir. 1980), *cert. denied*, 449 U.S. 993 (1980)). "These considerations do not mean that a district court . . . is necessarily required to stay a forfeiture action while a claimant seeks to resolve a parallel criminal action. . . ." *4003-4005 5th Ave., Brooklyn, N.Y.*, 55

F.3d at 83 n.4.  Rather, "district courts—absent some sort of extraordinary situation—should exercise their discretion to stay civil forfeiture proceedings pending the completion of related criminal proceedings against the claimants."  *United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 905 (2d Cir. 1992).  The "goal" of this reversal of the presumption against a stay is to permit "as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege." *4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 84.

Indeed, Congress has recognized that civil forfeiture actions burden the Fifth Amendment rights of claimants to defendant properties.  The statute governing those actions, including this one, provides that "[u]pon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that--

> (A) the claimant is the subject of a related criminal investigation or case;
>
> (B) the claimant has standing to assert a claim in the civil forfeiture proceeding; *and*
>
> (C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

18 U.S.C. § 981(g)(2) (emphasis added).

## DISCUSSION

### A.  Forfeiture Action

"The first question to be resolved is the extent to which the issues in the criminal case overlap with those present in the civil case, since self-incrimination is more likely if there is a significant overlap." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1139.  It is common ground that these actions generally involve the

same matter as the criminal investigation.  Accordingly, there appears to be a relatively strong case for staying these actions.  But the matter is not so simple.

What makes this case difficult is that, "for purposes of the Fifth Amendment, corporations and other collective entities" like Claimants "are treated differently from individuals."  *Braswell v. United States*, 487 U.S. 99, 104 (1988).  Indeed, it has been "settled" for more than a century "that a corporation has no Fifth Amendment privilege. . . ."  *Id.* at 105.  *Cf. Hale v. Henkel,* 201 U.S. 43, 74 (1906) ("[W]e are of the opinion that there is a clear distinction . . . between an individual and a corporation, and . . . the latter has no right to refuse to submit its books and papers for an examination at the suit of the State.").

For that reason, Section 981(g)(2) does not apply, *see* 18 U.S.C. § 981(g)(2)(C) (requiring a stay where "continuation of the forfeiture proceeding will burden *the right of the claimant* against self-incrimination in the related investigation or case") (emphasis added), and this case does not squarely present "the troublesome fifth amendment problems potentially generated by the government's use of the civil forfeiture statutes" which have animated the Second Circuit's solicitude to stay proceedings.  *All Assets of Statewide Auto Parts, Inc.*, 971 F.2d at 905.[1]  The Court of Appeals's concern regarding parallel forfeiture and criminal proceedings is that, because the Fifth Amendment privilege "often conflicts with the *litigant's* interest in testifying . . . . [t]he tension between self-incrimination concerns and the desire to testify may be especially acute *for*

---

[1] The Assa Claimants argue that finding Section 981(g)(2) inapplicable "amounts to form over substance since . . . Claimants' shareholders' Fifth Amendment rights are burdened" because the owners of Assa Co. Ltd. are also directors of that entity.  (Assa Reply at 7, 11.)  That may be true, but none of those owners has filed a claim to any of the defendant properties.  Accordingly, they are not "claimants" under the statute and do not face the particular "dilemma" described by the Second Circuit.  *4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 83.

*a claimant* in a civil forfeiture proceeding." *4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 83 (emphasis added, quotation marks omitted). But because Claimants have no right to remain silent, they hardly face the "dilemma" of whether to "remain silent and allow the forfeiture or testify against the forfeitability of [their] property and expose [themselves] to incriminating admissions." *4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 83. And Claimants' employees face no such dilemma, either, because they have no claim to the properties the government seeks to forfeit.

Since neither Claimants nor their employees must confront the dilemma that the stay is designed to avoid, it is far from clear that the government must demonstrate that this case presents an "extraordinary situation." *All Assets of Statewide Auto Parts, Inc.*, 971 F.2d at 905. Indeed, if the purpose of a stay is to "accommodate both the constitutional [privilege] against self-incrimination as well as the legislative intent behind the forfeiture provision," *4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 83, it is surely relevant that "'[a] non-party's silence in a civil proceeding implicates Fifth Amendment concerns to an even lesser degree'" than "the invocation of the privilege by parties. . . ." *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997) (quoting *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.,* 808 F.2d 271, 275 (3d Cir. 1986)). That deprives Claimants' arguments of much of their force.

