UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE 650 FIFTH AVENUE AND RELATED
PROPERTIES

1:08-cv-10934-RJH

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, District Judge:

In this civil forfeiture action, claimants to the defendant properties, 650 Fifth Avenue

Company, the Alavi Foundation, Assa Corp., and Assa Co. Ltd. (collectively, the "Claimants"),

move for reconsideration of the Court's August 12, 2011 Memorandum Opinion and Order (the

"Order") denying the Claimants motion to stay interrogatories, depositions, and summary

judgment motion practice pending the resolution of an ongoing federal criminal investigation or

the running of the applicable statute of limitations.  Alternatively, Claimants move for

certification of the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  For the

reasons that follow, the motion is denied.

## BACKGROUND

The relevant facts are set forth in the Court's August 12, 2011 Order.  In short, the United

States government seeks to forfeit the Claimants' interests in certain real estate properties and

bank accounts that the government claims are proceeds of, traceable to proceeds of, or involved

in laundering proceeds of, services provided to the Islamic Republic of Iran in violation of the

International Emergency Economic Powers Act ("IEEPA").  In addition to the forfeiture action,

a number of private plaintiffs have filed actions to attach the defendant properties in order to

satisfy default judgments the plaintiffs have obtained against Iran.

Throughout the pendency of the civil forfeiture action, the government has been conducting a criminal investigation based largely on the same underlying facts as the forfeiture action.  At the time the Court issued the Order, the scope of the criminal investigation included at least two grand jury subpoenas and the execution of at least one search warrant.  In addition, the former president of the Alavi Foundation, Farshid Jahedi, was indicted and pled guilty in 2009 to obstructing justice and destroying documents responsive to a government subpoena.  Neither the Claimants nor any other person, however, had been indicted based on any substantive charges arising from the conduct alleged in the forfeiture complaint.

On August 12, 2011, the Court issued the Order denying the Claimants' motion to stay interrogatories, depositions, and summary judgment briefing pending the resolution of the criminal investigation.  Since the August 12, 2011 Order, the government has continued pursuing its criminal investigation.  At present, it has served at least fourteen grand jury subpoenas, twelve of which were served on current or former employees or directors of the Alavi Foundation. (Decl. of Daniel S. Ruzumna in Supp. of the Alavi Foundation's and 650 Fifth Avenue Company's Mot. for Recons., or in the Alternative, Certification of Appeal Pursuant to Section 1292(B) ("Ruzumna Decl."), ¶¶ 2, 3.)  Most or all of the subpoenas compel the recipients to provide testimony and documents related to potential violations of the IEEPA, the statute on which the forfeiture action is based. (*Id.* ¶ 2.)  In addition, at least one of the government attorneys assigned to the civil forfeiture action is also assigned to the criminal investigation. (*Id.* ¶ 4.)  However, as at the time of the Court's Order, no indictments have yet occurred.

On September 6, 2011, the Claimants moved for reconsideration of the Order, or, alternatively, for certification of interlocutory appeal.

## LEGAL STANDARDS

### A.  Motion for Reconsideration

"Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Finkelstein v. Mardkha*, 518 F. Supp. 2d 609, 611 (S.D.N.Y. 2007) (internal quotation marks omitted).  Under Local Civil Rule 6.3, reconsideration is appropriate if the court overlooked controlling decisions or factual matters which, had they been considered, might reasonably have altered the result of the underlying decision. *See Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 474 (S.D.N.Y. 2009). To that end, "[a]ny controlling decisions or factual matters presented by a litigant for reconsideration must have been put before the Court in the underlying motion." *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258 (S.D.N.Y. 2009).  Alternatively, a court may grant such a motion to correct a clear error or prevent a manifest injustice. *Beljakovic v. Melohn Properties, Inc.*, 542 F. Supp. 2d 238, 244 (S.D.N.Y. 2005).  Finally, "[a] motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." *Finkelstein*, 518 F. Supp. 2d at 611 (internal quotation marks omitted).

