UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                    :

IN RE 650 FIFTH AVENUE AND   :
RELATED PROPERTIES              :
                    :
                    :
                    :
                    :
                    :
                    :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUN 0 6 2013

08 Civ. 10934 (KBF)
and all member and
related cases

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Five groups of plaintiff-judgment creditors to this asset forfeiture and

turnover action – the Rubin, Greenbaum, Acosta, Beer, and Kirschenbaum

plaintiffs[1] – have moved for partial summary judgment against defendants Assa

Corp. and Assa Co., Ltd. (collectively, the "Assa Defendants"). The movant

plaintiffs seek a determination that the Assa Defendants' interests in various

properties, including the building at 650 Fifth Avenue in Manhattan (the "650

Properties"), are "blocked assets" pursuant to the Terrorism Risk Insurance Act of

2002 ("TRIA") and are thus subject to execution and turnover by terrorism victim

judgment creditors of the Islamic Republic of Iran ("Iran").[2]

---

[1] The motion was filed originally by the Rubin plaintiffs and has since been joined by the
Greenbaum, Acosta, Beer, and Kirschenbaum judgment creditor groups. These creditors were the
plaintiffs in the following default judgment actions: (1) Greenbaum et al. v. Islamic Republic of Iran,
et al. ("Greenbaum action"), 02 Civ. 2148 (RCL)(D.D.C.); (2) Acosta, et al. v. Islamic Republic of Iran,
et al. ("Acosta action"), 06 Civ. 745 (RCL)(D.D.C.); (3) Rubin, et al. v. Islamic Republic of Iran
("Rubin action"), 01 Civ. 1655 (RCL)(D.D.C.); (4) Beer et al. v. Islamic Republic of Iran et al. ("Beer
action"), 08 Civ. 1807 (RCL)(D.D.C.);(5) Kirschenbaum et al. v. Islamic Republic of Iran et al.
("Kirschenbaum action").
[2] The claims against the Assa Defendants are only a portion of those at issue in this consolidated
litigation. The private plaintiffs also seek turnover from the co-owners of 650 Fifth Avenue and its

Plaintiffs' argument is straightforward: the U.S. Department of Treasury's Office of Foreign Asset Control ("OFAC") has declared the Assa Defendants to be "front companies" for Bank Melli, undisputedly an instrumentality of Iran. TRIA permits judgment creditors such as the movant plaintiffs to obtain turnover orders against assets of "agencies or instrumentalities" of Iran. As OFAC has declared the Assa Defendants to be alter egos of an instrumentality of Iran, their assets are thus subject to turnover. The Assa Defendants dispute that the informal OFAC determinations are either admissible or conclusive, and further claim that the OFAC designation violated defendants' procedural due process rights.

For the reasons set forth below, the Court grants plaintiffs' motion for partial summary judgment.

## I. STATUTORY BACKGROUND

Several statutory and administrative provisions are relevant to the resolution of the pending motion.

### a. TRIA

First, the Terrorism Risk Insurance Act of 2002 ("TRIA"), codified in a note to the Foreign Sovereign Immunities Act, permits a judgment creditor of a terrorist state plaintiff to execute against "blocked" assets of a terrorist party. TRIA states, in relevant part:

> Notwithstanding any other provision of law . . . , in every case in

---

related properties – defendants Alavi Foundation and 650 Fifth Avenue Company (collectively, the "Alavi Defendants"). In addition, the U.S. Government seeks forfeiture of the 650 Properties. Neither the Government's civil forfeiture action, nor the private plaintiffs' claims with respect to the Alavi Defendants, is at issue here.

> which a person has obtained a judgment against a terrorist party
> on a claim based upon an act of terrorism, or for which a terrorist
> party is not immune under section 1605(a)(7) of title 28, United
> States Code, the blocked assets of that terrorist party (including the
> blocked assets of <u>any agency or instrumentality of that terrorist
> party</u>) shall be subject to execution or attachment in aid of
> execution in order to satisfy such judgment to the extent of any
> compensatory damages for which such terrorist party has been
> adjudged liable.

TRIA § 201(a), Pub. L. No. 107–297, Title II, 116 Stat. 2337 (2002)(emphasis
added).

