UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In re 650 Fifth Avenue and Related Properties

08 Civ. 10934 (KBF)

------------------------------------------------------------------X


**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO CLAIMANTS THE ALAVI FOUNDATION AND 650 FIFTH AVENUE COMPANY'S MOTION TO DISMISS FOR DUE PROCESS VIOLATIONS**


PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Sharon Cohen Levin
Michael D. Lockard
Martin S. Bell
Carolina A. Fornos,
          Assistant United States Attorneys
Anand Sithian,
          Special Assistant United States Attorney
*- Of Counsel -*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT…………………………………………………………......1

FACTUAL BACKGROUND……...................……………………………………….....3

   **A.  The Government's Civil Forfeiture Action**……………………………………………3

   **B.  Production of Documents Begins in 2012 Due To Claimants' Motions**………………4

   **C.  The Government Regularly Advised the Court and Claimants of the Complexity of Discovery In This Case**…………………………………………...…..5

   **D.  The Court Addresses Each and Every Discovery Motion by Claimants**……………8

ARGUMENT……………………………………………………………………9

  **I.  CLAIMANTS' PURPORTED DUE PROCESS VIOLATIONS LACK MERIT**……………………………………………………………9

    **A.  The Government Has Demonstrated Good Faith In Its Discovery Production**………...................…………………………......9

      **1.  Legal Standards for Discovery**................................................ 9

      **2.  The Government Has Produced Relevant Non-Privileged Documents And Claimants Have Suffered No Prejudice**……………11

      **3.  Any Prejudice Resulting From The Timing of Government's Document Production Has Been Cured**………………………………17

      **4.  The Government Has Appropriately Used The Classification And Privilege Assertions In Document Production**……………………19

    **B.  No Due Process Implications Arise From the Parallel Criminal Investigation**..........................................................21

CONCLUSION...............................................................................24

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*In re 650 Fifth Ave.*
   2011 WL 3586169 (S.D.N.Y. Aug. 12, 2011) ....................................................................21-22

*In re Alliance Pharm. Sec. Litig.*
   No. M-8-85, 1995 WL 51189 (S.D.N.Y. Feb. 9, 1995) ............................................................ 9

*In re Subpoena Issued to Dennis Friedman*
   350 F.3d 65 (2d Cir. 2003) ...................................................................................................... 10

*In re The City of New York*
   607 F.3d 923 (2d Cir. 2010) ............................................................................................. 10, 12

*Jones v. Goord*
   95 Civ. 8026 (GEL), 2002 WL 1007614 (S.D.N.Y. May 16, 2002) ........................................ 10

*Libutti v. United States*
   107 F.3d 110 (2d Cir. 1997) .................................................................................................... 23

*Ross v. Bolton*
   106 F.R.D. 22 (S.D.N.Y. 1985) ............................................................................................... 10


### <u>Other Authorities</u>

Fed. R. Civ. P. 26(b)(1) ............................................................................................................... 9

Fed. R.Civ. P. 26(b)(2)(C) .......................................................................................................... 10

*United States v. Jahedi*
   09-cr-00460 (SAS) (S.D.N.Y.) ................................................................................................. 3

## <u>PRELIMINARY STATEMENT</u>

The Government respectfully submits this memorandum of law in opposition to the Alavi Foundation's ("Alavi" or "Foundation") and 650 Fifth Avenue Company's ("Fifth Avenue Company") (collectively, "Claimants") motion to dismiss the Government's Verified Amended Complaint based on purported violations of Claimants' Fifth Amendment due process rights. (ECF Dkt. No. 712).   Simply put, Claimants' motion is a compilation of all of Claimants' previously submitted discovery-related disputes, each of which has been independently and carefully addressed, considered, and ruled upon by this Court.

