# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

September 18, 2013

By Email and ECF

Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 730
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 9 2013

Daniel S. Ruzumna
Partner
(212) 336-2034
Direct Fax (212) 336-1205
druzumna@pbwt.com

    Re:    **In re 650 Fifth Avenue and Related Properties,
           08 Civ. 10934 (KBF)**

Dear Judge Forrest:

        We respectfully submit this letter on behalf of the Alavi Foundation and the 650 Fifth Avenue Company (collectively, "Claimants") in response to the Judgment Creditors' September 13, 2013 letter seeking to offer direct testimony by way of declaration rather than live testimony. Because of the importance of considering the witnesses' demeanor when evaluating their credibility, Claimants oppose the use of declarations instead of live direct testimony. Even with live cross examination, the Court would not have the same opportunity to view the witnesses and evaluate the affirmative testimony that the parties will seek to elicit from them.

        The Court has previously recognized the importance of having the fact-finder "assess the demeanor of . . . witnesses" in order to evaluate their testimony. (*See* 9/4/13 Tr. at 52). *See also Oshodi v. Holder*, No. 08-71478, 2013 U.S. App. LEXIS 17991 (9th Cir. 2013) ("It is well established that live testimony is critical to credibility determinations."); *United States v. 1998 BMW "I" Convertible*, 235 F.3d 397, 400 (8th Cir. Mo. 2000) ("However, judges simply cannot decide whether a witness is telling the truth on the basis of a paper record and must observe the witnesses' demeanor to best ascertain their veracity—or lack thereof."); *United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995) ("There can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility."). The Judgment Creditors' proposal to offer declarations in lieu of live direct examinations greatly limits the Court's ability to make crucial credibility determinations. Because the credibility of several witnesses will be challenged at trial, including their ability to recall events that happened twenty years ago or more, it is important that all of their testimony is presented live to the Court.[1]

---

[1] In the event the Court declines to grant the Judgment Creditors' summary judgment motion because of outstanding disputes of material fact, the credibility of witnesses becomes even more important and is further reason why witnesses should provide live testimony (including live direct examinations).

Hon. Katherine B. Forrest
September 18, 2013
Page 2

By way of example, Claimants expect that the Judgment Creditors will seek to rely heavily on the testimony of the Government's paid informant—Seyed Mojtaba Hesami-Kiche—to show purported control by Iran over the Alavi Foundation. Mr. Hesami-Kiche served as a director of the Foundation from 1983 through 1991, while living in Germany. Based on his deposition, his description of events that occurred over twenty years ago is often rambling and confused. Allowing the Judgment Creditors to "clean up" his testimony by essentially scripting a declaration would deprive the Court of the opportunity to judge for itself whether Mr. Hesami-Kiche is someone whose testimony can and should be believed, or whether he is testifying based on what he believes will result in the greatest payout for him. Indeed, the Government has already paid Mr. Hesami-Kiche approximately $600,000 and has apparently agreed to pay him a "share" of the amount forfeited as a result of the Government's forfeiture action. (*See* Exs. A, B). While some of Mr. Hesami-Kiche's vulnerabilities can be exposed on cross examination, the reality is that without substantial assistance he will likely be unable to testify in a coherent manner on direct examination. If the Judgment Creditors wish to rely on Mr. Hesami-Kiche or any other witness, they should be prepared to offer the witness' testimony live.

Live direct examinations are also practical here because the issues before the Court in the Judgment Creditors' actions are quite narrow. We do not expect the trial to take nearly the same amount of time that a jury trial would have taken, and the Court has greater flexibility when to hear testimony. In reviewing Claimants' witness list, we have been able to eliminate a number of witnesses based on the much narrower issues at play in the private FSIA/TRIA action. Currently, we anticipate calling fewer than ten witnesses, and several of those witnesses would likely testify for less than thirty minutes.

While Claimants understand that the Court has stated a preference for declarations in lieu of live direct testimony, we submit that any benefit from the use of declaration—*i.e.*, largely potential time savings—would be outweighed in this matter by the cost associated with the Court limiting its exposure to the witnesses and thus its ability to make credibility determinations. Further, Claimants believe that any efficiency gains are likely to be insubstantial based on the narrow issues under consideration and the need, even under the Judgment Creditors' proposal, to conduct live cross-examination of the witnesses.

