UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 6, 2015
```

------------------------------------------------------------X
                                        :

IN RE: 650 FIFTH AVENUE AND          :
RELATED PROPERTIES

               :

08-cv-10934 (KBF)
and all member and
related cases

OPINION & ORDER

------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On August 27, 2014, the Acosta, Beer, and Kirschenbaum Plaintiffs-Claimants (the "ABK Plaintiffs") filed a motion for partial summary judgment as to the priority of their interests in the in rem defendant properties at issue in this proceeding vis-à-vis the interest of the Hegna Plaintiffs-Claimants (the "Hegnas"). (ECF No. 1205.)  The motion became fully briefed on October 9, 2014.[1]  (ECF No. 1233.)

Both the Hegnas and the ABK Plaintiffs have unsatisfied judgments against the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and

---

[1] The parties made several submissions after the ABK Plaintiffs' motion became fully briefed.  These submissions were triggered by the Hegnas' attempt to file a belated priority motion.  The Hegnas titled their opposition to the ABK Plaintiffs' motion as "Memorandum of Law in Opposition to [ABK] Judgment Creditors' Motion for Partial Summary Judgment and in Support of [the Hegnas'] Entitlement to Partial Summary Judgment as to Enforcement Priority."  (See ECF No. 1231 (emphasis added).)  The Hegnas' brief was filed on September 25, 2014—almost a month after the court-ordered deadline of August 27, 2014.  (See ECF Nos. 1150, 1174.)  After the Hegnas filed a reply in support of their "cross-motion," the Court—without ruling on the propriety of the cross-motion—allowed other parties to file oppositions.  (ECF No. 1239.)  Various parties filed oppositions to the Hegnas' cross-motion.  (ECF Nos. 1243, 1244, 1245, 1246.)  On November 15, 2014, the Hegnas filed a reply.  (ECF No. 1247.)

The Court will not consider the Hegnas' untimely cross-motion; this Opinion & Order addresses the ABK Plaintiffs' motion only.

Security ("MOIS").  Both filed Notices of Pending Action under 28 U.S.C. §

1605A(g).  The ABK Plaintiffs argue that they are entitled to priority vis-à-vis the

Hegnas because they filed their Notices of Pending Action first.  The Hegnas argue

that § 1605A(g) Notices of Pending Action are not priority-creating mechanisms as

between competing judgment creditors.

For the reasons set forth below, the ABK Plaintiffs' motion is DENIED.[2]

I.    BACKGROUND[3]

On December 17, 2008, the U.S. Government commenced this <u>in rem</u> civil

forfeiture action with respect to assets owned by Assa Corporation, Assa Company,

Limited (together, "Assa"), and Bank Melli Iran.  (ECF No. 1.)   On November 12,

2009,[4] the Government filed a Verified Amended Complaint adding assets owned by

the Alavi Foundation ("Alavi") and the 650 Fifth Avenue Company (the "650 Fifth

Ave. Co.").  (ECF No. 51.)  The 650 Fifth Ave. Co. is a partnership between Alavi

and Assa in which Alavi owns a 60% interest and Assa owns a 40% interest.  The <u>in</u>

<u>rem</u> defendant properties at issue in this proceeding (the "Defendant Properties")

include the real property located at 650 Fifth Avenue (the "Building"), various

---

[2] The parties shall confer and submit a proposed briefing schedule for any motions regarding the priority of the Government's right to forfeiture vis-à-vis the Hegnas' interest in the Defendant Properties not later than 30 days following the resolution of the appeal currently pending before the Second Circuit.

