# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

January 13, 2017

Daniel S. Ruzumna
Partner
(212) 336-2034
Direct Fax (212) 336-1205
druzumna@pbwt.com

Hon. Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *In re 650 Fifth Avenue and Related Prop.*,
No. 08 Civ 10934 (KBF)

Dear Judge Forrest:

We write on behalf of the Alavi Foundation ("Alavi") and the 650 Fifth Avenue Company (the "Fifth Avenue Company," and together with Alavi, "Claimants") in response to the Court's December 14, 2016 Order, directing the parties to raise any dispute relating to Claimants' statute of limitations discovery requests by January 13, 2017. Claimants served document requests specifically focused on statute of limitations issues on December 23, 2016. The requests were drafted in reliance on a handful of documents produced earlier in this litigation that revealed that at least three federal agencies knew about—and actively investigated—the alleged International Emergency Economic Powers Act ("IEEPA") and money laundering violations contained in the Amended Complaint as far back as the mid-1990s or earlier. If the information in those documents can be sufficiently established, the Government waited far too long to bring this forfeiture action under the applicable statute of limitations. On January 6, 2017, the Government responded to Claimants' discovery requests that it will not produce a single document related to its past investigations of Alavi, the Fifth Avenue Company, or their directors and officers. The Government's position ignores clear guidance from the Second Circuit in this case and is without merit. Claimants respectfully request that the Court compel the production of documents relevant to their statute of limitations defense.

A.   **Claimants' Statute of Limitations Defense**

To file a timely action under the statute of limitations, the Government must commence a civil forfeiture action within five years of discovering the alleged offense giving rise to forfeiture, or two years after the date on which the involvement of the property involved

9468949v.1

January 13, 2017
Page 2

in the offense is discovered, whichever is later. *See* 19 U.S.C. § 1621. This limitations period begins to run when "the Government discovers or possesses the means to discover the alleged wrong, whichever occurs first." *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 502 (6th Cir. 1998). Put another way, "[c]ourts apply a known or should-have-known standard to Section 1621, meaning that 'an offense is discovered when the [g]overnment discovers or possesses the means to discover the alleged wrong, whichever occurs first.'" *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013) (citing *$515,060.42*, 152 F.3d at 502). As explained in the legislative history of this provision, "19 U.S.C. sec. 1621 has been construed as requiring the government to exercise reasonable care and diligence in seeking to learn the facts disclosing the alleged wrong. Thus, the courts have held under sec. 1621 that the time begins to run as soon as the government is aware of facts that should trigger an investigation leading to discovery of the offense." H.R. 1658, 146 Cong. Rec. H2051 (daily ed. April 11, 2000).

For continuing offenses—such as the one alleged in the Amended Complaint—the limitations period runs from when the Government initially discovers or should have discovered the offense, even if the offense extends for many years. *$515,060.42 in U.S. Currency,* 152 F.3d at 501-02. In contrast, if the Government alleges individual discrete criminal acts giving rise to forfeiture, the statute of limitations for each forfeiture claim starts to run on the date the Government learns or should have learned of that act. *See Kivanc*, 714 F.3d at 782 (finding that the Government had charged defendant with two distinct and separate crimes—conspiracy to distribute controlled substances and conspiracy to commit health care fraud—only the latter of which was timely as the Government sought forfeiture within five years of discovering it); *United States v. 5443 Suffield Terrace*, 607 F.3d 504 (7th Cir. 2010) (smuggling acts were distinct criminal offenses because they could not be tied to one another and could independently support forfeiture, such that the most recent smuggling was timely and prior, separate smuggling—which occurred over five years before forfeiture action—was not). If the Government brings forfeiture claims on the basis of individual discrete acts, however, any forfeiture must be limited to property derived from, traceable to, or involved in only those individual offenses that occurred within the limitations period. *See* 18 U.S.C. § 981(a)(1)(A), (C). Here, the Government seeks forfeiture of property derived from or involved in alleged offenses going back to 1995 based on an alleged continuing unlawful services and money laundering scheme.

