UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re 650 Fifth Avenue and Related Properties   :   08 Civ. 10934 (KBF)
:   ECF Case
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN OPPOSITION TO CLAIMANTS' MOTION FOR SUMMARY JUDGMENT ON THEIR STATUTE OF LIMITATIONS DEFENSES

JOON H. KIM
Acting United States Attorney for
the Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Michael D. Lockard
Martin S. Bell
Daniel M. Tracer,
    Assistant United States Attorneys
*- Of Counsel*

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to the motion of 650 Fifth Avenue Company (the "Partnership"), and Alavi Foundation ("Alavi") (collectively, "Claimants") for summary judgment on their statute of limitations defenses.

With cross-filed motions for summary judgment on the statute of limitations issue, the parties would appear to the casual observer as two ships passing each other in the night.[1]  That is, however, before the range of icebergs that is the governing law fells only one of them.  The first, and dispositive, iceberg is that where, as here, there is a continuing course of conduct with multiple, distinct underlying crimes that independently *could* support forfeiture of the same property, the limitations period starts afresh with each new offense.  The Claimants' repeated attempts to cast their own bad conduct as "decades-long schemes and conspiracies" cannot distract anyone from the key point – that the conduct that made up the scheme, as alleged in detail in the Amended Complaint and as finds ample support in the record, is made of numerous instances within the statutory window that could all support the forfeiture of the same property.

The second iceberg is the legal requirement that the Government be aware that conduct that could actually *give rise to forfeiture* in order to start the statute of limitations clock.  For statute of limitations purposes, the Government cannot be said to have known known about conduct when it could not, in fact, give rise to a forfeiture action at all because it was not against the law.  The Claimants assemble a parade of 1990s appearances of Alavi in various news reports and some evidence that the FBI had, in fact, failed to find evidence of a crime at around this time.  Nowhere in Claimants' laundry list of pre-sanctions era conduct is any evidence that the Government was aware, or should have been aware, of Alavi's specific illegal activity as

---

[1] This is, perhaps, by design, as cross-moving for summary judgment provides the facial appearance of a contestable issue.

alleged in the Amended Complaint – services provided to the Government of Iran – until *after* the sanctions regime came into effect.  In fact, most of the "evidence" of Government knowledge of actionable violations concerns violations that bear no relation to the Amended Complaint.  The remaining evidence, while irrelevant in any event, is so thin as to fail to prove knowledge of any sort.

For the same reasons as the Government's motion for summary judgment as to the Claimants' statute of limitations defenses should be granted, Claimants' motion for summary judgment in their favor on the same defenses should be denied in its entirety.

## STATEMENT OF FACTS

The Government respectfully directs the Court to the statement of facts in its memorandum in support of its motion for summary judgment (Dkt. No. 1563, hereinafter "Gov. Mem.," at 3-10) for a general recitation of the most relevant facts.  The Government pauses now to focus on the most salient characteristics of the Claimants' statement of facts.

Despite the Claimants' assertion that they have been under continuous investigation by the United States since 1979, *not one* fact offered by Claimants provides support for the notion that the Government had knowledge of the criminal conduct underlying the allegations in the actual Amended Complaint at a time when that conduct was, in fact, criminal.  *Not one fact* proffered serves to demonstrate that the Government knew of violations of the International Emergency Economic Powers Act, or related money laundering violations, from the point that the ITRs were enacted forward.  Instead, the Claimants offer evidence that they were being scrutinized for possible tax violations involving the formation of the partnership (*see, e.g.*, Claimants' Rule 56.1 Statement at ¶ 8, 13), or that there were suspicions that Alavi was involved in terrorism, espionage, the spread of militant Islam, the funnelling of money to the Ayatollah's supporter's in the United States (*see, e.g.*, *Id.* at 11, 15, 16, 19, 21, 23, 29, 30), or that, in a

general sense, that the Government of Iran had exercised varying degrees of control over the Foundation's activities. (See Claimant's Mem. 3-9). None of these offenses constitutes, on its own, knowledge of a criminal offense which could have given, or indeed did give, rise to the forfeiture complaint. Even allegations that the Government was aware of Alavi being controlled by the Government of Iran does not provide awareness on the Government's part that Alavi was providing the specific services alleged in the Amended Complaint. Knowledge of those specifics would come much later – and well within five years of when the Amended Complaint was filed (*see* Gov't Mem. In Support of Motion for Summary Judgment, Dkt. 1563, at 6-7). Indeed, testimony taken by this Court during the recent suppression hearing only further establishes that the Amended Complaint is based on evidence that arose after 2003. *See, e.g.*, Suppression Hearing Tr. 112-130 (Testimony of George Ennis); 816-818 (Testimony of Sharon Cohen Levin).