Rather than a choice, Claimants are faced with a problem: their employees may assert their Fifth Amendment privilege rather than testify on their behalf. Recognizing as much, Claimants argue that, absent a stay, they "would not be able to present an effective defense" because "current and former employees would not be able to testify or to provide responsive declarations in response to any motion for summary judgment without placing themselves at risk of self-incrimination." (Found. Br. at 15.) That is an

argument with respect to the fourth factor, "the private interests of and burden on the defendants," *Trustees of the Plumbers and Pipefitters National Pension Fund*, 886 F. Supp. at 1139.

Those interests and that burden are hardly insignificant.  In a civil forfeiture action, "[o]nce the government establishes that there is probable cause to believe that a nexus exists between the seized property and the predicate illegal activity, the burden shifts to the claimant to show by a preponderance of the evidence (1) that the defendant property was not in fact used unlawfully, *or* (2) that the predicate illegal activity was committed without the knowledge of the owner-claimant, that is, that the claimant is an innocent owner."  *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 104 (2d Cir. 2000) (emphasis in original) (internal citation and quotation marks omitted).  Testimony of witnesses will surely be important to shouldering that burden of proof.  Indeed, to some extent, "corporations cannot adequately defend themselves without the testimony of" their employees. *Parker*, 2007 WL 2462677, at *7.

It is also notable that it is the government that has saddled Claimants with their problem by opening the investigation in which Claimants' witnesses may want to assert the Fifth Amendment privilege.  Thus "trial courts should not disregard the fact that the plaintiff in forfeiture actions is the Government, which controls parallel criminal proceedings in federal court and also possess the power to grant some forms of immunity."  *4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 83.[2]

However, Claimants do not explain why the fact that their employees may not testify because of the privilege makes their situation any more dire or unfair than that of

---

[2] Of course, it is also notable that this case does not squarely implicate this concern given the presence of private actions which the government does not control.

any other party who cannot find witnesses to testify on his behalf. A criminal defendant on trial for his liberty—or even his life—is often faced with the problem that others involved in events related to the alleged crime will invoke the privilege rather than testify. Yet such a defendant would hardly be heard to complain that it is unfair for the government to try him before completing its investigation into or immunizing his potential witnesses. *United States v. Turkish*, 623 F.2d 769, 773-74 (2d Cir. 1980) ("Traditionally, the Sixth Amendment's Compulsory Process Clause gives the defendant the right to bring his witness to court and have the witness's non-privileged testimony heard, but does no[t] carry with it the additional right to displace a proper claim of privilege, including the privilege against self-incrimination."); *see also id.* at 778 ("[T]rial judges should summarily reject claims for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution.").

If "it is difficult to see how the Sixth Amendment of its own force places upon either the prosecutor or the court any affirmative obligation to secure testimony from a defense witness by replacing the protection of the self-incrimination privilege with a grant of use immunity," *id.* at 774, it is even more difficult to see why the government must decide whether to do the same before moving to forfeit property as proceeds of a crime—a proceeding that portends a less severe deprivation of rights and does not trigger Sixth Amendment protection. *See Hannah v. Larche*, 363 U.S. 420, 440 n.16 (noting that the Sixth "That Amendment is specifically limited to 'criminal prosecutions'. . . .") (citing *United States v. Zucker*, 161 U.S. 475, 481 (1896)).

Claimants do cite several decisions in which courts in this Circuit have stayed civil actions as to corporate defendants when their co-defendant individual employees have been indicted. *See Parker*, 2007 WL 2462677, at *7; *Am. Ex. Bus. Fin. Corp.*, 225

F. Supp. 2d at 264; *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund*, 886 F.

Supp. at 1139; *Volmar Distrib., Inc.*, 152 F.R.D. at 40-42.  And it is true that one or two

of these decisions have referred to the problems corporations may have in defending

themselves without testimony of their employees.  *See Parker*, 2007 WL 2462677, at *7.

*Cf. Am. Ex. Bus. Fin. Corp.*, 225 F. Supp. 2d at 265 (noting that "RW Professional argues

that it cannot defendant itself in the instant action without the assistance" of its indicted

employee co-defendants).

However, these decisions are not on all fours with this case because they all

involved situations where at least one party to the civil proceeding had been indicted or

charged.  By contrast, in this case, no individual, never mind a party to these actions, has

been indicted in the parallel criminal investigation on substantive charges relating to

issues involved in this action.[3]  Thus no defendant in this action faces an acute Fifth

Amendment dilemma necessitating a stay.  And therefore there are no efficiencies to be

gained by staying the action as to indicted individuals' corporate employer co-defendants.