### B.  Certification for Interlocutory Appeal

Interlocutory appeal is available when an order "involves a controlling question of law as to which there is substantial ground for difference of opinion [and] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This section constitutes "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda, Ltd.*, 191 F.3d 863, 865 (2d Cir. 1996).  Thus

courts should "exercise great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992).

> In determining whether an order involves a controlling question of law,
>
> the district court should consider whether:  reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases.

*Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24-25 (2d Cir. 1990); *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 54-55 (S.D.N.Y.1998)).

Immediate appeal may materially advance the ultimate termination of the litigation if it would "speed the District Court's consideration of the merits of the parties' claims or defenses." *In re City of N.Y.*, 607 F.3d 923, 933 (2d Cir. 2010); *see also Askin*, 139 F. Supp. 2d at 570 ("Immediate appeal may be considered to advance the ultimate termination of the litigation if 'appeal promises to advance the time for trial or to shorten the time required for trial.'" (quoting *In re Oxford*, 182 F.R.D. at 53)).  This element of the standard is particularly important. *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 310 (S.D.N.Y. 2007).  In practice, it also is "closely connected" to the question of whether the appeal involves a controlling question of law. *Askin*, 139 F. Supp. 2d at 571.

Furthermore, "district court judges have broad discretion to deny certification even where the statutory criteria are met." *Nat'l Asbestos Workers Med. Fund v. Phillip Morris, Inc.*, 71 F. Supp. 2d 139, 166 (E.D.N.Y. 1999) (Weinstein, J.). The Court will only grant certification, then, if the statutory criteria are met *and* the Court believes that immediate appeal would best foster a simultaneously effective and efficient judiciary.

## DISCUSSION

A. **Motion for Reconsideration**

Claimants focus much of their attention on the latter part of the standard for reconsideration—that is, that reconsideration may be granted to correct clear error or prevent manifest injustice.  In that regard, Claimants first argue that the Court applied the wrong presumption in assessing the propriety of a stay.  Claimants argue that the Court correctly identified that, in civil forfeiture cases, there is a "reversal of the presumption against a stay," (Order at 9), but that the Court nonetheless applied the traditional presumption that describes a stay as an "extraordinary remedy," *Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).  Thus, Claimants argue that the Court failed properly to apply the Second Circuit's admonition that "district courts—absent some sort of extraordinary situation—should exercise their discretion to stay civil forfeiture proceedings pending the completion of related criminal proceedings against the claimants."  *United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 905 (2d Cir. 1992).

To be sure, the Court described on one hand the Second Circuit's statement in *All Assets of Statewide Auto Parts* as creating "a reversal of the presumption against a stay" in the case of civil forfeiture actions. (Order at 9.)  The Court also described on the other hand a stay as an "extraordinary remedy." (Order at 5, 6, 17.)  In explaining the reversed presumption in civil forfeiture cases, the Court identified the primary source of that presumption:  the forfeiture claimant's particular "'dilemma'" either to "'remain silent and allow the forfeiture or testify against the forfeitability of his property and expose himself to incriminating admissions.'" (Order at 8 (quoting *United States v. Certain Real Prop. and Premises Known as: 4003-4005 5th*

*Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2d Cir. 1995)).).  The Court then concluded that Claimants

do not face this particular "dilemma" because the Claimants, as entities, have no Fifth

Amendment right against self-incrimination.  Accordingly, the Court held that it was "far from

clear that the government must demonstrate that this case presents an 'extraordinary situation.'"

(*Id.* at 11 (quoting *All Assets of Statewide Auto Parts, Inc.*, 971 F.2d at 905).)

That conclusion was not clear error.  Whether one describes a stay as an "extraordinary

remedy," *Trustees of the Plumbers and Pipefitters National Pension Fund*, 886 F. Supp. at 1139,

or as the presumptive remedy absent an "extraordinary situation," *All Assets of Statewide Auto

Parts, Inc.*, 971 F.2d at 905, the analysis in any event is "a highly fact-bound inquiry into the

'particular circumstances and competing interests involved in the case.'" *Sterling Nat'l Bank v.