TRIA defines the term "blocked asset" as "any asset seized or frozen by the
United States . . . under sections 202 and 203 of the International Emergency
Economic Powers Act ["IEEPA"] (50 U.S.C. 1701; 1702)." TRIA § 201(d)(2).

Finally, the statute defines a "terrorist party" as "a terrorist, terrorist
organization . . . . , or a foreign state designated as a state sponsor of terrorism
under section 6(j) of the Export Administration Act of 1979 (50 U.S.C.App. 2405(j))
or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371)."  TRIA §
201(d)(4).  Iran has been designated as a "state sponsor of terrorism" under section
6(j) of the Export Administration Act of 1979 since January 19, 1984.  <u>See</u> State
Sponsors of Terrorism, U.S. Dep't of State, at
http://www.state.gov/j/ct/list/c14151.htm (last visited May 29, 2013).  Bank Melli is
an instrumentality of Iran.  <u>See</u> <u>In re 650 Fifth</u> <u>Ave. and</u> <u>Related Properties</u>, 881 F.
Supp. 2d 533, 538 n.6 (S.D.N.Y. 2012)(<u>citing</u> <u>Weinstein v. Islamic Republic of Iran</u>,
609 F.3d 43, 48 (2d Cir. 2010)); <u>Estate of Heiser, et al. v. Bank of Tokyo Mitsubishi
UFJ, New York Branch</u>, No. 11 Civ. 1601 (PKC), 2013 WL 342684 (S.D.N.Y. Jan.

29, 2013).

  b. Executive Order 13382

In 2005, President Bush delegated to the Department of Treasury the

authority to designate the entities whose assets are blocked under IEEPA, and any

entity "owned or controlled by, or acting or purporting to act on behalf of, directly or

indirectly," any such blocked party.  See Exec. Order 13382, Blocking Property of

Weapons of Mass Destruction Proliferators and Their Supporters, 70 FR 38567

(June 28, 2005).

  II. FACTUAL BACKGROUND

Only a few undisputed facts are material to the instant motion.

First, the United States Department of Treasury maintains a "Specially

Designated Nationals and Blocked Persons List" ("SDN list").  OFAC, the Treasury

office that administers the SDN list, describes the list as

> [A] reference tool providing actual notice of actions by OFAC with respect to
> Specially Designated Nationals and other persons (which term includes both
> individuals and entities) whose property is blocked, to assist the public in
> complying with the various sanctions programs administered by OFAC.

See SDN List, May 23, 2013, available at

http://www.treasury.gov/ofac/downloads/t11sdn.pdf.

On October 25, 2007, OFAC designated Bank Melli – an instrumentality of

Iran – as a party whose property and interests in property are blocked pursuant to

E.O. 13382.  (See also Defs.' Local R. 56.1 Stmt. in Response to Pl.'s Local R. 56.1

Stmt. ("Defs.' 56.1 Reply") ¶ 1.1.)  In light of that determination, OFAC added Bank

Melli to the SDN list.  Bank Melli remains on the SDN list as of May 23, 2013.

4

Bank Melli was the legal owner of an indirect, 98% interest in the Assa Defendants until the mid-1990s, but it currently has no legal ownership interest in either of the Assa Defendants. (Id. ¶¶ 3-4.) Defendant Assa Corp. – the entity that is a partial owner of the 650 Properties – is itself wholly owned by defendant Assa Co. Ltd. (Id. ¶ 1.) Assa Co. Ltd. is a Jersey Islands entity, fully owned by two shareholders – Davood Shakeri and Fatemah Aghamiri. (Id. ¶¶ 1-2.) Neither Shakeri nor Aghamiri is currently employed by Iran. (Id.)

OFAC added the Assa Defendants to the SDN list on December 17, 2008, and declared that the Assa Defendants' property and interests in property are "blocked" pursuant to E.O. 13382. (Id. ¶¶ 3-4.) OFAC issued a press release[3] labeling the Assa Defendants as "front companies" for Bank Melli and explained that they were being designated under, "Executive Order 13382 for being controlled by, and for acting for or on behalf of, Iran's Bank Melli, and for having provided financial support for, or services in support of, Bank Melli." (See U.S. Dept. of Treasury, Press Release, "Treasury Designates Bank Melli Front Company in New York City" ("OFAC Press Release"), Decl. of Aitan D. Goelman ("Goelman Decl.") Ex. B., available at http://www.treasury.gov/press-center/press-releases/Pages/hp1330.aspx.)