As the Court is well aware, the Government initially filed this forfeiture action against Assa Corp. and Assa Co. Limited (collectively, "Assa") and Bank Melli Iran ("Bank Melli") on December 17, 2008, seeking to forfeit property that, among other things, was alleged to be derived from proceeds traceable to violations of the International Emergency Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1701, *et seq.*  On November 12, 2009, the Government amended its action to add Claimants.  For nearly two years thereafter, Claimants filed motions to dismiss (unsuccessfully), motions to stay the forfeiture case (unsuccessfully), motions to reconsider the denial of the stay (unsuccessfully), and as a result, discovery did not commence until 2012.  Since that time, the Government has produced in excess of a million pages of documents, made law enforcement witnesses available for deposition – even retired agents, and undertook an extensive declassification process within the Federal Bureau of Investigation ("FBI") to ensure production of relevant documents to Claimants when the key documents relating to the concealment of the IEEPA violations were in the possession of Claimants themselves.

1

Despite the extensive discovery provided by the Government, Claimants have sought, among other things, ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████ In each instance, the Court has carefully considered Claimants' requests and, where the Court deemed appropriate, fashioned a remedy, including precluding the Government from using documents produced after April 1, 2013, precluding the Government's tax expert, ordering the re-opening of depositions, and overruling the Government's assertion of the law enforcement privilege with respect to payment information to a CHS.

Notwithstanding the extensive discovery proceedings in this matter and the Claimants' ample access to due process, Claimants assert that their due process rights have been violated by the Government's purported delayed production of documents, purported selective declassification of documents, and by the existence of a related criminal investigation. Claimants have no support for these accusations and the Court has already ruled on these and various other arguments put forth by Claimants.

Claimants' motion under the guise of due process violations is nothing more than a motion to reconsider the discovery disputes already considered by the Court, and thus, Claimants' motion should be denied.

## FACTUAL BACKGROUND

**A.     The Government's Civil Forfeiture Action**

On December 17, 2008, the United States filed a civil forfeiture complaint seeking forfeiture of certain defendants *in rem* belonging to Assa and Bank Melli, including Assa's interest in 650 Fifth Avenue Company, which the Government alleged constituted or was derived from proceeds traceable to violations of IEEPA, and were subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in money laundering transactions and attempted money laundering transactions in violation of 18 U.S.C. §§ 1956 and 1957.  *See* ECF Dkt. No. 1 (Compl. ¶¶ 1–2).  On that same day, the Court entered a protective order which required the preservation of all of Claimants' books and records relating to Claimants, Assa, and Bank Melli.  *See* ECF Dkt. No. 2 (Post-Complaint Protective Order Pursuant to 18 U.S.C. § 983(j)(1)).

Also on that same day, the Government served Alavi's President, Farshid Jahedi, with a grand jury subpoena commanding Alavi to produce records relating to Assa, Bank Melli and Fifth Avenue Company from January 1, 1989 to the present.  *See* ECF Dkt. No. 568 (Declaration of Carolina A. Fornos in Opposition to Alavi Foundation's Motion to Suppress ("Fornos Decl."), Ex. 4 (Grand Jury Subpoena)).  On December 18, 2008, Jahedi was observed destroying documents responsive to the grand jury subpoena.  Fornos Decl. Ex. 5 (Jahedi Torn Documents). Jahedi was arrested for obstruction of justice on December 19, 2008, was indicted, and subsequently pled guilty to one count of obstruction of justice and one count of impairing a document's availability for an official proceeding.  *See United States v. Jahedi*, 09-cr-00460 (SAS) (S.D.N.Y.).  On December 19, 2008, the Government executed a search warrant at the Alavi Foundation and seized approximately 200 boxes of documents and electronic media.

3

On November 12, 2009, the Government filed an amended forfeiture complaint that sought to forfeit the property of the Alavi Foundation and the 650 Fifth Avenue Company, and Assa. (ECF Dkt. No. 51).

**B.     Production of Documents Begins in 2012 Due To Claimants' Motions**

On March 1, 2010, Claimants and Assa filed motions to dismiss the Amended Complaint. *See* ECF Dkt No. 75 (Claimants' Mtn. to Dismiss Am. Compl.); ECF Dkt. No. 78 (Assa Mtn. to Dismiss Am. Compl.).

On March 29, 2011, the Court issued an 80-page opinion and order denying the motions to dismiss. *See* ECF Dkt. No. 163 (Order Denying Mtns. to Dismiss). After the Court denied Alavi's and Assa's Motions to Dismiss, Claimants filed their Answer to the Amended complaint on April 13, 2011, and served the Government with discovery requests on or about May 26, 2011. *See* ECF Dkt. No. 167 (Alavi Answer); Claimants' Br. at 5. On June 24, 2011, the Government and the private plaintiffs served consolidated document requests on Claimants. *See* Fornos Decl. Ex. 20 (Consolidated Document Requests to Claimants). On July 15, 2011, the Government served Objections and Responses to Claimants' Document Requests. (Claimants' Br. at 5).