For the foregoing reasons, Claimants respectfully request that the Court conduct any trial of the Judgment Creditors' claims with live (or videotaped deposition) testimony. In the event the Court permits the parties to submit witness declarations in place of live direct examinations, Claimants respectfully request that the Court set a deadline sufficiently in advance of the trial date so that the parties can prepare effective and efficient cross-examinations.

Respectfully submitted,

/s/ *Daniel S. Ruzumna*
Daniel S. Ruzumna

cc: Counsel of Record

**Ordered**

The use of declarations for direct (not cross) is a well-established practice of courts for trial management. The Court will have sufficient opportunity to assess demeanor based on the cross. Direct shall proceed by declarations. Dates for submission to be discussed on 9/20/13 4pm conference.

KB Forrest
USDJ
9/19/13

# Exhibit A

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

In re 650 Fifth Avenue

**DX 1230**

| FD-794b | FEDERAL BUREAU OF INVESTIGATION |
|---|---|
| (03/30/2013) | PAYMENT REQUEST |

Select a Payment Request Form: **General**

UNCLASSIFIED

PAYMENT REQUEST - GENERAL

### HEADER

Source ID: ▮▮▮▮▮
Date: 06/20/2013
Case Agent Name: **HOHMANN, MATTHEW A**
Field Office/Division: **New York**
Squad: **CT 9**

### ENCLOSURES

**Include if payment is for reimbursement of case-related expenditures made by the CHS.**

Enclosed are receipts for expenses incurred by the Confidential Human Source (CHS) at the behest of the FBI, which are being reimbursed as expenses.
(or) Enclosed is a statement documenting the amount spent by the CHS, the date(s) and the reason(s) why a receipt could not be obtained.
Upload Receipt:
(2MB size limit)   📎 File Attachment

### INFORMATION ABOUT THE REQUESTING EMPLOYEE

Official Bureau Name: **HOHMANN, MATTHEW**
Social Security Number (###-##-####): ▮▮▮▮▮
Telephone Number: ▮▮▮▮▮

### INFORMATION ABOUT THE REQUESTED PAYEE

Payee Name: **Iovino, Mark**
Social Security Number or Taxpayer ID Number: ▮▮▮▮▮
Payment Name: ▮▮▮▮▮

### DETAILS

Payment Request of **$30,000.00** for **General Payment**.
CHS was opened/re-opened on **03/26/2007**.
Aggregate Total Paid: **$572,209.37**
Total Paid since re-open (if needed): **$0.00**
Total Paid in Current FY: **$47,520.00**
Is this payment for medical expenses?   ○ Yes   ● No

Substantive Case File Number: ▮▮▮▮▮
Substantive Case Title: ▮▮▮▮▮
Cornucopia Program: **QA**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Cornucopia Subprogram: **B4**

| Description | Incurred by Agent or CHS | Payment Amount for |
|---|---|---|
| **CHS Services** | **CHS Service** | Services:   $30,000.00 |

**Warning:  You are approaching the $100,000 SAC Authority threshold for the current fiscal year.**

**Warning:  You have exceeded the aggregate threshold.  It is recommended that you submit your request for additional authority to your appropriate FIMU.**

Operational Payment justification narrative:
(4000 character limit)



The CHS was last paid for the time period covering  08/01/2012 thru 01/31/2013.  The current payment request is for the six month period of 2/1/2013 thru 8/1/2013.

The payment is to assist the CHS with General living expenses in the amount of $5,000 per month. This is to assist with living, household, and vehicle expenses over a six month period (6 x $5,000) thus totaling $30,000.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    SDNY-766758

**DX 1230.2**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Total CHS Services: **$30,000.00**
Total CHS Expenses: **$0.00**
Total Agent Expenses: **$0.00**

Period covered for this payment:   Begin: 02/01/2013   End: 08/01/2013

Is the CHS expected to testify?   ⦿ Yes   ◯ No

Attorney that provided concurrence for payment
( **$30,000.00**   ): AUSA Michael Lockhard
District: **SDNY**
Date of Concurrence:
**The FBI shall coordinate with the FPO attorney, in advance if practical, the payment of monies to a CHS who is expected to testify.**

Financial Justification (do not enter operational details):
(4000 character limit)
Payment to assist CHS with general living expenses in the amount of 3,500 per month for six months. Totaling $30,000.