[3] The Court assumes familiarity with the facts underlying this action.  These facts are described in the Court's September 16, 2013, April 18, 2014, and May 15, 2014 decisions.  <u>See</u> <u>In re 650 Fifth Ave.</u> <u>& Related Props.</u>, No. 08 CIV. 10934 KBF, 2014 WL 1998233, at *1-2 (S.D.N.Y. May 15, 2014), <u>reconsideration denied</u>, No. 08-CV-10934 KBF, 2014 WL 3744404 (S.D.N.Y. July 28, 2014); <u>In re 650</u> <u>Fifth Ave. & Related Props.</u>, No. 08 CIV. 10934 KBF, 2014 WL 1516328, at *1-7 (S.D.N.Y. Apr. 18, 2014); <u>In re 650 Fifth Ave. & Related Props.</u>, No. 08 CIV. 10934 KBF, 2013 WL 5178677, at *6-16 (S.D.N.Y. Sept. 16, 2013).

[4] The Verified Amended Complaint did not appear on ECF until November 16, 2009.  (ECF No. 51.)

associated bank accounts, and seven real properties held in Alavi's name only.  The

Defendant Properties are also the subject of consolidated proceedings by private

plaintiffs to enforce money judgments against Iran and MOIS.

This Court has ruled that all of the Defendant Properties are subject to

forfeiture to the Government and/or turnover to the private plaintiffs.  See In re 650

Fifth Ave. & Related Props., No. 08 CIV. 10934 KBF, 2013 WL 5178677 (S.D.N.Y.

Sept. 16, 2013); In re 650 Fifth Ave. & Related Props., No. 08 CIV. 10934 KBF, 2014

WL 1516328 (S.D.N.Y. Apr. 18, 2014).  These rulings—which are currently on

appeal to the Second Circuit—do not address the relative priority of the parties'

claims to the Defendant Properties, but that issue has been largely resolved via

settlement.  On April 16, 2014, the Court "so ordered" a settlement agreement in

which all private plaintiffs except the Hegnas (the "Settling Judgment Creditors")

agreed to permit forfeiture of the Defendant Properties in exchange for the

Government's promise to distribute the net proceeds of such forfeiture to the

Settling Judgment Creditors pro rata based on their respective compensatory

damages awards.  (See Stipulation and Order of Settlement dated April 16, 2014,

ECF No. 1122.)  The sole unresolved issue is the relative priority of the Hegnas'

interest in the Defendant Properties.  The Hegnas' interest must be considered vis-

à-vis the interests of the Settling Judgment Creditors and, if necessary, vis-à-vis the

Government's right to forfeiture.

On May 27, 2014, the Court invited the parties to file motions as to the

priority of the Hegnas' interest vis-à-vis the interests of the Settling Judgment

Creditors.  (See ECF No. 1150.)  Only the ABK Plaintiffs filed such a motion by the Court-ordered deadline.[5]  Accordingly, the Court considers the Hegnas' claim to the Defendant Properties only in relation to that of the ABK Plaintiffs.

The facts underlying the Hegnas' claim to the Defendant Properties are described in the Court's May 15, 2014 Opinion & Order.  See In re 650 Fifth Ave., 2014 WL 1998233, at *1-2.  The Hegnas' claim stems from their January 22, 2002 default judgment against Iran and MOIS.  The outstanding amount of this judgment—which was enrolled with this Court on November 27, 2002—is $33,618,878.86 in compensatory damages.[6]  On December 29, 2008, the Hegnas obtained a Writ of Execution to enforce their judgment against the personal property of the judgment debtors in this district.  (See Movants' Local Rule 56.1(a) Concise Statement of Material Facts ¶ 5, ECF No. 428.)[7]  On December 30, 2008, the Hegnas delivered this Writ of Execution to the U.S. Marshals Service in this district.  (Id. ¶ 6.)  On March 27, 2009, the Hegnas obtained a signed order to show cause seeking turnover and sale of the Building to satisfy their judgment.  In re 650 Fifth Ave., 2014 WL 1998233, at *2.

---

[5] According to the ABK Plaintiffs, their motion, if granted, would be dispositive of the priority contest because satisfaction of their claims "will almost certainly exhaust the proceeds of the Defendant Properties."  ([ABK Plaintiffs'] Memorandum of Law in Support of Their Motion for Partial Summary Judgment as to the Priority of Claims to the In Rem Defendant Properties ("ABK Mem.") at 6 n.4, ECF No. 1208.)