During the pre-appeal litigation phase of this forfeiture action, Claimants sought, but were repeatedly denied, discovery critical to their statute of limitations defense, *i.e.*, discovery that would show when the Government first learned of the alleged acts giving rise to forfeiture. After entry of summary judgment, Claimants appealed the discovery denial, arguing that various rulings denying discovery "depriv[ed] Claimants of access to discovery on issues concerning the statute of limitations[.]" Appellate Br., at 126, n.33. As Claimants explained, the limited number of documents that Claimants did receive in discovery supported Claimants' statute of limitations defense, as they revealed that the Government knew about—and actively investigated—the allegations contained in the Amended Complaint for many more than five

years before filing suit.[1]  In particular, a 2007 FBI report about Alavi states, "in the mid-1990s, financial information obtained in the investigation [of Alavi] was provided to the IRS and OFAC to determine if any potential criminal violations existed.  Both IRS and OFAC determined that no criminal evidence could be found at that time." (*See* FBI Memorandum dated March 5, 2007 (the "2007 FBI Memo"), Attachment A.)  Other evidence corroborates this FBI Report.  For example, another FBI Report shows that a full field investigation of Alavi was instituted in 1982, and that in 1996, OFAC, the FBI, and the IRS conducted an investigation of Alavi's activities in connection with an article in *The American Spectator* by Kenneth Timmerman.  (*See* FBI Memorandum dated April 30, 1996 (the "1996 FBI Memorandum"), Attachment B.)  The Timmerman article, published in 1995, contains allegations nearly identical to those raised in the Government's Amended Complaint.  (*See* Kenneth Timmerman, *Islamic Iran's American Base*, The American Spectator, December 1995 (the "Timmerman Article"), Attachment C.)[2]

In its July 20, 2016 decision reversing the Court's summary judgment decision and remanding the forfeiture case for further proceedings, the Second Circuit found that although Claimants had properly raised the statute of limitations as an affirmative defense in their Answer to the Amended Complaint, the record on the defense was "hardly developed," as Claimants had been denied the opportunity to obtain discovery on their defense.  *In re 650 Fifth Avenue and Related Properties*, 830 F.3d 66, 97 n.28 (2d Cir. 2016) (explaining that the Court had "repeatedly denied Claimants' attempts to obtain discovery that might show when the Government learned of the Claimants' alleged forfeitable offenses.").  Given the Court of Appeals' explicit acknowledgment that further discovery may help Claimants develop their statute of limitations defense and the importance of the requested documents to Claimants' defense, Claimants' respectfully submit that the Court should compel such discovery from the Government.

### B. Claimants' Renewed Discovery Requests

On December 23, 2016—following an order from this Court regarding statute of limitations discovery—Claimants served a letter on the Government outlining three categories of narrowly-tailored document requests relevant to Claimants' statute of limitations defense ("Claimants' Requests") (*see* Attachment E).  These requests include a number of unique identifiers to assist the Government in easily locating responsive documents, such as individual FBI investigative file numbers and specific governmental memoranda that identify prior governmental investigations of Claimants' alleged activities—the same activities the Government alleged years later in the Amended Complaint—from the 1990s and early 2000s.  Proof of the existence and substance of these investigations could very well indicate that the Government waited too long to bring this forfeiture action.  At a minimum, proof that the

---

[1] Given the importance of these documents to Claimants' statute of limitations defense, Claimants have also repeatedly sought to obtain, without success, additional documents via FOIA requests served on a number of governmental agencies, first in 2011 and again in 2016.

[2] An article in *Newsday* from earlier in 1995 contains many of the same allegations as the Timmerman article.  (*See* Knut Royce and Kevin McCoy, *Secretive Iran Group Avoid Taxes; Feds: Group Funnels Money, Intelligence*, New York Newsday, May 26, 1995 (Attachment D).)

January 13, 2017
Page 4

Government discovered or had the means to discover the alleged offenses before November 2004 would limit the actionable conduct that could give rise to forfeiture and, therefore, narrow the property possibly subject to forfeiture.

To facilitate the identification and production of relevant documents, Claimants specifically identified relevant FBI files—by investigative file number, where available—relying on documents previously produced in discovery. (*See* Claimants' Requests ¶ 1(a)-(l).) Where an investigative file number could not be identified, Claimants referenced and attached FBI memoranda and reports describing the past investigations. (*See id.* ¶ 1(m).) Using these FBI documents—which generally include the names of the memorandum's author, the approving agent, and the agents to whom the memorandum is directed, as well as the field office and squad to which the agents were assigned—the Government should not have difficulty identifying the relevant investigative files. For example, a 2007 FBI Memo attached to Claimants' Requests described "extensive liaison" between the federal government (FBI) and the New York County District Attorney's Office "based mostly on suspicious financial transactions," and reported that "in the mid-1990s, financial information obtained in the investigation [of Alavi] was provided to the IRS and OFAC to determine if any potential criminal violations existed." Though Claimants lack the ability to identify all potentially relevant past investigations, Claimants have taken all possible steps to minimize the Government's burden, and there can be no question that the materials sought are highly relevant to the statute of limitations defense.[3]