Claimants' Statement of Facts also offers a skewed read on the Amended Complaint. Claimants characterize the Amended Complaint as "not identify[ing] specific unlawful acts and the property subject to forfeiture as a result of each of those acts," and instead alleging a generalized scheme. *See* Def. Mem. at 10. Not true. The Amended Complaint specifically alleges that "the Alavi Foundation has been providing numerous services to the Government of Iran, including managing a commercial building for the Iranian Government, running a charitable organization for the Iranian Government, and transferring funds from 650 Fifth Avenue Company to Bank Melli," and that Assa Corp. provided numerous services to Bank Melli Iran, an instrumentality of the Government of Iran, with Alavi's knowledge, including, "repeatedly transferr[ing] rental income generated from 650 Fifth Avenue Company to Bank Melli through Assa Co. Ltd., …regularly following Bank Melli's instructions with regard to Assa

Corp.'s business affairs and the management of the investment, …regularly report[ing] back to Bank Melli on its financial situation and business dealings, and… manag[ing] the affairs of Assa Corp. for the benefit of Bank Melli." Amended Complaint ¶¶ 21, 22. Even a casual review of the complaint offers other specific examples of services rendered by Alavi for the Government of Iran (for example, the concealment of the the Government of Iran's relationship with Alavi by its actions in the *Gabay* lawsuit and the quiet resolution of the Hanif partnership dispute, *see* Amended Complaint ¶¶ 78-81, 101-107). Sections 120 through 143 address the role of the additional defendant properties. That this actions happened continuously over a lengthy period of time as described in the Amended Complaint does not rob the Government of the ability to have charged them individually, or the Court of the ability to perceive them individually.

## ARGUMENT

### I.   LEGAL STANDARDS

The Government respectfully refers the Court to the corresponding part of its brief in support of its summary judgment motion. *See* Gov't Mem. at 10-13.

### II.   DISCUSSION

    **a. That The Government Alleged a Continuous Scheme of Prohibited Acts is of No Moment**

Claimants point out, on multiple occasions, that the Government alleged "continuing violations giving rise to forfeiture" and has not charged every individual service rendered for the Government of Iran as a "separate and distinct act," the limitations period can only have begun to run from 1995. That is not the law.

"When there is a continuing course of conduct with multiple, distinct underlying crimes that independently *could* support forfeiture of the same property, the limitations period starts afresh with each new offense." *United States* v. *Kivanc*, 714 F.3d 782, 790 (4th Cir. 2013); *see*

5

*United States* v. *5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 508. (7th Cir. 2010). The Claimants' attempt to focus the Court on how the Government characterizes the overall scheme in its papers should not distract it from the core truth: it is undisputed that the individual transactions at issue well up until 2008 *could* support forfeiture of the property. That is all that is required. The limitations period is not governed by how the Government characterizes the continuing offense in its pleadings, but how it could be charged.

Despite its protestations, Claimants recognize that courts have upheld forfeiture on the basis of separate, distinct acts that could, as the statute requires, independently support forfeiture. Claimant's Mem. at 13. The services Alavi performed for the Government of Iran, as described above and as identified by the Government in the Amended Complaint, indisputably are IEEPA violations, and the Claimants do not appear to seriously suggest that such services – running a charity for Iran, or distributing rental income for Iran, for example – do not support forfeiture of the defendant properties, because they cannot. Rather, they claim that the Government "did not seek forfeiture of specific amounts or specific property tied to discrete post-November 2004 acts." *Id*. at 15. But this assumes, erroneously, that referencing the prolonged scheme of which these transactions were part excludes the possibility that any one of them could support forfeiture. Again, while the Government may, at times, charge a continuous course of conduct in a single count of an indictment, that fact does not change whether the offense is also committed through each individual violation. *See United States v. Jasper*, No. 00 Cr. 825 (PKL), 2003 WL 1345231, at *1 (S.D.N.Y. Mar. 19, 2003) (noting that "'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as a part of a single continuing scheme.'") (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989) and collecting cases). In choosing to characterize the continuous