*Cf. Parker*, 2007 WL 2462677, at *7 ("Such a stay is necessary in order to avoid

duplication of discovery efforts. . . ."); *Am. Ex. Bus. Fin. Corp.*, 225 F. Supp. 2d at 266

(noting that "a partial stay as to the individual defendants could lead to duplicative

depositions"); *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp.

at 1141 (declining to "resolve the issue of whether the corporate defendants would be

prejudiced by the individual defendants' invocation of their Fifth Amendment rights"

because "it is more efficient to grant a complete stay as to all defendants rather than only

a partial stay as to the individual ones"); *Volmar Distrib., Inc.*, 152 F.R.D. at 41 ("The

---

[3] The obstruction and document destruction charges against the Alavi Foundation's former President, Farshid Jahedi do not concern the same matter as the substantive allegations the government has made in the civil forfeiture action.

only real issue is whether it is more efficient for the Court to grant a complete stay as to all defendants until *People v. [one indicted defendant]* is resolved rather than a partial stay only as to [the indicted individual defendants].").

Claimants counter that "the tension between a claimant's interest in defending its property interests and the burden placed on the assertion of one's right against self-incrimination exists whether the claimant has been indicted *or* is under criminal investigation." (Found. Reply at 9 (emphasis in original).) Indeed, it is true that "[n]o federal indictment charging violations of the federal bribery or mail fraud statutes ha[d] yet taken place" when the Second Circuit made its statement in *All Assets of Statewide Auto Parts*. 971 F.2d at 903. And Claimants cite decisions for the proposition that "courts addressing requests for stays in the *civil forfeiture context* have regularly granted stays or remanded for consideration of a stay even when an investigation has not 'ripened' into a prosecution." (Found. Reply at 10 (emphasis in original) (citing *Account No. ALE 238254 F.Z.*, 1996 WL 807890, at *2; *Nat'l Bank of Or.*, 727 F. Supp. at 1373).) Claimants therefore characterize as a "diversion" the government's line of authority rejecting stays on the basis of criminal proceedings that have not resulted in an indictment of a party to the civil action. (Found. Reply at 10.)

Setting aside that Claimants themselves cite scant legal authority, the Court is not persuaded by this Chinese menu form of legal argument: one fact from decisions in Column A + one fact from decisions in Column B = a full stay. In Column A are the decisions staying (1) civil forfeiture actions where (2) a claimant is subject to a criminal investigation and must choose between invoking the Fifth Amendment privilege and conceding the forfeiture action. In these cases, the dilemma in which the claimant being investigated finds himself is so acute that some courts have found a stay warranted even

where an indictment has not been returned.  In Column B are the decisions staying other

kinds of civil actions against (3) corporations whose employees are (4) co-defendants

who have been indicted. In these cases, the individual defendants' situation is

"particularly dangerous" and "the prejudice to the plaintiff of staying proceedings is

somewhat reduced, since the criminal litigation has reached a crisis that will lead to a

reasonably speedy resolution."  *Sterling Nat'l Bank*, 175 F. Supp. 2d at 577.   Given that

those circumstances warrant a stay against the individual defendants, proceeding against

the corporate defendants but not their individual codefendants would be inefficient.

Claimants have chosen fact (1) from Column A—this is a civil forfeiture action—

and fact (3) from Column B—they are corporations.  But facts are more like ingredients:

they cannot be so easily separated from their fellow facts without changing the result.

Thus it may be that a stay is warranted "when a *claimant* validly invokes the Fifth

Amendment and expeditiously seeks the court's help in protecting his interests," *4003-

4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 83 n.4 (emphasis added),  but it is not clear that

the same result follows where the claimant cannot invoke the Fifth Amendment.

Similarly, though a stay may be warranted as to a corporation "where a[nother] party to

the civil case has already been indicted for the same conduct," *Trustees of the Plumbers

and Pipefitters National Pension Fund*, 886 F. Supp. at 1139, it is not clear that the same

result follows where nobody—never mind a party—has been indicted and "there is

nothing to suggest that indictments are imminent." *Sterling Nat'l Bank*, 175 F. Supp. 2d

at 578.[4]   And since it is unclear whether a stay is warranted where claimants to defendant

---

[4] It is true that no indictment had taken place *All Assets of Statewide Auto Parts*, either.
But that decision does not stand for the proposition that whether or not a claimant has
been indicted is irrelevant to the propriety of a stay.   The Second Circuit in *All Assets of
Statewide Auto Parts* did not find that a stay was warranted.   At most, then, its instruction

properties do not face a Fifth Amendment dilemma or where the criminal proceeding has

not "ripened" to the point that the criminal proceeding has reached the beginning of the

end, *In re Par Pharmaceutical, Inc.*, 133 F.R.D. at 13, the Court is hard pressed to

conclude that a stay is warranted where neither is true.  Two uncertainties make little

more than further uncertainty.