A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) (quoting *Fed. Sav. & Loan Ins.

Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)).  In that sense, the weight of any initial

presumption often may not be dispositive.  This especially seems true where, as here, the key

concern animating the presumption in favor of a stay—that is, the Fifth Amendment rights of a

forfeiture claimant—is substantially absent because the Claimants here have no Fifth

Amendment rights.  Claimants, however, argue that "the Second Circuit has never expressly or

implicitly ruled that the presumption in favor of a stay only exists for individual claimants, but is

denied to corporate claimants whose directors or employees are asserting their Fifth Amendment

rights." (Mem. of Law in Supp. of the Alavi Foundation's and 650 Fifth Avenue's Mot. for

Recons. ("Claimant's Mem.") 6.)  Perhaps, but neither has the Second Circuit suggested that a

claimant's corporate status is irrelevant to the calculus.  Indeed, it makes far more sense to

determine the force of the reversed presumption in light of the presence or absence of the factors

that justified its creation in the first place than to treat it as a rule to be applied without reference

to its underlying concerns.  And here, a critical concern underlying the reversed presumption—the tension between a forfeiture *claimant*'s Fifth Amendment rights and the claimant's ability to defend the forfeiture action—is missing.[1]  Thus, the Court in its Order concluded that the force of any reversed presumption was substantially weakened and that the balance of relevant factors ultimately weighed against a stay.  The Court's Order therefore turned less on a mechanical application of any presumption and more on a careful analysis and balancing of each of the factors relevant to the propriety of a stay.  The presumption itself was not dispositive.  In other words, it is not enough for Claimants to point out an arguable error in the Court's starting point to prove a clear error in its result.

Claimants also argue that reconsideration is necessary to prevent manifest injustice.  Claimants argue, as they did in their papers supporting the underlying motion, that absent a stay, they "will be deprived of testimony that could otherwise be used to support their defense and rebut summary judgment motions" and that they thus will lack "a full and fair opportunity to litigate this case." (Reply Mem. of Law in Further Supp. of the Alavi Foundation's and 650 Fifth Avenue's Mot. for Recons. ("Claimant's Reply Mem.") 5.)  In addition, Claimants note that the criminal investigation has shifted into "high gear." (*Id.*)  Indeed, since the Court issued the Order, the government has served at least fourteen grand jury subpoenas, twelve of which were served on current or former Foundation directors or employees, all of whom "are likely

---

[1] Claimants' reliance on *United States v. Kordel*, 397 U.S. 1 (1970), for the proposition that "postponement of civil discovery until termination of criminal action would be appropriate for a *corporation* unable to fully participate in discovery due to officers' Fifth Amendment concerns," (Claimants' Reply Mem. 4), is inappropriate.  Claimants read *Kordel*'s dicta for far more than it is worth.  *Kordel* suggests that a stay may be appropriate where a corporation cannot respond *at all* to its discovery obligations.  It does not suggest that the same remedy would be appropriate whenever a corporation may be hampered by its employees' invocation of their Fifth Amendment rights.  Indeed, it is worth noting that one set of commentators likewise has interpreted *Kordel*'s dicta much more narrowly than Claimants, stating, with respect to the situation contemplated in *Kordel* that would justify a postponement of discovery, "[T]he case is unlikely ever to arise since Rule 33(a) allows any agent of the corporation, even its attorney, to answer interrogatories on behalf of a corporation." 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure*, § 2018, at 445 (3d ed. 2010).  As before, *Kordel* does not go as far as Claimants take it.