---

[3] The Assa Defendants argue that the press release is inadmissible pursuant to the Federal Rules of Evidence and Local R. 56.1. The Court disagrees; Fed. R. Evid. 803(8) provides a hearsay exception for certain public records. The Court finds that this press release is a "statement of a public office" that sets out "factual findings from a legally authorized investigation", and neither the source of the information – here OFAC – nor other circumstances indicate a lack of trustworthiness. In fact, the blocking notice referenced infra adds to the press release's indicia of reliability.

OFAC also sent Assa Corp. a blocking notice, which states in relevant part that

> OFAC's action is based on its determination that Assa Corporation is controlled by, acts for or on behalf of, and had provided financial support for, and services in support of Bank Melli, an entity previously designated pursuant to E.O. 13382. This determination is based, in part, on information demonstrating that Bank Melli created Assa as a vehicle to hold Bank Melli's interest in a building located at 650 Fifth Avenue, New York, New York . . . . Assa has regularly followed Bank Melli's instructions with regard to Assa's affairs and its management of the investment, and has regularly reported back to Bank Melli on its financial situation, including frequently responding to Bank Melli requests for audits and information regarding company expenses.

(OFAC Blocking Notice, Dec. 11, 2008, Goelman Reply Decl. Ex. A.)

The Assa Defendants have not formally challenged their SDN designations, either before OFAC or in a court proceeding pursuant to the Administrative Procedures Act.

### III. STANDARD OF REVIEW

Summary judgment is warranted if the pleadings, admissible discovery materials and declarations setting forth statements that would themselves be admissible at trial (that is, not objectionable, such as hearsay, etc.), demonstrate that there is no genuine issue of fact necessitating trial. Fed. R. Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). A genuine fact issues exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010)(citing Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008)). Where it is

clear that no rational trier of fact could find in favor of the non-moving party, summary judgment is warranted. Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994).

Once a moving party has put forward facts showing that the non-movant's claims cannot be sustained, the opposing party must come forward with specific facts showing a genuine issue of material fact requiring trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).

In addition, parties may not defeat summary judgment on the basis of conclusory allegations or assertions; they must offer some hard evidence in support of such factual assertions. See Hicks v. Baines, 593 F.3d 159, 166 (2d Cir, 2010); Brink v. Union Carbide Corp., 210 F.3d 354 (2d Cir. 2000) ("Rule 56 provides that any affidavits submitted in opposition to a properly supported motion for summary judgment 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.")

Accordingly, the evidence proffered by the party opposing summary judgment must be of a type that would be admissible at trial. Id. ("Thus, 'hearsay testimony . . . that would not be admissible if testified to at . . . trial may not properly be set forth in [a Rule 56] affidavit.'")(citing Fed. R. Civ. P. 56(e); H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir.1991); Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir.1985) (a party

"cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial.")).

Ultimately, of course, a party must show that there is more than some metaphysical doubt as to the material facts. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

IV. ANALYSIS

    a. OFAC Determination

The movant plaintiffs request a determination that the Assa Defendants' interests in the 650 Properties constitute "blocked assets" under TRIA § 201. To merit partial summary judgment, plaintiffs must demonstrate that no material issue of facts exist that the Assa interests in the 650 Properties are (1) "blocked assets" (2) "of" (3) an "instrumentality" of (4) a "terrorist party". TRIA § 201(a). There is no triable issue of fact as to these elements.

As an initial matter, the parties do not dispute that Iran is a "terrorist party" for purposes of TRIA, nor do they dispute that Bank Melli is an instrumentality of Iran, or that Assa Co. Ltd. owns Assa Corp., which, in turn, owns interests in the 650 Properties.

Next, OFAC has made a determination that the Assa Defendants are instrumentalities of Iran. Specifically, the Blocking Notice sent to the Assa Defendants declared that "OFAC's action is based on its determination that Assa Corporation is controlled by, acts for or on behalf of, and had provided financial support for, and services in support of Bank Melli."