Notwithstanding their document requests, Claimants and Assa filed motions to stay the civil forfeiture proceeding. *See* ECF Dkt. No. 174 (Assa Motion to Stay); ECF Dkt. No. 177 (Claimants' Motion to Stay). On August 12, 2011, the Court issued a 30-page opinion and order denying the motions to stay. *See* ECF Dkt. No. 206 (Order Denying Motions to Stay). Not satisfied, Claimants filed a motion to reconsider the Court's Memorandum Opinion and Order denying the stay on September 6, 2011. *See* ECF Dkt. No. 209 (Claimants' Mtn. to Reconsider). The Court denied the motion to reconsider. Assa joined in this motion to reconsider on

4

September 20, 2011.  *See* ECF Dkt. No. 215 (09/20/2011 Ltr. to Hon. Richard J. Holwell from D. Koplovitz).  On February 2, 2012, the Court denied these motions to reconsider in a 15-page opinion.  *See* ECF Dkt. No. 228 (Order denying Mtns. to Reconsider).  On February 8, 2012, the consolidated litigation was reassigned to this Court.  *See* ECF Dkt. No. 229 (Notice of Case Reassignment).

On March 28, 2012, a Status Conference was held before this Court**.**  Following the Status Conference, the Court entered a scheduling order which ordered the Government to produce to defendants all responsive, non-privileged documents by April 11, 2012.  ECF Dkt. No. 234 (04/02/2012 Order).  The Court ordered that document discovery shall be completed by June 28, 2012, and that fact discovery shall close by July 30, 2012.  *Id.*  On April 11, 2012, the Government produced to all parties five DVDs containing approximately 160,000 pages of document discovery.  *See* 04/11/2012 Ltr. from AUSA Lockard to all counsel.  On April 13, 2012, the Government separately produced approximately 733,000 pages of document discovery to Claimants for Claimants to review for responsiveness to the Government's document demands, and for Claimants to review for privilege.  *Id.*; 04/13/2012 Ltr. from AUSA Lockard to D. Ruzumna.

## C.     The Government Regularly Advised the Court and Claimants of the Complexity of Discovery In this Case

In June 2012, the Government made Claimants and the Court abundantly aware of the significant issues in producing the requested documents by June 28, 2012.  In the Government's letter to the Court dated June 11, 2012, the Government advised the Court as to the status of discovery production.  *See* 06/11/2012 Letter to Hon. Katherine B. Forrest from AUSA Sharon Cohen Levin.  The Government noted that it had produced several hundreds of thousands of pages of discovery, including documents seized from search warrants executed at the Alavi

Foundation's offices, the home and office of the Alavi Foundation's corporate secretary, and a Queens residence used to store records maintained by Bank Melli Iran.  *Id*.  The Government also produced records relating to claimants Alavi Foundation, 650 Fifth Avenue Company, Assa Corp. and Assa Co. Ltd. obtained from banks, accountants, and other third parties, and email communications by Bank Melli officials and a former Assa Corp. employee.  *Id.*

The Government informed the Court and the parties that it would not be able to meet the June 28, 2012 deadline to complete document production.  *Id.*  The Government advised that



would not be able to meet the Court's June 28, 2012 deadline.  *Id.*  Furthermore, the Government noted that at the time of the March 28, 2012 Status Conference, it did not fully appreciate the

degree that the combination of these issues would affect the Government's ability to produce the discovery, particularly FBI records. *Id.*

Subsequently, in correspondence dated August 6, 2012, and August 24, 2012, the Government advised the Court of the continuing efforts to review and produce relevant documents from the FBI. *See* ECF Dkt. No. 290 (08/06/2012 Ltr. to Hon. Katherine B. Forrest from AUSA Lockard); 08/24/2012 Letter to Hon. Katherine B. Forrest from AUSA Lockard ("August 24, 2012 Letter").