**Mark Iovino**                                                    will make the payment to the above captioned CHS.

Payment Request Synopsis: (150 character limit)
Request payment to CHS

**UNCLASSIFIED**

🔏 Click here to sign this section

6/20/2013

**X** Matthew A. Hohmann

**Signed by MAHOHMANN**    View details
on Thursday, June 20, 2013 3:55 PM (Eastern Daylight Time)

6/25/2013

**X** Stephen S. Woolery

**Signed by SSWOOLERY**    View details
on Tuesday, June 25, 2013 7:51 AM (Eastern Daylight Time)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    SDNY-766759

**DX 1230.3**

# Exhibit B

In re 650 Fifth Avenue

**DX 911**



From: FARLEY, KERI E. (NY) (FBI)

1

**SUBJECT TO CONFIDENTIALITY AND PRIVACY ACT PROTECTIVE ORDERS**
SECRET
FBI144311

**DX 911.1**

SE( )ET

**Sent:** Wednesday, January 26, 2011 9:54 AM
**To:** ALEXANDER, GEORGE (CTD) (FBI)
**Cc:** LARKIN, KEVIN T (NY)(FBI)
**Subject:** FW: Source reporting pending signature

Hey george-

Hate to bother you but it looks like we are having small problems with you CHS down in Atlanta. I know you have tons of stuff on your plate but were you able to talk to the AUSA about getting the CHS a payout? If not and you can't please bring someone here up to date on whats going on so they can handle.

Thanks!!!

---

**From:** KRIEGBAUM, LAURA K. (AT) (FBI)
**Sent:** Wednesday, January 26, 2011 9:36 AM
**To:** FARLEY, KERI E. (NY) (FBI)
**Subject:** RE: Source reporting pending signature

Thanks Keri! Enjoy the snow headed your way☺

---

**From:** FARLEY, KERI E. (NY) (FBI)
**Sent:** Tuesday, January 25, 2011 4:58 PM
**To:** KRIEGBAUM, LAURA K. (AT) (FBI)
**Subject:** RE: Source reporting pending signature

I will speak with George and we will get someone down there or have the CHS travel here. I understand your predicament and we will work to resolve it. George was up in NY two weeks ago and we talked about how to get the CHS his share of the money from the forfeitures. George was going to follow up with the AUSA.

Thanks!!

---

**From:** KRIEGBAUM, LAURA K. (AT) (FBI)
**Sent:** Tuesday, January 25, 2011 4:54 PM
**To:** FARLEY, KERI E. (NY) (FBI)
**Cc:** PAULLING, KRISTEN (AT)(FBI)
**Subject:** RE: Source reporting pending signature

Keri,



(S)

**SUBJECT TO CONFIDENTIALITY AND PRIVACY ACT PROTECTIVE ORDERS**
SECRET
FBI144312

DX 911.2

(S)

[redacted]

He is helping here, but due to the continuing resolution, our office has 0 funds for additional financial help, until the budget is passed. I don't know if you all are in the same boat?

Sorry to drop this on you, but I think that we need to figure out how to handle his issue. Sooner rather than later.

Let me know your suggestions,

Thanks,

Laura

---

**From:** FARLEY, KERI E. (NY) (FBI)
**Sent:** Tuesday, January 25, 2011 4:12 PM
**To:** KRIEGBAUM, LAURA K. (AT) (FBI)
**Subject:** RE: Source reporting pending signature

Laura-
Its approved. How is the CHS doing down there? [redacted]

[redacted]

---

**From:** KRIEGBAUM, LAURA K. (AT) (FBI)
**Sent:** Tuesday, January 25, 2011 3:36 PM
**To:** FARLEY, KERI E. (NY) (FBI); PAULLING, KRISTEN (AT)(FBI)
**Subject:** Source reporting pending signature

Hi Keri [redacted]

(S)

3

**SUBJECT TO CONFIDENTIALITY AND PRIVACY ACT PROTECTIVE ORDERS**
SECRET
FBI144313

DX 911.3



(S

4

**SUBJECT TO CONFIDENTIALITY AND PRIVACY ACT PROTECTIVE ORDERS**
SECRET
FBI144314

DX 911.4