[6] The Hegnas' Amended Order and Judgment, dated February 7, 2002, is for $42 million in compensatory damages against Iran and MOIS jointly and severally, and $333 million in punitive damages against MOIS only.  See In re 650 Fifth Ave., 2014 WL 1998233, at *1.  However, the Hegnas received approximately $8.4 million in payment from the Treasury Department in 2003, and relinquished their right to the $333 million in punitive damages.  See id. at *5.

[7] This 56.1 Statement—filed on April 26, 2013—is incorporated by reference in the 56.1 Statement submitted in support of the Hegnas' cross-motion.  (See ECF No. 1231.)

4

On May 15, 2014, the Court denied the Hegnas' motion for summary judgment on their claim with respect to the Building.  See In re 650 Fifth Ave., 2014 WL 1998233, at *1.  The Court held that the Hegnas' judgment against Iran and MOIS was insufficient to obtain an ownership interest in the Building—which was in the name of the 650 Fifth Ave. Co., not Iran or MOIS.[8]  See id. at *6.

The ABK Plaintiffs, like the Hegnas, have unsatisfied judgments against Iran and MOIS, not the 650 Fifth Ave. Co., Alavi, or Assa.  These judgments— totaling $976,922,000.00—were obtained in 2008 and 2011, and subsequently registered with this Court pursuant to 28 U.S.C. § 1963.  (See Local Rule 56.1 Statement of Undisputed Material Facts in Support of [ABK Plaintiffs'] Motion for Partial Summary Judgment as to Priority of Claims ("ABK 56.1") ¶¶ 1, 2, 8, 13, 14, 17, 22, 23, ECF No. 1209.)  On December 24, 2008—one week after the Government commenced this action—the ABK Plaintiffs each filed a Notice of Pending Action ("Notice") pursuant to 28 U.S.C. § 1605A(g).[9]  (See id. ¶¶ 3, 10, 19.)  Each Notice states, in relevant part:

> PLEASE TAKE FURTHER NOTICE THAT pursuant to Title 28, Section 1605A Subsection (g) of the United States Code, the filing of a notice of an action pending in a United States district court in which jurisdiction is alleged under Section 1605A . . . shall have the effect of establishing a lien of lis pendens upon any real property or tangible personal property that is subject to attachment in aid of execution, or

---

[8] The Court also held that "[e]ven if the Hegnas possessed a valid judgment lien against a partial interest in the Building, any such lien expired in January 2012, ten years after the Hegnas obtained their judgment against Iran and MOIS."  In re 650 Fifth Ave., 2014 WL 1998233, at *7.  On October 6, 2014, the Court denied the Hegnas' motion to extend their judgment lien pursuant to N.Y. C.P.L.R. § 5203(b).  See In re 650 Fifth Ave. & Related Props., No. 08-CV-10934 KBF, 2014 WL 4979189 (S.D.N.Y. Oct. 6, 2014).

[9] The Hegnas filed a Notice of Pending Action on March 30, 2009—about three months after the ABK Plaintiffs filed their Notices.  See In re 650 Fifth Ave., 2014 WL 1998233, at *2.

execution, under Title 28, Section 1610 of the United States Code, located within the judicial district in which the notice of pending action is filed, and titled in the name of any Defendant or any entity controlled by any Defendant, if such notice contains a statement listing such controlled entity.

PLEASE TAKE FURTHER NOTICE that Defendant the Islamic Republic of Iran controls the following entities, without limitation: Bank Melli, Assa Corporation, Assa Company Limited, 650 Fifth Avenue Company, and Alavi Foundation.

(Declaration of Curtis C. Mechling in Support of [ABK Plaintiffs'] Motion for Partial Summary Judgment as to Priority of Claims ("Mechling Decl.") Exs. 3, 5, 10, ECF No. 1207.)

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield,

Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation and internal quotation mark omitted).