By way of further example, Claimants seek documents that form the basis of and that resulted from an article in *The American Spectator* mentioned in a 1996 FBI report. (*See* Claimants' Requests ¶ 3(g); *see also* 1996 FBI Memo.) The 1996 FBI Memo, which indicates that a "Full Field Investigation" was instituted on Alavi *on April 27, 1982*, references a request to the New York Field Office "to conduct thorough indices searches and analysis of the names and organizations" mentioned in the article. This article from *The American Spectator* also describes a separate FBI report from 1994 detailing Iran's use of Alavi "to establish 'covert sub-branches disguised as educational centers, mosques and other centers.'" (*See* Timmerman Article, at 6.) The article closely tracks the allegations in the Amended Complaint, and presumably so did the investigations that it spawned. Because the 1996 FBI report identifies the agents who drafted, approved, and received it and includes a redacted "Case ID #," there can be no reasonable argument that pulling relevant documents from this case file constitutes an undue burden.

On January 6, 2017, the Government served Claimants with its objections and responses (the "Government's Response") (*see* Attachment F.) The Government objected to Claimants' Requests in their entirety, arguing, among other things, that the relevant time period for discovery is limited to after November 16, 2004 (with respect to Alavi) and after December 17, 2003 (with respect to Assa). The Government justified its refusal to provide statute of limitations discovery by relying on two sentences plucked from an earlier decision of this Court. It states that what the federal agencies knew before November 2004 (*i.e.*, outside the limitations

---

[3] To mitigate any concerns about classified status of relevant documents or the law enforcement privilege, Claimants are willing to allow the documents to be reviewed only by attorneys and only those who obtain a security clearance.

9468949v.1

January 13, 2017
Page 5

period) is irrelevant since "the key question is whether the Government first learned of (or should have learned of) any individual IEEPA, ITR, and money laundering violations after November 16, 2004." (Gov't Rsp., at 2 (citing *In re 650 Fifth Avenue and Related Properties*, 08 Civ. 10934 (KBF), 2013 WL 5178677, at *37 (S.D.N.Y. Sept. 16, 2013)).)  But the Government's assertion is inconsistent with its prior allegations in support of forfeiture and completely ignores the Second Circuit's discussion of the issue.  The ground in this case has shifted, and the Government cannot simply ignore the Second Circuit's discussion of the need for further factual development of this defense.

   The Government cannot avoid discovery by attempting to re-characterize its allegations in the Amended Complaint.  In its Amended Complaint, the Government alleged long-term, continuing IEEPA and money laundering violations that ran from 1995 through 2008, not individual discrete violations after 2004.  If there were any doubt about the continuing nature of the offenses, that doubt would be removed by the Government's claims for forfeiture of the proceeds derived from the Building *from 1995 through 2008*, even though two-thirds of that time period was outside of the limitations period.  *See In re 650 Fifth Ave. & Related Properties*, 08 Civ. 10934 (KBF), 2014 U.S. Dist. LEXIS 54412, at *80-82 (S.D.N.Y. Apr. 18, 2014).  If Claimants' allegedly unlawful services were distinct acts, the Government would not be entitled to claim proceeds from activities that occurred prior to November 2004, and would not be entitled to seek forfeiture otherwise for events outside of the limitations period.  *Cf. Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) ("Discrete acts . . . which fall outside of the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period.").

   The Government's attempt to sidestep its discovery obligations is seemingly driven by its recognition, as supported by the limited discovery Claimants *have* received related to the statute of limitations, that the Government knew or should have known the facts underlying its forfeiture claims no later than the mid-1990s.  The few documents already produced reveal that the Government knew about and investigated the alleged IEEPA and money laundering violations for over a decade, yet took no action until 2009, well after the statute of limitations had expired.  Additional discovery concerning these prior investigations is critical to Claimants' statute of limitations defense.

9468949v.1

January 13, 2017
Page 6

        Claimants thus respectfully request that the Court compel the Government to produce documents responsive to Claimants' Request so that Claimants are afforded a full opportunity to develop their statute of limitations defense.

        Respectfully submitted,

        */s/ Daniel S. Ruzumna*

        Daniel S. Ruzumna