6

chain of offenses as an ongoing scheme rather than enumerate each individual occasion of hundreds upon which Alavi performed a service for the Government of Iran (which the Government was not required to do in its pleadings), the Government did not forfeit the ability to move as to each such transaction. Because it is beyond dispute that many such transactions took place up to and including 2008, Claimants' argument fails without the Court even needing to reach the question of what the evidence shows the Government knew.

### b. The Government Was Not On Notice of the Crimes Ultimately Alleged in the Forfeiture Action

An examination of the evidence marshaled by the Claimants with respect to the Government's supposed awareness of prohibited activity relevant to the Amended Complaint exposes little but misdirections by the Claimants and, behind that, no evidence to speak of.

Claimants appear to suggest that their having been shrouded in suspicion of other criminal conduct dating back to their founding means that the Government had sufficient notice of their eventual violations of IEEPA and related money laundering violations beginning in the mid-1990s. This is preposterous. Close scrutiny of the litany of rumors, failed investigations, and causes for concern that Claimants attempt to pass off as notice and knowledge of criminality reveals that each of them was insufficient to establish the basic elements of the offense actually alleged in the Amended Complaint, either because (1) the activity referenced was not yet even a violation of criminal law, (2) the activity referenced (tax violations, espionage, and the like) was very clearly not the activity that formed the basis of the civil forfeiture action, making the supposed "notice" irrelevant, or (3) the reports and existing knowledge of the time were not developed enough to support an action. In any of these instances, there is no record evidence upon which to base the argument that the Government could have prosecuted the action based on

what it knew before 2004.[2]  Some of the documents Claimants offer, taken on their own terms, affirmatively demonstrate that the Government did not uncover any wrongdoing, meaning that the Government did not develop facts from which any statutory claim may have arisen.  *See, e.g.*, Claimants' Rule 56.1 Statement ¶¶ 18, 25.

Claimants most heavily lean upon the notion that awareness that Iran may have controlled Alavi prior to 1995, before the sanctions regime was in place, is tantamount to awareness that Iran controlled Alavi after 1995.  This argument fails as a basic legal proposition; the two are not the same.  It also fails because it ignores the possibility that Alavi could have altered its conduct upon the prohibition of the provision of services to Iran, and nothing on the record shows that the Government would have been on notice of any change.  It further fails because the theoretical knowledge of mere control of the Alavi Foundation by Iran does not implicate the full array of services alleged to have been provided – the actual violations of IEEPA that support the allegations in the Amended Complaint.

Finally, none of the junctures raised by Claimants at which the Government supposedly should have been aware of Alavi's conduct touches Alavi's knowledge of Assa's conduct and dealings with them despite that awareness.  Nothing presented by Alavi on the current record could even remotely be construed as the Government's knowledge of that part of the alleged conduct.  Claimants' only nod to Assa in their statement of undisputed facts does not touch on Alavi's knowledge.  *See* Claimants' Rule 56.1 Statement ¶ 17.  Claimants' summary judgment arguments, both with respect to its motion and the Government's, fail for that reason alone.

---

[2] To the extent that the Claimants cite news reports about individual purported Government investigations, those reports are either inadmissible or weak to the point of weightlessness owing to their being mere hearsay.  See, e.g., Claimants' Rule 56.1 Statement ¶¶ 27-28 (regarding Alavi's being a front for the Government of Iran), 17 (regarding Assa's relationship with Bank Melli Iran).

## Conclusion

For all of these reasons, Claimants' statute of limitations arguments fail. Their motion should be denied, the Government's should be granted in full, and the parties should move on to a final trial on the forfeitability of the *defendants-in-rem*.

Dated: New York, New York
April 26, 2017

                        Respectfully submitted,

                        PREET BHARARA
                        United States Attorney for the
                        Southern District of New York

By:          /s/
                        Michael D. Lockard
                        Martin S. Bell
                        Daniel M. Tracer
                        *Assistant United States Attorneys*
                        *- Of Counsel -*