Such uncertainty surely counsels against the "extraordinary remedy" of a stay.

*Trustees of the Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1139.

Indeed, it suggests that "the private interests of and burden on the defendants" are

considerably reduced and that "the status of the case, including whether the defendants

have been indicted," weighs against a stay.  *Id.*   For the same reason, "convenience to the

court weighs against a stay because it is unrealistic to postpone indefinitely the pending

action until criminal charges are brought."  *Hakim*, 1993 WL 481335 at *2.

In circumstances that have much in common with this case, at least one court in

this district has declined to stay civil enforcement proceedings by the Securities and

Exchange Commission ("SEC") as to a corporate defendant.   *See SEC v. First Jersey*

*Secs., Inc.*, No. 85 Civ. 8585, 1987 WL 8655 (S.D.N.Y. Mar. 26, 1987) (Roberts, M.J.).

In that case, the defendant corporation had received several grand jury subpoenas and

several of its employees had been indicted but none of the other individual defendants in

the SEC action had been charged or received any subpoenas.  *See id.* at *1.  While noting

that "discovery in this proceeding would force First Jersey officers, directors, and agents

---

that "district courts—absent some sort of extraordinary situation—should exercise their
discretion to stay civil forfeiture proceedings pending the completion of related criminal
proceedings against the claimants,"  971 F.2d at 905, suggests that a stay *could* be
warranted where no indictment has been issued.  For the reasons set forth in this opinion,
the Court does not believe this is such a case.  Foremost among those reasons is that,
unlike the claimants in *All Assets of Statewide Auto Parts*, Claimants here do not have
any Fifth Amendment privilege against self-incrimination.

to waive their Fifth Amendment privilege," the Court rejected that argument for a stay: "Since the corporation cannot avail itself of the privilege against self-incrimination, it cannot take advantage of an allegedly unconstitutional burden placed on its individual employees." *Id.* at *4-*5.  That was particularly true where "First Jersey officers, directors and agents subject to discovery requests do not face the dilemma potentially faced by Brennan, an individual defendant, because they are not parties to this action." *Id.* (quotation marks omitted).

Claimants do not argue that *First Jersey* has been overruled or even distinguished. Instead, they argue that the case is "not a civil forfeiture action, and was decided years before the Second Circuit offered its guidance on appropriately accommodating Fifth Amendment rights of a forfeiture claimant in *4003-4005 5th Ave.* and *Statewide Auto Parts*."  (Found. Reply at 9.)  True enough, but Claimants' reference to "Fifth Amendment rights of a *forfeiture claimant*" belies their effort at distinguishing *First Jersey*.  Since Claimants here have no such rights, it is far from clear that *First Jersey* cannot be squared with *4003-4005 5th Ave.* or *Statewide Auto Parts*.

On the contrary, in the only decision of which the Court is aware that involved a business organization's request to stay a civil forfeiture proceeding on the ground that employee witnesses were likely to claim the Fifth Amendment privilege, the court vacated a temporary stay.  *See In re Phillips, Beckwith & Hall*, 896 F. Supp. 553 (E.D. Va. 1995).  In that case, cited by no party here, the "government believe[d] that certain of the Phillips firm's attorneys and other employees may have committed criminal offenses in connection with receipt of attorneys' fees paid by" a former client convicted of drug charges "and the government's efforts to forfeit them."  *Id.* at 556.  "No charges ha[d] been filed, and it [wa]s currently unclear when, if ever, any charges [would] be brought."

*Id.* Rather, the government had merely identified two firm employees as targets of a grand jury investigation. *See id.* The firm argued that "the lingering possibility of criminal prosecution posed a dilemma for its witnesses, the firm lawyers and personnel involved in the fee transaction":

> If these persons waived their Fifth Amendment rights and testified in support of the petition, the government could then use the testimony as evidence in any criminal prosecutions it might later bring. On the other hand, if the witnesses declined to testify, it would imperil the Phillips firm's chances of meeting its burden of proof and prevailing in the forfeiture proceeding.