candidates to be deposed in the forfeiture action if depositions are not stayed." (*Id.*)  Further, at least one government lawyer assigned to the forfeiture action is also a lead attorney in the criminal investigation.  Claimants contend that quite apart from Fifth Amendment concerns, the parallel proceedings in this case implicate additional dangers that underscore the need for a stay. Specifically, Claimants contend that there is a particular risk here, due in large part to the presence of at least one of the same government lawyers in both actions, that the government will use one action to bolster the other, or that the government will use discovery in one action to improperly expand the scope of discovery in the other. *See All Assets of Statewide Auto Parts*, 971 F.2d at 903-04; *United States v. Certain Real Prop. and Premises Known as 1344 Ridge Rd., Laurel Hollow, Syosset, N.Y.*, 751 F. Supp. 1060, 1062 (E.D.N.Y. 1989).  The thrust of these facts, according to Claimants, is that unless the Court reconsiders its decision, Claimants will suffer manifest injustice.

Claimants' concerns no doubt are significant, but they are substantially the same issues that Claimants raised, and the Court addressed, in the August 12, 2011 Order. (*See* Order at 26 (describing the government's criminal investigation and stating that "this is not 'a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates criminal prosecution'" (quoting *United States v. Kordel*, 397 U.S. 1, 11-12 (1970)).)  To be sure, the presence of at least one of the same government lawyers in both actions and the recent activity in the criminal investigation suggest that the risk that Claimants in some ways will be hampered in their defense of the forfeiture action is more than speculative.  Indeed, the prospect of further grand jury subpoenas may serve to entrench the Foundation's employees' intention to invoke

their Fifth Amendment rights in any civil depositions,[2] and the presence of an overlapping government attorney makes likely the sharing of at least some information in both actions.  On the other hand, that the government continues to use "traditional methods of criminal investigation," (Order at 26), such as grand jury subpoenas, is evidence that the government is not using this civil forfeiture action as a "dry run," *All Assets of Statewide Auto Parts*, 971 F.2d at 903, or a "stalking horse," *Sterling National Bank*, 175 F. Supp. 2d at 579, for its criminal prosecutions.

As before, "Claimants surely find themselves in a difficult position." (Order at 26.)  But the difficulty of that position now is little more severe than at the time the Court issued its Order, and any incremental increase in that difficulty as a result of recent developments in the criminal investigation does not amount to manifest injustice. *Cf. Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 270 (2d Cir. 2011) (stating that manifest injustice exists, for example, "'[w]here a jury's verdict is wholly without legal support'" (quoting *Russo v. New York*, 672 F.2d 1014, 1022 (2d Cir.1982))).  Claimants have been aware of the criminal investigation nearly since the inception of the forfeiture action and have never attempted to assert on their own behalf any Fifth Amendment right against self-incrimination. Claimants still are entities and thus still have no Fifth Amendment right to remain silent.  As such, the difficulties Claimants may face in this action, while in practice the same difficulties faced by an individual claimant under similar circumstances, are not of the same underlying substance and character as those of the individual claimant.  As the Court stated in its Order:

> [T]he Constitution does not guarantee that the exercise of Fifth Amendment rights will be without cost in the civil arena.  If [a] party who chooses to assert the privilege against self-incrimination in a civil case must live with the

---

[2] In some sense, however, this concern is no greater now that at the time the Court issued its Order because, in connection with the underlying motion, Claimants submitted affidavits stating that Alavi Foundation employees intended to invoke their Fifth Amendment rights at any depositions to which they were subject.

consequences, it is all the more true that a corporation must live with the consequences of the corporate form, one of which is the inability to claim the Fifth Amendment privilege on behalf of corporate officers.  If this be seen as a "price" on the assertion of the privilege, or on the maintenance of the corporate form, so be it.

(Order at 26-27 (internal quotation marks and citations omitted).)  With that in mind, Claimants have not shown that bearing this "price" under these circumstances will result in manifest injustice.

The remainder of Claimants' arguments amount to little more than attempts to "reargue those issues already considered when a party does not like the way the original motion was resolved." *Finkelstein*, 518 F. Supp. 2d at 611 (internal quotation marks omitted).  Claimants for example argue that the Court attached too much significance "to the 'fact' that indictments have not been filed in connection with the pending criminal investigation," and that the Court overstated the public safety concerns that the Court found to counsel against a stay.  (Claimants' Mem. at 10-13.)