Because of the OFAC determination, the Assa Defendants' assets are blocked pursuant to OFAC-coordinated sanctions regimes. Plaintiffs correctly argue that "blocking" for the purposes of the SDN list requires the Court to find that the assets are "blocked" for the purposes of TRIA § 201 as well. This conclusion follows from the fact that the blocking determinations in both the OFAC-SDN context and in TRIA § 201(a) have the same statutory source – IEEPA. OFAC's blocking determinations are made pursuant to E.O. 13382, which permits the President or his designee to block assets for purposes of IEEPA. Likewise, TRIA defines a "blocked asset" as "any asset seized or frozen by the United States under . . . [IEEPA]." TRIA § 201(d)(2)(A). The OFAC determination that an asset is blocked is therefore conclusive for purposes of defining a "blocked asset" in TRIA.

Thus, though plaintiffs' sole evidentiary support consists of the OFAC blocking determination and associated materials, that is sufficient. The OFAC materials demonstrate that the Assa Defendants are instrumentalities of a terrorist party, Iran, that their interests in the 650 Properties are "blocked assets," and that those assets are "of" the instrumentality of Iran. Defendants have failed to raise a triable issue as to any of these matters. Under TRIA § 201(a), then, a terrorism judgment creditor possessing a valid judgment may execute upon those interests.

b. Assa's Response

The Assa Defendants make two – ultimately unpersuasive – statutory and constitutional arguments in opposition to the instant motion. They do not dispute that they are included on the SDN list, but rather they argue: (1) that the Court

9

must make an independent determination of what constitutes "ownership" of a §
201 blocked asset – and issues of material fact as to whether Bank Melli owns the
Assa Defendants preclude summary judgment, and (2) that, even if the SDN list is
sufficient to grant plaintiffs' partial summary judgment motion, the OFAC process
violated due process and must be rejected.  Neither argument raises a triable issue
of fact.

### i.  FSIA and TRIA Definitions of Instrumentality

The Assa Defendants' argument that plaintiffs must proffer evidence beyond
the OFAC designation to establish that an instrumentality of Iran owns the Assa
interest in the 650 Properties is legally incorrect.

They argue that the analysis differs when determining what is a "blocked"
asset for purposes of the SDN list versus defining an asset "of" a terrorist party
under TRIA § 201(a).  In furtherance of this proposition, they first rely improperly
upon cases in this District regarding the ownership of mid-stream electronic funds
transfers (EFTs). See Calderon-Cardona v. JPMorgan Chase Bank, N.A., 867
F.Supp.2d 389, 404 (S.D.N.Y. 2011)(quoting U.S. Government statement in briefing
in another case that – with respect to EFTs – "[a]ny determination of whether
particular assets are not immune from execution under TRIA will require the Court
to determine whether the [defendant government] has a sufficient ownership
interest in the assets such that the assets are – in TRIA's language – assets 'of that
terrorist party.'")

Calderon-Cardona is inapposite, however. There, the court held that the plaintiffs could not prove under principles of state property law[4] that the midstream EFTs attached in the United States were owned by a terrorist party – there North Korea – at the time of transfer. See id. at 400. The EFTs were described as ephemeral interests that appeared in the United States only briefly, en route from a transferor to a transferee – neither of whom "owned" the assets at the time of transfer.

In contrast, here there is no dispute that the Assa Defendants own the titled interest in the 650 Properties.[5] Plaintiffs need not draw a direct connection between the 650 Properties and the Assa Defendants where those defendants admit they are the title owners of the interest.

Nor are the Assa Defendants correct to argue that the Court must second-guess the OFAC determination that Assa Corp. and Assa Co. Ltd. are alter egos of Bank Melli and thus are themselves instrumentalities of Iran. Defendants argue that the Court must apply a three-factor test from FSIA to determine whether they are instrumentalities of Iran. See 28 U.S.C. 1603(b).[6] That test requires, inter alia, that the instrumentality be an "organ" of a foreign state or that the foreign

---

[4] This Court makes no determination here as to whether TRIA overrides state property law principles as regards EFTs. Compare Calderon-Cardona, 867 F. Supp. 2d at 399-400 with Hausler v. JPMorgan Chase Bank, N.A., 845 F. Supp. 2d 553, 566 (S.D.N.Y. 2012).