No. 308). The Court subsequently issued a scheduling order adjusting document discovery to close at the end of January 2013, and fact discovery to close at the end of March 2013. *See* ECF Dkt. No. 307 (09/10/2012 Order). On October 1, 2012, the parties noted that due to the length of time required to run the FBI ESI search on such a large number of custodians and based on Claimants' original search string the search had not been completed after being run for approximately five to six weeks. *See* ECF Dkt. No. 312 (10/1/2012 Ltr. to Hon. Katherine B.

Forrest from AUSA Lockard, at 2).  The Government proposed, after consultation with the FBI and Claimants' counsel, that the ESI search be limited to nine key custodians identified principally by their degree of involvement in the investigation that led to the filing of the Amended Complaint, and that an ESI sampling be performed for the non-key custodians.  *Id.* at 1.

The Government again informed the Court of issues related to ESI and paper discovery on October 5, 2012, noting that production of ESI under the modified approach would require approximately four to five months from the end of paper production to produce.  *See* ECF Doc. No. 314 (10/5/2012 Ltr. to Hon. Katherine B. Forrest from AUSA Sharon Cohen Levin, at 1–2). The Government explained to the Court on October 11, 2012 why these FBI documents had to be produced in such a manner, that the same personnel in the same units had to conduct the declassification and privilege review for ESI and paper records.  *See* ECF Dkt. No. 315 (10/11/2012 Ltr.  to Hon. Katherine B. Forrest from AUSA Sharon Cohen Levin).

**D.    The Court Addresses Each and Every Discovery Motion by Claimants**

In 2013, the Government continued to produce all relevant documents on a rolling basis. In the interim, Claimants filed numerous motions which the Court addressed, including:

- Motion to Preclude All Government Witnesses for Failure to Produce Witness List (Dkt. No. 498); Addressed by the Court, denying preclusion granting additional eight deposition for Claimants (Dkt. No. 511).

- Motion to Preclude Expert Witness Lloyd Hitoshi Mayer (Dkt. No. 569); Addressed by Court, granted preclusion of Expert Witness (Dkt. No. 595).

- Motion to Preclude Documents Produced by Government after April1, 2013; Addressed by Court (Dkt. No. 723); Addressed by Court, granting preclusion (Dkt. No. 776).

- Motions to Produce ESI (Dkt Nos. 602); Addressed by Court Order denying further ESI production on August 7, 2013.

- Motion to reopen depositions based on late production of documents (Dkt. No 602; Addressed Court Order granting the re-opening of three depositions on August 7, 2013.

- Ten Motions *in Limine*, including preclusion of Fifth Amendment witnesses, (Dkt. Nos. 715-717); Addressed by Court on September 4, 2013.

- Motion to review Appropriate Law Enforcement Privilege Application (Dkt. No. 412); *in camera* submission July 31, 2013; Addressed by Court approving privilege application (Dkt. No. 596).

- Motion to Compel OFAC documents (Dkt. No. 629); Addressed by Court, denying further OFAC document production (Dkt. No. 757).

- Motion to Compel IRS documents (Dkt. No 544), Addressed by Court, denying further IRS document production (Dkt. No. 547).

## ARGUMENT

## I.    CLAIMANTS' PURPORTED DUE PROCESS VIOLATIONS LACK MERIT

Claimants' motion of purported due process violations is premised on the alleged abuse of the discovery process, including delayed production of documents, ███████████ ██████████████ As set forth herein, the Government has acted in good faith, and the Court has already addressed all of Claimants' discovery disputes and either found that Claimants have not been prejudiced, or alternatively, the Court has fashioned an appropriate remedy. Further, as set forth herein, there is absolutely nothing improper about parallel civil and criminal investigations.