      B.    Priority

     The Foreign Sovereign Immunities Act ("FSIA") "does not provide its own attachment and execution procedures."  Gates v. Syrian Arab Republic, 755 F.3d 568, 573 (7th Cir. 2014) (citation omitted); see also Peterson v. Islamic Republic of Iran, 627 F.3d 1117, 1130 (9th Cir. 2010).  Federal Rule of Civil Procedure 69(a) provides that attachment and execution procedures to satisfy a federal judgment "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69(a).  Thus, New York law governs the priority determination in this action.

     Under New York law, a judgment creditor secures a lien against the judgment debtor's real property by causing the judgment to be docketed in the county where the real property is located.  See N.Y. C.P.L.R. § 5203(a); In re Scarpino, 113 F.3d 338, 341 (2d Cir. 1997).  However, a "judgment does not become a lien upon the real property of a judgment debtor who is designated in the docket by a fictitious or incorrect name."  In re 650 Fifth Ave., 2014 WL 1998233, at *6 (quoting 9 Carmody-Wait 2d § 63:408 (2013)) (internal quotation marks omitted); see also We Buy Now, LLC v. Cadlerock Joint Venture, LP, 848 N.Y.S.2d 211, 211-

12 (N.Y. App. Div. 2007) ("A judgment is not docketed against any particular property, but solely against a name, and if that name is incorrectly set forth, a purchaser in good faith should not be the one to suffer; but rather the creditor, who should see to it that the docketing is in the correct name of the debtor, if it is to be notice to subsequent purchasers." (quoting <u>Grygorewicz v. Domestic & Foreign Disc. Corp.</u>, 40 N.Y.S.2d 676, 678 (N.Y. Sup. Ct. 1943)) (internal quotation marks omitted)).  "While a money judgment award is enforceable for 20 years, a real property lien resulting from the judgment is viable for just 10 years."  <u>Gletzer v. Harris</u>, 909 N.E.2d 1224, 1225 (N.Y. 2009) (citations omitted).

"With respect to personal property, after entry of the judgment the creditor generally must 'execute' on the property by delivering the final order to the sheriff of the county in which the property is located."  <u>Musso v. Ostashko</u>, 468 F.3d 99, 106 (2d Cir. 2006) (citing N.Y. C.P.L.R. § 5202(a)).

"The basic rule of [N.Y. C.P.L.R. § 5203(a)] is that the priorities among competing judgment creditors are determined on the basis of a pure horse race: the first to docket his judgment in the county where the realty is located has full rights in the property, unless there is a surplus."  <u>Id.</u> (citation and internal quotation marks omitted).  "Similarly, a judgment creditor who seeks a lien on personal property must be the first to execute or levy on the property or his effort to obtain a lien may be thwarted."  <u>Id.</u> (citation omitted); <u>see also</u> <u>State Tax Comm'n v. Shor</u>, 371 N.E.2d 523, 526 (N.Y. 1977); <u>In re Thriftway Auto Rental Corp.</u>, 457 F.2d 409, 411 (2d Cir. 1972).  As the Second Circuit has explained,

> New York has long preferred a bright line rule whereby the party that first notifies all interested third persons of its judgment lien—either by docketing (real property) or execution (personal property)—takes priority.  The rule serves not only to notify potential creditors and other interested parties of the existing lien, but also to permit the lienholder to rely on its interest in the property.

<u>Musso</u>, 468 F.3d at 106.

III.   DISCUSSION

The Court has already held that the Hegnas do not have a lien against the Building.  <u>See</u> <u>In re 650 Fifth Ave.</u>, 2014 WL 1998233, at *6-7.  The Court reasoned that the Hegnas' judgment is against Iran and MOIS, not the 650 Fifth Ave. Co.—which held a 100% interest in the Building until the Court determined that the Building was subject to forfeiture.  <u>See</u> <u>id.</u> at *6 ("[A] judgment properly recorded against a judgment <u>debtor of record</u> does not automatically become a lien upon the real property of an <u>alter ego</u> of such a debtor. . . .  [T]he Hegnas cannot convert a lien against Iran and MOIS into a lien against specific assets owned by 650 Fifth Ave. Co." (emphases in original) (citations omitted)).