*Id.* at 557. While the court initially granted a temporary stay, the court vacated the stay two months later when no "further light" was "shed on the government's intentions with respect to the potential criminal prosecutions." *Id.*

In vacating the stay, the court noted several interests relevant here that weighed against a stay.[5] First, the court noted that "the government and the public have an interest in the proper enforcement of the forfeiture laws," particularly where "the government does not have possession of the disputed property." *Id.* at 558. In such circumstances, the "law firm [wa]s attempting to postpone the government's opportunity to collect forfeited property." *Id.* Second, the court noted that "[t]he government also has an interest in moving ahead promptly . . . in the event it is ultimately forced to 'trace' the forfeited property." *Id.* at 559. And third, the court found it "significant that, because memories fade over time, the government's case . . . will inevitably erode during the stay." *Id.*

---

[5] It is somewhat surprising that the *Phillips* court did not appear to note that the firm itself had no Fifth Amendment rights. Perhaps the parties before the court did not brief that issue. Or perhaps the *Phillips* court found that issue less relevant given that a law firm is wholly owned by its individual members in a way that the Foundation and Assa Corp. are not.

The government has each of these interests here.  The government and the public have strong interests in avoiding any delay in taking possession of the defendant properties—interests that, for reasons set forth below, are particularly strong in the IEEPA context.  The government also has an interest in reducing the complexity of any tracing with respect to the defendant bank accounts.[6]  True, these interests are tempered somewhat by the fact that the Assa Claimants' assets have been frozen and the defendant properties have been restrained.  But the Foundation, which the government alleges is an arm of the Iranian Mission to the United Nations, continues to make expense payments and charitable contributions.  While those transactions are made with the approval of the court-appointed monitor, they nevertheless complicate any tracing.  More importantly, if the government possessed the funds for itself, it might prefer to dispense or dispose of the funds in a different manner.   Finally, there is at least some risk that witnesses' memories may fade over time.  Claimants have a point that any further erosion is likely to be marginal given that many of the events at issue occurred almost two decades ago.  (*See* Found. Reply at 12.)  But at that distance from events, every year may count.

Claimants nevertheless maintain that "the determination of whether a stay is appropriate does not only depend . . . on *Claimants'* Fifth Amendment rights, but also for a corporate defendant on the rights *of its employees or agents* on whom the corporation must rely to defend its interests."  (Found. Reply at 7 (emphasis in original).)  For that proposition, Claimants cite *United States v. Kordel*, 397 U.S. 1 (1970).  But that decision does not go nearly as far as Claimants take it.

---

[6] Indeed, the Assa Claimants have argued that the government cannot trace funds in the defendant accounts to any criminal proceeds.  (*See* Assa Br. in Supp. of Mot. to Dismiss at 13 n.6; Assa Reply in Further Supp. of Mot. to Dismiss at 11 n.8.)

In *Kordel*, the Food and Drug Administration ("FDA") commenced an *in rem* civil forfeiture proceeding to seize two products made by Detroit Vital Foods, Inc.  As part of that action, the FDA served Vital Foods with interrogatories.  Shortly thereafter, the FDA provided Vital Foods, its president, and its vice-president with statutory notice that the FDA contemplated a criminal proceeding against them.  Vital Foods moved to stay the civil proceeding "until after disposition of the criminal proceeding signaled by the . . . notice."  *Id.* at 4.  Though Vital Foods "expressly disavowed any 'issue of self-incrimination privilege against the corporation,'' it argued that "[p]ermitting the government to obtain proof of violations . . . by resort to civil discovery procedures . . . would 'work a grave injustice against the claimant.' . . ."  *Id.* at 5.  The district court denied the motion on the grounds that the "notice did not conclusively indicate that the Government would institute a criminal proceeding. . . ." *Id.*  Vital Foods then answered the interrogatories through its vice-president.  The FDA later recommended that the Department of Justice ("DOJ") file criminal charges against the president and vice-president, the DOJ did so, and the officers were convicted.  The Sixth Circuit reversed the convictions on the ground that the interrogatory answers were compelled in violation of the Fifth Amendment.

The Supreme Court reversed.  The court began with the principle that the interrogatories obliged the corporation to "appoint an agent who could, without fear of self-incrimination, furnish such requested information as was available to the corporation."  *Kordel*, 397 U.S. at 8.  That was because allowing the corporation to appoint an agent who invoked the privilege "would effectively permit the corporation to assert on its own behalf the personal privilege of its individual agents."  *Id.*  In "the situation where no one can answer the interrogatories without subjecting himself to a real

and appreciable risk of self-incrimination," the Supreme Court stated that it would

"assume that in such a case the appropriate remedy would be a protective order . . .

postponing civil discovery until termination of the criminal action."  *Id.* at 8-9 (quotation

marks omitted).   However, the Supreme Court concluded that it "need not decide this

troublesome question" because the corporation did not show "that there was no

authorized person who could answer the interrogatories without the possibility of self-

incrimination" and no officer actually invoked the Fifth Amendment privilege. *Id.* at 9.