With respect to the first issue, Claimants argue that courts regularly stay civil forfeiture actions even in the absence of indictments, especially where, as here, the forfeiture action seeks to vindicate the same public interest as the criminal investigation.  Further, Claimants assert that by putting significant weight on the absence of indictments, the Court in effect enables the government "to manipulate whether a stay of forfeiture proceedings will be granted." (*Id.* at 10.) The Court, however, did not overlook these issues in its Order.  To the contrary, the Court recognized that a number of courts had granted stays of civil forfeiture actions where no indictments yet had been issued.  Each of those decisions, however, involved individual claimants who squarely faced the dilemma that the Claimants here do not—that is, the choice either to assert the Fifth Amendment right against self-incrimination and risk being handicapped

10

in the civil suit or to waive the right and risk adverse consequences in the criminal one. *See United States v. One Hewlett Packard Pavilion Laptop*, No. C-09-02664, 2009 WL 3061998 (N.D. Cal. Sept. 21, 2009); *United States v. One Assortment of Seventy-Three Firearms*, 352 F. Supp. 2d 2 (D. Me. 2005); *United States v. All Monies, Negotiable Instruments and Funds in Account No. ALE 238254 F.Z.*, No. 93 Civ. 336, 1996 WL 807890 (E.D. Tex. Jan. 25, 1996); *United States v. All Funds and Other Prop. Contained in Accounts of the U.S. Nat'l Bank of Or.*, 727 F. Supp. 1372 (D. Or. 1990).  In addition, the Court did not ignore the fact that it is the government "that has saddled Claimants with their problem." (Order at 12, 26.)  The Court, however, found that any concern in that regard was outweighed in large part by the Claimants' lack of Fifth Amendment rights and a lack of evidence that the government in fact was using the forfeiture action as a dry run for its criminal prosecutions.  Claimants' attempt now to readjust the Court's balancing of these factors—factors that it fully considered in the first instance—is not enough to justify reconsideration of the Order.

The same is true with respect to Claimant's argument regarding the public interest in enforcing the forfeiture statute.  The Court concluded that the public interest weighed against a stay because

> a civil forfeiture action against alleged proceeds of IEEPA violations aims to take property out of the hands of a government which is actively supporting terrorism as an instrument of state policy and whose actions constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States.

(Order at 24 (internal quotation marks and citations omitted).)  Claimants disagree, largely because the defendant properties are under the supervision of the court appointed monitor.  But as long as the property remains in the Claimants' hands, and as long as the forfeiture proceeding remains unresolved, some risk remains.

Finally, Claimants argue that the Court's reliance on *In re Phillips, Beckwith & Hall*, 896 F. Supp. 553 (E.D. Va. 1995), was misplaced.  In the Claimants' view, the principle significance of *Phillips* is its recognition and proper application of the presumption in favor of a stay of civil forfeiture proceedings for the benefit of an entity-claimant.  But as explained above, the Court's treatment in the Order of the various presumptions was not clear error.

In sum, the Claimants arguments, whether viewed individually or as a whole, are insufficient to justify reconsideration of the Court's Order.  The Claimants have failed to show clear error with respect to the Court's treatment of the "reversal of the presumption against a stay;" they have failed to show that reconsideration is needed to prevent manifest injustice; and they have failed to show that the Court overlooked controlling decisions or factual matter that reasonably might have altered the result of the underlying decision.  Indeed, much of Claimants' motion amounts to little more than an attempt to recalibrate the Court's balancing of the relevant factors in an effort "solely to relitigate . . . issue[s] already decided." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  As such, Claimants have not shown a proper basis for the Court to upset its prior decision, and their motion for reconsideration therefore is denied.