[5] This Court has previously distinguished Calderon-Cardona in an opinion in a similar case brought by many of the same judgment creditor plaintiffs. See Peterson v. Islamic Republic of Iran, 2013 WL 115576 (S.D.N.Y. Mar. 13, 2013).

[6] That statute provides: "An "agency or instrumentality of a foreign state" means any entity--(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, tor a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country." 28 U.S.C. 1603(b).

state owns a majority of its shares – Assa states that it is neither.  Further, defendants argue that OFAC's assertion that it is an alter ego of Bank Melli is unsupported by admissible evidence.

Even if the Court accepts Assa's premise that plaintiffs must proffer evidence to satisfy the definition in 28 U.S.C. § 1603(b)[7], plaintiffs have done so.  While the SDN listing is not dispositive as a general matter,[8] in this case the OFAC determination, as presented by the SDN list, the OFAC press release, and the Blocking Notice letter, is specific and entitled to deference.  The Blocking Notice states OFAC's findings that Assa Corp. was created by Bank Melli as a front company to hold its interest in the 650 Properties, has transferred rental income via Assa Co. Ltd. to Bank Melli, and has followed Bank Melli's instructions as regards its affairs and the management of the 650 Properties.  According to OFAC, the Assa Defendants are nothing but alter egos of Bank Melli and thus instrumentalities of Iran.

---

[7] This proposition is doubtful.  Section 1603(b) defines "agency or instrumentality of a <u>foreign state</u>" for purposes of FSIA, not agencies or instrumentalities of "terrorist parties" – the term used in TRIA § 201.  While Iran qualifies as a "terrorist party" under TRIA, the language of § 1603(b) does not mandate that Iran's alleged instrumentality must meet the 1603(b) requirements (<u>i.e.</u>, that it is an organ of the sovereign state or majority-owned by the sovereign state).  Thus, Assa's invocation of <u>Filler v. Hanvit Bank</u>, 378 F.3d 213, 219 (2d Cir. 2004) is irrelevant.  <u>Filler</u> held that a foreign bank owned by an instrumentality of a sovereign state was not itself an instrumentality of that state – and thus could not benefit from sovereign immunity protection.  <u>Id.</u>  That case did not address the definition of an "instrumentality" for the purposes of a "terrorist party" under TRIA.

[8] The Assa Defendants correctly point out that the SDN list is broader than the reach of TRIA § 201(a).  SDNs are defined as "individuals and entities which are owned or controlled by, or acting for or on behalf of, the governments of target countries or are associated with international . . . terrorism."  <u>See</u> SDN List.  Thus, some entities on the SDN list may be mere associates of international terrorism and not subject to TRIA's blocking regime.  As analyzed above, however, the SDN listing of the Assa Defendants contains more specific OFAC findings in harmony with the TRIA requirements.

These findings are entitled to deference.  OFAC has been delegated the authority to administer the SDN listing regime, and the Court must therefore give effect to its informal adjudications, unless they are "plainly inconsistent" with the relevant statutes and OFAC regulations.  See Consarc Corp. v. Iraqi Ministry, 27 F.3d 695, 702 (D.C. Cir. 1994)(citing Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 844–45 (1984)).  Given OFAC's unique expertise in matters of terrorist finance and the sensitive nature of the investigations upon which OFAC makes its determinations, it is entitled to deference even greater than that afforded an administrative agency statutory interpretation under Chevron.  See id. (stating that OFAC's interpretation of its "own regulations receives an even greater degree of deference than the Chevron standard, and must prevail unless plainly inconsistent with the regulation"); see also Holy Land Found. for Relief & Dev. v. Ashcroft, 219 F. Supp. 2d 57, 68 (D.D.C. 2002) aff'd, 333 F.3d 156 (D.C. Cir. 2003)(OFAC interpretation of "legally enforceable interest" entitled to deference).  Even if the OFAC press release cannot be viewed as an "informal adjudication", the Blocking Notice sent to Assa Corp. has the requisite formality to merit this deference. OFAC's factual findings explained in the Blocking Notice are neither unreasonable nor do they contradict the express statutory language of FSIA, IEEPA, TRIA, or E.O. 13382.  As discussed below, to the extent that the Assa Defendants dispute the factual findings made by OFAC, they should have filed an administrative challenge to dispute those findings; they have not done so.