### A.    The Government Has Demonstrated Good Faith In Its Discovery Production

#### 1.    Legal Standards for Discovery

A party may inquire about "any matter, not privileged, that is relevant to [a] claim or defense[,]" and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1).  "It is axiomatic that discovery, although broad under the federal rules, has limits."  *In re Alliance Pharm. Sec. Litig.*, No. M-8-

85, 1995 WL 51189, at *1 (S.D.N.Y. Feb. 9, 1995).   "[A]lthough a party seeking [discovery] need not demonstrate the propriety of its request, judges may prevent the proposed [discovery] when the facts and circumstances are such that it creates an inappropriate burden or hardship." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69–70 (2d Cir. 2003).   Accordingly, district courts are granted wide discretion in supervising the extent of discovery before trial. *Ross v. Bolton*, 106 F.R.D. 22 (S.D.N.Y. 1985) (citations omitted).   "The exercise of this discretion often requires that the court balance the interests of the litigant in obtaining information against the costs of providing it." *Id.* at 23.   Rule 26 limits the extent of discovery when, *inter alia:* (1) the discovery is unreasonably cumulative or duplicative; (2) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.   FED. R.CIV. P. 26(b)(2)(C).

Additionally, the expense of additional production has to be weighed in the context of the extraordinarily burdensome and expensive discovery process. *See, e.g., Jones v. Goord*, 95 Civ. 8026 (GEL), 2002 WL 1007614 (S.D.N.Y. May 16, 2002) (even where requested material is relevant and not privileged "the Court still has considerable discretion to evaluate the practical realities of discovery, balancing the importance of the information against the burdens of production to decide whether fairness does or does not require production, and if so, on what terms").   Information that is subject to the law enforcement privilege, as determined by the Court, is not subject to disclosure unless the party seeking discovery can show "'a compelling need' to overcome the 'strong presumption' against lifting the law enforcement privilege." *See In re The City of New York*, 607 F.3d 923, 950 (2d Cir. 2010).

### 2.     The Government Has Produced Relevant Non-Privileged Documents And Claimants Have Suffered No Prejudice

Claimants assert that the Government has failed to participate in document discovery in good faith because Claimants allegedly did not receive all the documents they requested, and further claim that the documents they did receive in discovery were only a subset of relevant documents.  Claimants' Mot. at 20.  Claimants, however, ignore that the scope of Claimants' discovery was so broad that the FBI could not even complete the search as initially requested by Claimants.

Claimants' argument focuses on the electronic discovery produced by the Government in this matter, characterizing it as a "bad faith" production.  But Claimants' grievances about the ESI sample set completely misinterpret the clear import of the sample results, as well as the purpose of the sampling procedure and the Court's instructions about ESI sampling.  At the status conference held on July 10, 2013, after the Government informed the Court and all parties of the outstanding ESI issues, the Court directed a common-sense, practical approach to the ESI sampling, which included producing "some of that material as much as possible by the end of July."  07/10/2013 Tr. at 31.  The Court recognized that the sample sought by Claimants was not feasible, and in fact, the Court had just noted that the Alavi main case file documents over which FBI had asserted law enforcement privilege were "far afield" from the core allegations in this case, let alone the "broad allegations."  *Id.* at 20.  The Court further noted that the very documents sought by Claimants and which FBI had claimed privilege over "should have never been part of this case."  *Id.* at 27.   In light of these recognitions of the scope of the discovery in this case, the Court instructed the Government to produce "some version of the sample documents" to Claimants and that "some of that material" relating to the ESI sample had to be produced by the end of July.  *Id.* at 31.

11

In accordance with the Court's directives from the July 10, 2013 Status Conference, the Government produced the most it could within the timeframe allotted by the Court, which ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ *See* Ruzumna Declaration in Support of Claimants Motion to Dismiss ("Ruzumna Decl.") Ex. T (08/01/2013 E-mail to M. Ginsberg from A. Sithian, at 1) (ECF Doc No. 714). ▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

Ruzumna Decl. Ex. U (08/07/2013 Letter to Hon. Katherine B. Forrest from M. Lockard, at 3). Still, Claimants' ignore that the purpose of the ESI sample was to determine if additional discoverable material existed, and as the produced sample indicates, most, if not all of the documents in the sample were either privileged or non-responsive. Further, this sampling has been submitted in unredacted form to the Court for *in camera* review to ensure that the privileges were appropriately applied, consistent with the procedures outlined in *In re The City of New York*, 607 F.3d 923 (2d Cir. 2010). Accordingly, Claimants cannot point to any particularized prejudiced as a result of the ESI discovery production when the Government followed the Court's directives and has submitted for the Court's review the application of the Government's privilege redactions. Without prejudice, Claimants cannot claim a discovery violation, let alone a due process violation.