This reasoning applies with equal force to the ABK Plaintiffs—whose judgments are also against Iran and MOIS, not Alavi, Assa, or the 650 Fifth Ave. Co.  These judgments—which postdate the Hegnas' judgment by several years—are <u>insufficient to obtain liens against the Defendant Properties</u>, all of which are in the name of Alavi, Assa, and/or the 650 Fifth Ave. Co.

The ABK Plaintiffs' claim to priority rests solely on their Notices of Pending Action.  The ABK Plaintiffs argue that by filing these Notices before the Hegnas did, they secured priority liens against the Defendant Properties.  The Hegnas

9

respond that § 1605A(g) Notices of Pending Action are not priority-creating

mechanisms as between judgment creditors.  The Court agrees.

Section 1083 of the 2008 National Defense Appropriations Act ("NDAA")

replaced § 1605(a)(7) of the FSIA with a new "terrorism exception to immunity,"

§ 1605A.  See Pub. L. No. 110-181, 122 Stat. 3, § 1083.  Among § 1605A's

advantages for plaintiffs is the ability to file Notices of Pending Action under

§ 1605A(g), which provides:

> **(g) Property disposition.**—
>
>> **(1) In general.**—In every action filed in a United States district court in which jurisdiction is alleged under this section, the filing of a notice of pending action pursuant to this section, to which is attached a copy of the complaint filed in the action, shall have the effect of establishing a lien of lis pendens upon any real property or tangible personal property that is—
>>
>>> **(A)** subject to attachment in aid of execution, or execution, under section 1610;
>>>
>>> **(B)** located within that judicial district; and
>>>
>>> **(C)** titled in the name of any defendant, or titled in the name of any entity controlled by any defendant if such notice contains a statement listing such controlled entity.
>>
>> **(2) Notice.**—A notice of pending action pursuant to this section shall be filed by the clerk of the district court in the same manner as any pending action and shall be indexed by listing as defendants all named defendants and all entities listed as controlled by any defendant.
>>
>> **(3) Enforceability.**—Liens established by reason of this subsection shall be enforceable as provided in chapter 111 of this title.

§ 1605A(g).

In Estate of Heiser v. Islamic Republic of Iran, the District Court for the District of Columbia—among the few courts to interpret § 1605A(g)—explained that § 1605A(g) introduced lis pendens, a creature of state law, into the federal courts, enabling plaintiffs to freeze certain property while their terrorism cases are ongoing:

> Generally speaking, lis pendens is a doctrine of state law that enables parties involved in litigation over real property to file notices with the Court indicating that any rights concerning that property are subject to the outcome of the civil litigation. See 51 Am. Jur. 2d Lis Pendens § 2 (2008). Technically speaking, a notice of lis pendens is not a lien, but, assuming the proper procedures are adhered to, the legal effect of the notice is that any third-party purchaser who receives title to the property is bound by the outcome of the civil case, without any additional rights to the property. Because a notice of lis pendens severely undermines the alienability of property, the procedure is usually limited to lawsuits that directly concern the right to own or use real property. Some jurisdictions, however, have allowed the doctrine to be used in a broader range of civil actions.
>
> Prior to the enactment of § 1083, federal courts did not have procedures for the filing of notices of lis pendens. To the extent that parties in civil actions in the federal courts had any right to avail themselves of lis pendens, it was a right only to be found in the laws of the state jurisdictions and administered through the state courts exclusively. Now that § 1605A(g) is on the books, however, litigants pursuing civil cases against state sponsors of terrorism are entitled to a federal lis pendens procedure administered through the federal courts. No other federal civil actions qualify for such an extraordinary measure.

605 F. Supp. 2d 248, 250 (D.D.C. 2009) (citations omitted); see also In re Islamic Republic of Iran Terrorism Litig., 659 F. Supp. 2d 31, 62 n.21 (D.D.C. 2009).