That is hardly a full-scale endorsement that courts should stay civil actions

whenever it appears that a corporation may be handicapped by its employees' invocation

of the Fifth Amendment privilege.  On the contrary, in rejecting the argument that the

officers' convictions "nonetheless reflected such unfairness and want of consideration for

justice as independently to require the reversal of their convictions," the Supreme Court

took care to note that "[t]he public interest in protecting consumers throughout the Nation

from misbranded drugs requires prompt action by the agency charged with responsibility

for administration of the federal food and drug laws."  *Id.* at 11.  Since "a rational

decision whether to proceed criminally against those responsible for the misbranding may

have to await consideration of a fuller record than that before the agency at the time of

the civil seizure," the court concluded that "i[t] would stultify the enforcement of federal

law to require a governmental agency such as the FDA invariably to choose either to

forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil

proceedings pending the outcome of a criminal trial."  *Id.*  Accordingly, if anything, the

Supreme Court recognized that the need to seize property that poses harm to the public

counseled against the stay it assumed without deciding might have been appropriate.[7]

     This case involves a similarly important "public interest."  *Trustees of the*

*Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1139.   The government

seeks to forfeit properties allegedly beneficially owned by or maintained for the benefit

of the Islamic of Republic of Iran.  President Reagan has found that "that the Government

of Iran is actively supporting terrorism as an instrument of state policy," Exec. Order

12613, 52 Fed Reg. 41940 (Oct. 29, 1987), and President Clinton has found "that the

actions and policies of the Government of Iran constitute an unusual and extraordinary

threat to the national security, foreign policy, and economy of the United States."  Exec.

Order 12957, 60 Fed. Reg. 14615 (Mar. 15, 1995).  Accordingly, President Clinton

"declare[d] a national emergency to deal with that threat," *id.*, and exercising his power

pursuant to IEEPA, authorized OFAC to promulgate regulations prohibiting nearly all

---

[7] Claimants also argue that *First Jersey* "was decided before the Court of Appeals in *Afro-Lecon*[,*Inc. v. United States*, 820 F.2d 1198 (Fed. Cir. 1987)] recognized that a stay of civil proceedings may be appropriate where a corporation defend[s] its interests because of its corporate agents' assertion of their Fifth Amendment rights."  (Found. Reply at 9.)  In that case, Afro-Lecon brought a claim against the Small Business Administration arising out of alleged delays in connection with its contract to supply filing cabinets.  *See Afro-Lecon*, 820 F.2d at 1199-1200.   During the pendency of the claim, Afro-Lecon learned that it was the subject of a grand jury investigation, and that its president, Benjamin Okumabua, was a potential defendant related to charges under the False Claims Act.  *See id.* at 1200.  Both Afro-Lecon and Okumabua were later indicted.  *See id.*  The contracting appeals board denied Afro-Lecon and Okumabua's request for a stay and dismissed Afro-Lecon's claim for failing to respond to an order to provide an accounting.  *See id.*  Citing *Kordel*, the Federal Circuit vacated and remanded "for a more complete assessment of whether there are any sources of information in Afro-Lecon's files that can by conveyed to an agent designated to respond to the order on accounting." *Id.* at 1207.  For the reasons set forth above with respect to *Kordel*, *Afro-Lecon* hardly stands for the proposition that a stay is always warranted where a corporation's employees may invoke the privilege against self-incrimination.  What is more, *Afro-Lecon* is distinguishable for the same reason that Claimants' other decisions are distinguishable, namely, that both the corporation and Okumabua had been indicted.  *See id.* at 1200.

economic activity with the Iranian Government.  "The obvious purpose of [those regulations] is to isolate Iran from trade with the United States."  *United States v. Ehsan*, 163 F.3d 855, 859 (4th Cir. 1998).

Of course, it is not the Court's role to say that some criminal statutes are more important than others.  Moreover, in most cases, a criminal statute's importance militates as much for staying a civil action in favor of proceedings to enforce the statute as against a stay to permit forfeiture of the proceeds of the statute's violation.  That is because the purpose of the statute is usually to prevent the underlying criminal activity rather than to prevent those who engage in it from obtaining the proceeds thereof.  For example, where the government attempts to forfeit real estate used in drug trafficking, the drug laws' importance justifies prosecution of the drug traffickers at least as much as it justifies seizure of their real estate because the purpose of the drug laws is to prevent drug trafficking, not to prevent drug traffickers from owning real estate.