## B.  Motion for Certification of Interlocutory Appeal

Alternatively, Claimants seek certification of the Court's Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Claimants argue that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Claimants contend that the standard is met here because (1) in the Claimants' view, the Court's treatment of the Second Circuit's admonition in *All Assets of Statewide Auto Parts* was "erroneous *as a matter of law*," (Claimants' Reply Mem. 8 (emphasis in original).),

and (2) an immediate appeal will prevent the duplication of litigation that would occur if the Court's denial of a stay were found to be erroneous on an appeal taken *after* the case reached a final judgment.

Claimants' primary legal contention is that *All Assets of Statewide Auto Parts* requires a district court, absent an "extraordinary situation," to grant a stay in a civil forfeiture action pending the completion of parallel criminal proceedings.  Claimants argue that this rule should apply in full force even where, as here, the claimants in the forfeiture action are entities with no Fifth Amendment rights.  This issue, Claimants contend, is a "controlling question of law" that makes the Order appropriate for interlocutory appeal.

The issue no doubt is a legal one, and the fact that its resolution will not dispose of the litigation is not fatal to the appropriateness of an immediate appeal. *See, e.g.*, *Klinghoffer,* 921 F.2d at 24; *Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 965-66 (2d Cir. 1988) (finding the § 1292(b) criteria satisfied with respect to a district court's ruling on a motion to transfer venue where the defendant argued "that the court considered improper factors in making its decision to transfer"); *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 598 (9th Cir. 1964).  On the other hand, a question is "controlling" only when "at a minimum, . . . determination of the issue on appeal would materially affect the litigation's outcome." *Consub Del. LLC*, 476 F. Supp. 2d at 309.  In that regard, it is hardly clear that the Court's decision to deny Claimant's motion for a stay can be said to involve a "controlling question of law." 28 U.S.C. § 1292(b); *see MCI Commc'ns Corp v. AT&T Co.*, No. CA 79-1182, 1982 WL 1818, at *1 (D.D.C. 1982) ("[T]he question of a stay is left to the sound discretion of the trial court and under the facts of this case cannot be considered a 'controlling question of law.'"). *But see Lear Siegler*, 330 F.2d at 598 ("The controlling question of law here involved is whether the district court was in error or

13

abused its discretion in granting the stay [pending resolution of a related state court proceeding].").

In any event, immediate appellate review of the Order is unlikely to "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  The Court is not unsympathetic to the concern that significant aspects of this case may need to be relitigated if the Court's Order is found to be erroneous on an appeal taken after final judgment is entered.  The more relevant consideration, however, is whether immediate appellate review would "speed the District Court's consideration of the merits of the parties' claims or defenses." *In re City of N.Y.*, 607 F.3d at 933.  Here, of course, it would not.  Review of the Order would not directly impact any issue relevant to the merits of either the forfeiture action or the attachment actions.  Nor would appellate review of the Order speed consideration of the merits or potentially dispose of the case. *Cf. Red Bull Assocs.*, 862 F.2d at 965 n.5 (finding that appellate review of district court's decision on motion to transfer venue would materially advance the ultimate termination of the litigation because, if the motion were granted, the plaintiffs would not pursue their case). As in *In re City of New York*, where the Second Circuit held that the district court's order compelling the City to produce "certain sensitive intelligence reports" would not have qualified for § 1292(b) certification, it similarly is the case here that "no matter how the . . . dispute is resolved, the District Court must then proceed to resolve the merits of plaintiffs' claims, whether by trial or by dispositive motion." *In re City of N.Y.*, 607 F.3d at 928, 933.  Accordingly, appellate review of the Order will not materially advance the ultimate termination of the litigation. *See id.*  Claimants' motion for certification of interlocutory appeal therefore is denied.

## CONCLUSION

For the reasons stated above, Claimants' motion for reconsideration, or, alternatively, certification of appeal [209] is DENIED.


SO ORDERED.

Dated: New York, New York
February  2 , 2012

Richard J. Holwell
United States District Judge