Finally, the Assa Defendants' evidence in opposition to the SDN designation fails to raise a triable issue of fact. They put forward the declaration of Davood Shakeri, president of both Assa entities, which avers that Bank Melli does not own the Assa Defendants, and that neither Assa entity has any Iranian government employees or owners.[9]  (Shakeri Decl. ¶¶ 1-4.)  The legal ownership of the Assa Defendants is not in issue, however.  OFAC has determined that, despite the lack of legal ownership, Bank Melli controls the activities of the Assa Defendants and makes specific factual findings such as the remittance of rental payments by the Assa Defendants to Bank Melli and control of Assa Corp.'s investment management by Bank Melli.  The Shakeri Declaration does not rebut any of these factual findings or raise a triable issue of fact.

ii.  Due Process

In addition to their statutory challenge, the Assa Defendants claim the SDN designation denied them constitutional due process – and that the Court must therefore disregard the designation.  The Court finds that the Assa Defendants did not exhaust the available remedies and cannot therefore assert a due process objection here.

Defendants do not dispute that they have not filed a petition for administrative reconsideration before OFAC, as is their right under 31 C.F.R. § 501.807 (setting out procedures by which "[a] person may seek administrative reconsideration of . . . its [SDN] designation . . . as blocked, or assert that the

---

[9] Shakeri admits, however, that until January 1, 1995, Bank Melli was a 98% owner of Harter Holdings – itself the 98% owner of Assa Ltd.  (Id. ¶¶ 11-13.)

circumstances resulting in the designation no longer apply, and thus seek to have the designation rescinded."). Nor have they filed a court challenge pursuant to the Administrative Procedure Act. The Assa Defendants cannot attack the SDN listing on due process grounds without first availing themselves of the processes they are due. See, e.g., Milena Ship Management Co. Ltd. v. Newcomb, 804 F. Supp. 846, 852 (E.D. La. 1992)(finding OFAC exhaustion requirement); Global Relief Found., Inc. v. O'Neill, 207 F. Supp. 2d 779, 805 (N.D. Ill. 2002) aff'd, 315 F.3d 748 (7th Cir. 2002)(noting "the director of OFAC is an appropriate person to consider administrative appeals" of blocking determinations). Even had they appropriately challenged the OFAC designation, a due process challenge to a designation made under emergency Presidential authority is a steep hill to climb. See Holy Land Found. for Relief & Dev., 219 F. Supp. 2d at 76 (denying due process challenge to OFAC designation and noting broad executive authority in this area).

## CONCLUSION

For the reasons set forth above, the Rubin, Beer, Kirschenbaum, Greenbaum, and Acosta plaintiffs' motion for partial summary judgment is GRANTED. Specifically, the Court finds that the Assa Defednants' assets are "blocked assets" as defined in § 201 of TRIA and that the Assa Defendants' assets constitute "blocked assets" of Bank Melli, an instrumentality of Iran. As such, the Assa Defendants' interests in the 650 Properties are subject to execution by judgment creditors in possession of valid terrorism-based judgments against Iran.

However, the Court does not make any factual findings as to the validity or priority of the various judgment creditors' private judgments.[10]  Nor does it make any findings of fact as regards the Assa Defendants for the purposes of the Government's civil forfeiture action; the Court takes no position as to how, if at all, the Government's standard of proof as regards the Assa Defendants differs from that of the private plaintiffs.

The Clerk of Court is directed to close the motions at ECF No. 373 in 08 Civ. 10934, ECF No. 107 in 09 Civ. 165, and ECF No. 108 in 09 Civ. 166.

SO ORDERED.

Dated:     New York, New York
            June 6, 2013

KATHERINE B. FORREST
United States District Judge

---

[10] The Hegna judgment creditor group raised concerns that the movant plaintiffs' partial summary judgment motion effectively requests an adjudication of the validity of their liens. (ECF No. 509.) The movants insist – and the Court agrees, as stated above – that no such determination is necessary to grant partial summary judgment here. (ECF No. 510.)  The Court reiterates that it makes no findings as to the validity or priority of the private plaintiffs' judgments.