Relatedly, the Government has frequently advised the Court and the parties regarding the review and production of materials in this case. As previously mentioned, ▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

*See* Ruzumna Decl. Ex. U (08/07/2013 Letter to Hon. Katherine B. Forrest from M. Lockard, at 4).

Notwithstanding the lack of prejudice to Claimants, the Court has heard Claimants' arguments already and addressed them all. In fact, the Court specifically addressed the issue of ESI sampling, and many of the other issues Claimants present in this instant motion at the August 7, 2013 conference. After Claimants set forth many their arguments regarding the ESI discovery, the Court stated as follows:

13



During the same conference, Claimants raised essentially the same alleged due process arguments contained within the instant motion.  In response to these arguments, the Court further discussed Claimants assertions of purported due process violations relating to ESI discovery production:



*Id.* at 78–7

Finally, the Court concluded:



*Id.* at 79

14

The Government has produced hundreds of thousands of documents and expended months of personnel hours necessary to review and prepare the documents for based on Claimants' extraordinary demands for discovery. And responding to Claimants' discovery requests is not some clerical task that the Government could delegate to mere contract employees. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ The Government has been in constant contact with the FBI's Civil Litigation Unit to update the Court regarding FBI's production status and to convey the Court's directives to the FBI. While, in retrospect, discovery demands should have been narrowed in scope earlier, it is clear that there has been a great deal of resources expended to ensure Claimants' have had a fair opportunity to defend themselves in this civil forfeiture action. Accordingly, the Court appropriately denied Claimants' application for further ESI discovery as the potential benefits could not possibly outweigh the heavy burden on the Government. There can be no due process violation when the Court has already ruled that the burdens to the Government outweigh the benefits, if any, of additional discovery for the Claimants.

Notwithstanding the voluminous production of documents in this case, Claimants continue to cling to a sparse few documents, out of the hundreds of thousands produced in this litigation, to indicate that FBI analysts—who do not interview witnesses—allegedly possess key ESI. Claimants' Mot. at 22. Claimants are so fixated on the handful of documents that they dare call any document not produced or any document redacted as "impeachment" or "exculpatory," yet Claimants completely ignore that the most inculpatory documents comes from Claimants themselves or their co-conspirators. *See generally* ECF Dkt. No. 687 (McReynolds Decl. in Support of Government's Mtn. Summ J.). These are the bulk of the Government's documents

for trial, the same Farsi documents generated by Claimants, Assa, Bank Melli, and the Bonyad Mostazafan.  And these are the documents that were produced to Claimants in April of 2012. Claimants have had nearly eighteen months to review and analyze these documents and develop strategies to rebut the allegations that the defendants *in rem* are not proceeds of IEEPA and do not constitute property involved in money laundering.

In conjuring up purported "due process" violations from discovery issues, Claimants fail to acknowledge that they have demanded almost *everything* from a vast array of agencies, regardless of relevance, privilege, or classification.  *See generally* Alavi Document Requests. And in the spirit of cooperation, the Government has provided Claimants with a significant amount of what they have requested, subject to the applicable privileges.  However, each time Claimants have pushed the line with overbroad demands for privileged information, the Government has gone to the Court and requested a ruling on the Government's assertions of privilege.  And each time, with one exception, the Court has ruled in the Government's favor. *See* 09/01/2013 Order (ECF Doc. 774) (granting protective order for OFAC deposition); 08/29/2013 Order (ECF Doc. No. 757) (upholding OFAC deliberative process and law enforcement privilege assertions); 08/29/2013 Order (ECF Doc. No. 761) ███████████ ████████████████████████████████████████████████████████████ 08/01/2013 (ECF Doc. No. 596) (discussing completeness of representative sample of Government's law enforcement privilege assertion); 07/11/2013 (ECF Doc. No. 547) (upholding FBI law enforcement privilege assertion).

Moreover, the Court has repeatedly noted that it is not the production of hundreds of thousands of law enforcement records that will prove who Claimants "are" and whether or not they are connected to the Government of Iran, or whether they are the Government of Iran.