While a notice of lis pendens is commonly referred to as a "lien," see, e.g., § 1605A(g); Ben-Rafael v. Islamic Republic of Iran, 718 F. Supp. 2d 25, 29 (D.D.C. 2010), it is not technically a lien. See Estate of Heiser, 605 F. Supp. 2d at 250. A

notice of <u>lis pendens</u> does not create any additional rights in the property that is the subject of the notice.  <u>See</u> <u>Diaz v. Paterson</u>, 547 F.3d 88, 97-98 (2d Cir. 2008) ("<u>Lis pendens</u>, unlike attachment is 'a well-established, traditional remedy,' the effect of which 'is simply to give notice to the world of the remedy being sought in the lawsuit itself' and which 'creates no additional right in the property on the part of the plaintiff.'" (quoting <u>Connecticut v. Doehr</u>, 501 U.S. 1, 29 (1991) (Rehnquist, C.J., concurring))); <u>United States v. Kramer</u>, No. 1:06-CR-200-ENV-CLP, 2006 WL 3545026, at *9 (E.D.N.Y. Dec. 8, 2006) ("[L]is pendens does not, in itself, create the property interest that is said to have vested at an earlier time; <u>lis pendens</u> merely preserves a claim of a right in property which may, depending upon the lawsuit's outcome, be said to have vested at an earlier point." (citations omitted)).  The effect of a notice of <u>lis pendens</u> is to prevent third parties from encumbering the property <u>while litigation is ongoing</u>—not to vest the filer with priority as to preexisting judgment creditors.  <u>See</u> 51 Am. Jur. 2d <u>Lis Pendens</u> § 2 ("The <u>lis pendens</u> mechanism is not designed to aid either side in a dispute between private parties; rather, <u>lis pendens</u> is designed primarily to protect unidentified third parties by alerting prospective purchasers of property as to what is already on public record, that is, the fact of a suit involving property." (citations omitted)).[10]

---

[10] While § 1605A(g) refers to a "lien of <u>lis pendens</u>," there is no indication that the word "lien" was intended to have an independent meaning apart from "<u>lis pendens</u>."  Indeed, § 1605A(g) also refers to a "notice of pending action," suggesting that "lien" and "notice" are used interchangeably.

The legislative history of § 1605A is silent on the intended meaning of the <u>lis pendens</u> provision.  Given that silence, the Court is entitled to presume that Congress legislated against the backdrop of existing case law interpreting the meaning and legal effect of the <u>lis pendens</u> mechanism.  <u>See</u> <u>Siebert v. Conservative Party of New York State</u>, 724 F.2d 334, 337 (2d Cir. 1983) ("Congress is presumed to be aware of the judicial background against which it legislates."); <u>Cannon</u>

The Hegnas' interest in the Defendant Properties predated the ABK Plaintiffs' Notices of Pending Action by almost seven years. As a result, the Notices do not establish priority vis-à-vis the Hegnas. The ABK Plaintiffs, like the Hegnas, are general unsecured creditors of Iran and MOIS.[11]

## IV.   CONCLUSION

Accordingly, the ABK Plaintiffs' motion is DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 1205, 1245, and 1252 (and the corresponding motions in related and member cases).

SO ORDERED.

Dated:      New York, New York
            March 6, 2015

_____
KATHERINE B. FORREST
United States District Judge

---

v. Univ. of Chicago, 441 U.S. 677, 696-97 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law.").

[11] The ABK Plaintiffs argue that the Hegnas' 2002 lien has expired. (See [ABK Plaintiffs'] Reply Memorandum of Law at 8, ECF No. 1233.) This argument is inapposite. While a real property lien resulting from a judgment expires after 10 years, a money judgment award remains enforceable for 20 years. See Gletzer, 909 N.E.2d at 1225. Here, the 10-year period is not in play because, as explained above, docketing a judgment against Iran and MOIS is insufficient to create a lien against the real properties at issue in this action—all of which were in the name of 650 Fifth Ave. Co. or Alavi.