In the case of IEEPA, however, the purposes of the substantive statute and forfeiture dovetail.  The purpose of IEEPA is as much to prevent the Iranian Government from benefiting from the American economy as it is to deter individuals from engaging in economic activity for the benefit of the Iranian Government.  Hence an action to forfeit properties allegedly generating revenue for arms of the Iranian Government furthers the core purpose of the sanctions imposed in response to the national emergency posed by that government's actions.  Put another way, a civil forfeiture action against alleged proceeds of IEEPA violations aims to take property out of the hands of a government which "is actively supporting terrorism as an instrument of state policy," Exec. Order 12613, 52 Fed Reg. 41940, and "whose actions "constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States."  Exec.

Order 12957, 60 Fed. Reg. 14615.  In that sense, it is hardly the case that "[t]his forfeiture action is not comparable in public importance to a civil enforcement action brought by a federal regulatory agency entrusted with the protection of consumers, investors or other broad segments of the population, whose welfare could be jeopardized by deferral of the action."  *United States v. Certain Real Prop. and Premises Known as 1344 Ridge Rd., Laurel Hollow, Syosset, N.Y.*, 751 F. Supp. 1060, 1062 (E.D.N.Y. 1989).

In light of the foregoing, Claimants are really asking the Court to stay an action to forfeit property allegedly owned by a nation that poses a national security threat to the United States until the government decides whether or not to indict or immunize persons who are not party to and have no interest in this action on the ground that those persons may assert rights that Claimants cannot.  Setting aside that "since depositions have not yet taken place, there is no way of measuring with any precision what questions [the employees] may refuse to answer," *Sterling National Bank*, 175 F. Supp. 2d at 578, Claimants' motion comes perilously close to "permit[ting] the corporation to assert on its own behalf the personal privilege of its individual agents."  *Kordel*, 397 U.S. at 8.  Given that Claimants have so strenuously urged the Court to preserve their corporate form, it would be strange if Claimants were permitted to eviscerate it when it suits them.

The Court is mindful that is not enough to simply say that the Court of Appeals's instruction to "stay civil forfeiture proceedings pending the completion of related criminal proceedings against the claimants," *Statewide Auto Parts, Inc.*, 971 F.2d at 905, does not squarely apply to this case.  Surely the admonitions to "accommodate both the constitutional [privilege] against self-incrimination as well as the legislative intent behind the forfeiture provision," and to "permit "as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege," *4003-4005 5th Ave.,*

*Brooklyn, N.Y.*, 55 F.3d at 84, have some force.  Further, whether or not Claimants feel pressured in the forfeiture action because of their own Fifth Amendment rights, it remains the case that "the government itself has an opportunity to escalate the pressure on [Claimants] by manipulating simultaneous civil and criminal proceedings, both of which it controls."  *Sterling Nat'l Bank*, 175 F. Supp. 2d at 578-79.  Hence the specter that the government can launch a criminal investigation into corporate employees to tie unpopular employers' hands in challenging the forfeiture of their property.  Indeed, the very fact that forfeiture actions further the core interests of the criminal statutes at issue arguably suggests that the government has reason to use the threat of criminal prosecution to hamper Claimants' defense to forfeiture.

However, this is not "a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates criminal prosecution. . . ."  *Kordel*, 397 U.S. at 11-12.  On the contrary, prior to or at least contemporaneous with filing its original complaint in this action, the government has been using the traditional methods of criminal investigation such as search warrants, surveillance, and grand jury subpoenas.  (*See* Am. Compl. ¶¶ 69, 77, 82; Ruzumna Dec. Exs. B, C; *see also* Foundation Br. at 3-4 (describing search warrants executed thereafter).)   Hence Claimants have been aware since the inception of the civil forfeiture action that there is "an official criminal investigation of a suspected felony being conducted by a federal grand jury."  (*Id.* Ex. C.)

In the end, Claimants surely find themselves in a difficult position, but "the Constitution does not guarantee that the exercise of Fifth Amendment rights will be without cost in the civil arena."  *In re Phillips, Beckwith & Hall*, 896 F. Supp. at 560.  If "[a] party who chooses to assert the privilege against self-incrimination in a civil case must live with

the consequences," *id.*, it is all the more true that a corporation must live with the consequences of the corporate form, one of which is the inability to claim the Fifth Amendment privilege on behalf of corporate officers.  "If this be seen as a 'price' on the assertion of the privilege," or on the maintenance of the corporate form, "so be it."  *United States v. Taylor*, 975 F.2d 402, 404 (7th Cir. 1992).