Rather, it is Claimants themselves, who have the relevant information.  They are the ones who will need to rebut *their own* documents, the bulk of which will be the evidence that the Government intends to introduce at trial.  It is the conduct of Claimants that is at issue in this case and to distort the civil discovery process into the belief that FBI interviews of witnesses in the months leading up to filing of the Government's civil forfeiture complaint are the most critical documents belies a review of the documentary evidence from the Claimants.  Under Claimants' erroneous view of the civil discovery rules, Claimants would have the Government continue to search through every single law enforcement file tangentially related to Claimants until there were no more documents to be produced, and Claimants would then demand to know what was and was not searched and why.  On numerous occasions the Government, the Court, and all other parties to this action, including Alavi discussed at great length the issues relating to the production of ESI, sampling, and production of documents.  The Government was at all times forthcoming about its difficulties in producing all the documents requested by the Claimants within the timeframe afforded by the Court.  In addition, any issues relating to the sufficiency of the Government's compliance with the production of documents or production of ESI were addressed in due course by the Court.  Claimants cannot point to prejudice, and accordingly, there cannot be a due process violation.

### 3.     Any Prejudice Resulting From The Timing of Government's Document Production Has Been Cured

Claimants argue that they have suffered prejudice as a result of receiving documents relating to witnesses subsequent to the deposition of that witness occurring.  Claimants' Mot. at 23.  In circumstances where records were produced after the conclusion of depositions, the subsequently produced documents were largely cumulative of records previously produced or related to facts already disclosed in discovery.  Notwithstanding, the Court granted Claimants'

requested relief by permitting depositions to be re-opened to afford Claimants the opportunity to question the witnesses with respect to the documents provided belatedly. 08/07/13 Tr. at 83. Claimants have not requested to reopen any other depositions, but have moved to preclude witnesses from testifying.  Notably, in the two months since ███████████████████████ and the documents produced relating to ███████ fter his deposition, Claimants never once requested to reopen ███████ eposition.  Moreover, in the two reopened depositions of law enforcement witnesses regarding "key documents" produced just prior or after their initial depositions, both depositions lasted less than two hours out of the four hours allotted for each reopened deposition.  Accordingly, any possible prejudice to the Claimants has been cured by the Court by granting the specific relief Claimants requested, reopening the depositions of the specific witnesses Claimants claimed needed to be reopened based on late productions of documents.

Now, after having been already granted the relief of reopening three witness depositions, Claimants suggest that there are in fact additional witnesses that they would like to have re-opened but chose not to ask relief from the Court as "there [was] simply not enough time" to schedule them before trial.  Claimants' Mot. at 24.  Such an argument is unconvincing and should be rejected.  Claimants have wasted no time filing a flurry of discovery related letters— including a "98-page missive" in the Court's own words—to address issues important to Claimants, yet Claimants insist on waiting less than a month before trial—August 21, 2013—to claim that they did not have an opportunity to adequately examine *other* witnesses.  There is an appropriate remedy for this, and it is not dismissal of the Government's forfeiture complaint. The remedy is to ask the Court for leave to reopen depositions or coordinate with the witness' individual counsel to have the deposition reopened.  The Court has already granted such relief as

requested by Claimants.  The Government submits that any purported prejudice originating from the late production of documents could have been remedied by requesting reopening of specific depositions.  The failure to do so was the Claimants' strategic choice and accordingly, there can be no due process violation.

### 4. The Government Has Appropriately Used The Classification And Privilege Assertions In Document Production

Claimants' further argue that purported due process violations have occurred based on the Government's use of classification and privilege document redactions. Claimants' Mot. at 25. Such an argument is false.  The Court has upheld the Government's use of redactions, 07/10/2013 Tr. at 19.