### B. Attachment Actions

The relevant factors weigh even more heavily against a stay of the attachment actions.  Even if pre-indictment stays are not disfavored with respect to civil forfeiture actions, and even if the acute Fifth Amendment issues in civil forfeiture actions are relevant where Claimants have no Fifth Amendment rights, Claimants have not shown that the same is true of attachment actions in which "[t]here is no reason to assume that [plaitniffs'] civil case[s] [are] simply . . . stalking horse[s] for the government's criminal inquiry, rather than . . . good faith effort[s] to obtain compensation for [their] own private injuries."  *Sterling Nat'l Bank*, 175 F. Supp. 2d at 579.  Indeed, "the potential for prejudice . . . is diminished where . . . a private party, not the government, is the plaintiff in the civil action. . . ."  *Hakim*, 1993 WL 481335 at *2.  The fact that Claimants' "conduct also resulted in a criminal [investigation] against [them] should not be availed of by [them] as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim."  *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) (Weinfeld, J.).   And that is particularly true where no party has been indicted.  *See In re Wordlcom, Inc. Secs. Litig.*, 2002 WL 31729501, at *4; *Sterling Nat'l Bank*, 175 F. Supp. 2d at 577.

Claimants nevertheless argue that "because the private actions are so integrally related to the Forfeiture Action, they too must be stayed until the conclusion of the

criminal investigation or the expiration of the relevant statute of limitations."  (Found.

Reply at 13.)  That argument assumes that the forfeiture action should be stayed, a result

the Court has not reached.  \Claimants further argue that proceeding with these actions far

outweighs the "the private interests of the plaintiffs in proceeding expeditiously weighed

against the prejudice to plaintiffs caused by the delay," *Trustees of the Plumbers and

Pipefitters National Pension Fund*, 886 F. Supp. at 1139.  However, "Plaintiffs have a

legitimate interest in the expeditious resolution of their case," *id.* at 1140.  And the

"public interest," *id.* at 1139, too, weighs against a stay.

    In 2001, Congress enacted TRIA, Section 201 of which provided for the

satisfaction of judgments against Iran and other state sponsors of terrorism via attachment

of Iranian assets blocked by the Treasury Department pursuant to IEEPA-implementing

regulations.  *See* P.L. 107-297, § 201.  Indeed, "[t]he purpose of Section 201 is to deal

comprehensively with the problem of enforcement of judgments rendered on behalf of

victims of terrorism in any court of competent jurisdiction by enabling them to satisfy

such judgments through the attachment of blocked assets of terrorist parties."  H.R. Conf.

Rep. 107-779, at 27 (2002).  More generally, the sponsors of TRIA wanted to "provide a

new, powerful disincentive for any foreign government to continue sponsoring terrorist

attacks on Americans."  148 Cong. Rec. S11, 524, S11, 527 (2002) (statement of Sen.

Harkin).  And TRIA is only the latest in a long series of legislative efforts to provide

victims of terrorism with a remedy against state sponsors of it.  *See generally United

States v. Holy Land Found. for Relief and Dev.*, Crim. No. 3:04–CR–0240–P, 2011 WL

1626597, at  *3-*4 (N.D. Tex. Apr. 27, 2011).   While it is unclear whether or not TRIA

attachment actions have priority over a civil forfeiture action, it is clear that Congress has assigned importance to attachment actions by victims of terrorism.[8]

Finally, "the interests of the courts," *Trustees of the Plumbers and Pipefitters National Pension Fund*, 886 F. Supp. at 1139, weigh decisively in favor of treating all actions alike.  It would make little sense to stay the attachment actions and not the civil forfeiture action or *vice versa*.  Indeed, "a partial stay would likely result in additional expenses for the parties without expediting the discovery process."  *SEC v. Downe*, No. 92 Civ 4092, 1993 WL 22126 at *14 (S.D.N.Y. Jan. 26, 1993).

---

[8] The Court expresses no opinion as to whether the plaintiffs' attachment actions or the government's civil forfeiture action has priority over the other.

## CONCLUSION

For the reasons above, claimants' motions [174, 177] to stay this action pending resolution of a criminal investigation and/or the running of the statute of limitations are DENIED.


SO ORDERED.


Dated: New York, New York
      August 12, 2011

                                      Richard J. Holwell
                                  United States District Judge