As previously noted, the files from the investigation that led to this forfeiture action contain privileged material, including material protected by the law enforcement privilege, which includes deliberative process and classified material.   That material—like any privileged material, including material subject to the attorney work-product doctrine or the attorney-client privilege—has been properly withheld from discovery, and has been subject to extensive scrutiny by the Court, including briefing and *in camera* review.



matter, which is a process that has been extensively discussed in status letters and conferences,

the fact remains that some records in the investigative file nonetheless contain information protected by the law enforcement privilege, the disclosure of which would have serious adverse consequences for national security, for witnesses safety, and could compromise legitimate governmental investigative techniques.  This withheld information does not relate to the claims or defenses in this forfeiture action and is information upon which the Government has not relied in the filing its Complaint or the Amended Complaint and is information the Government will not—and cannot—rely upon at trial.[1]

Nor is there any basis for Claimants' complaints of due process violations based on the argument that the Government's productions of records by the FBI have not been accompanied by a privilege log pursuant to Local Civil Rule 26.2.  The Court has already rejected this argument after a review of the Government's *ex parte* submission of the Alavi main case file. 07/10/2013 Tr. at 19.

Claimants' accusations of the Government using "egregious classification practices" are entirely misplaced. Claimants appear to base their claims as a result of three instances where documents were de-classified from hundreds of thousands of documents produced.



---

[1] Claimants state in conclusory fashion that "the Government has used (and will undoubtedly use at trial) certain classified portions of the investigations as a sword to advance its claims . . . ." Claimants' Mot. at 25.  This should be rejected outright.  The Government is relying on the same law enforcement documents as Claimants possess for trial.

entrusted with the ability to make such determinations. Finally, Claimants speculative and unfounded concerns about the Government's privilege assertions should also be alleviated due to the numerous *in camera* reviews conducted by the Court, consistent with *In re The City of New York*, 607 F.3d 923 (2d Cir. 2010). As such, the Government's assertions of privilege in this case, as recognized by the Court, have been appropriate, and Claimants' arguments have already been addressed.

### B.   No Due Process Implications Arise From the Parallel Criminal Investigation

Claimants assert that the Government violated their due process rights by proceeding with the civil forfeiture case while a pending criminal investigation was still ongoing.  This argument was previously addressed nearly two years ago by Claimants' motion for a stay of the civil forfeiture proceeding, which was denied.  *In re 650 Fifth Ave*., 2011 WL 3586169, at *16. (S.D.N.Y. Aug. 12, 2011).  Claimants then submitted a request for reconsideration of the Court's decision, or certification of the Court's order for interlocutory appeal, which was also denied.  *In re 650 Fifth Ave*, 2012 WL 363118, *8 (S.D.N.Y. Feb. 2, 2012).  Now, the Claimants assert essentially the same argument, for the third time, but now in the form of a purported due process violation claim.  The Court should reject such an assertion.

Two years ago, the Court noted the potential concern regarding parallel forfeiture and criminal proceedings and the concomitant impact on the Fifth Amendment privilege. Parallel proceedings "often conflicts with the *litigant's* interest in testifying .... [t]he tension between self-incrimination concerns and the desire to testify may be especially acute *for a claimant* in a civil forfeiture proceeding."  *In re 650 Fifth Ave*., 2011 WL 3586169, at *6 (emphasis in

original, citation omitted).   The Court further noted that "because Claimants [as corporate entities] have no right to remain silent, they hardly face the 'dilemma' of whether to 'remain silent and allow the forfeiture or testify against the forfeitability of [their] property and expose [themselves] to incriminating admissions.' *Id.* (citation omitted).   Specifically, the Court noted that Claimants' employees face no such dilemma, either, because they have no claim to the properties the government seeks to forfeit."   *Id*.   The Court recognized the weakness in the Claimants' argument regarding their Fifth Amendment concerns. "Claimants do not explain why the fact that their employees may not testify because of the privilege makes their situation any more dire or unfair than that of any other party who cannot find witnesses to testify on his behalf."   *Id.*

*See Libutti v. United States*, 107 F.3d 110, 120–21 (2d Cir. 1997). Claimants have already raised this issue in the context of motions *in limine*, and the Court has properly considered Claimants' arguments and ruled on them.

## <u>CONCLUSION</u>

For the reasons set forth above, the Government respectfully requests that the Court deny

Claimants' Motion to Dismiss.

Dated:  New York, New York
        September 5, 2013

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York


                        By:      _/s/ Carolina A. Fornos_____
                              Sharon Cohen Levin
                              Michael D. Lockard
                              Martin S. Bell
                              Carolina A. Fornos
                              *Assistant United States Attorneys*

                              Anand Sithian
                              *Special Assistant United States Attorney*
                              *- Of Counsel -*