UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                :
                                                :
IN RE 650 FIFTH AVENUE                          :       No. 08 Civ. 10934 (KBF)
AND RELATED PROPERTIES                          :
                                                :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**ALAVI FOUNDATION AND 650 FIFTH AVENUE COMPANY'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT</u>**

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022

*Attorneys for Claimants Alavi Foundation and the
650 Fifth Avenue Company*

9706094v.1

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT............................................................................................................................2

    I.    The Statute of Limitations Is Governed by the Offenses Actually Alleged, Not by Offenses the Government *Could Have* Charged but Did Not ...........................................................................................................2

    II.    The Government Cannot Simultaneously Allege Continuing Offenses for Forfeiture Purposes and Discrete Offenses for Limitations Purposes.............................................................................................5

    III.    Undisputed Evidence Shows That the Government Knew or Should Have Known of the Alleged Offenses Before the Limitations Period......................6

CONCLUSION........................................................................................................................10

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Gilvar v. United States*,
  No. 09-CV-8941, 2011 U.S. Dist. LEXIS 57640 (S.D.N.Y. May 26, 2011),
  *aff'd* 468 F. App'x 31 (2d Cir. 2012) ...................................................................................6

*Powell v. Omnicom*,
  497 F.3d 124 (2d Cir. 2007) .................................................................................................5

*Turner v. Sabourin*,
  217 F.R.D. 136 (E.D.N.Y. 2003) .........................................................................................4

*United States v. $515,060.42 in U.S. Currency*,
  152 F.3d 491 (6th Cir. 1998) ............................................................................................4, 5

*United States v. 9167 Rock's Rd.*,
  No. C-94-20004, 1995 U.S. Dist. LEXIS 7843 (N.D. Cal. Feb. 10, 1995) .....................6, 9

*United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No.*,
  255 F. Supp. 2d 56 (E.D.N.Y. 2003) ...................................................................................4

*United States v. Jasper*,
  No. 00-CR-825, 2003 U.S. Dist. LEXIS 4098 (S.D.N.Y. Mar. 19, 2003) ...........................3

*United States v. Kivanc*,
  714 F.3d 782 (4th Cir. 2013) ....................................................................................... passim

*United States v. R.I.T.A. Organics, Inc.*,
  487 F. Supp. 75, 77 (N.D. Ill. 1980) ....................................................................................6

*United States v. Tutino*
  883 F.2d 1125 (2d Cir. 1989) ...............................................................................................3

*United States v. Yashar*,
  166 F.3d 873 (7th Cir. 1999) ................................................................................................5

**Statutes**

International Emergency Economic Powers Act ............................................................................5

**Other Authorities**

Exec. Order 12,957, 60 Fed. Reg. 14,615 ...................................................................................8

Exec. Order 12,959, 60 Fed. Reg. 24,757 ...................................................................................8

Fed. R. Civ. P., Supp. R. E(2)(a) ................................................................................................4

Fed. R. Civ. P., Supp. R. G(2)(f) ................................................................................................4

Fed. R. Evid. 801 .......................................................................................................................7

*Webster's Third New International Dictionary* (2002) ..............................................................3

Claimants Alavi Foundation ("Alavi" or the "Foundation") and 650 Fifth Avenue Company (the "Fifth Avenue Company") respectfully submit this reply memorandum of law in further support of their motion for summary judgment with respect to their statute of limitations defense. For the reasons set forth below, in their opening brief, and in their opposition to the Government's cross-motion, Claimants' motion should be granted.

## PRELIMINARY STATEMENT

In one respect, the Government's reliance on iceberg metaphors is apt: its brief addresses only the tip of Claimants' arguments and conveniently ignores 90% of the arguments that it hopes are underwater. But at any depth the Government's arguments fall apart. When the facts and law are actually examined (rather than only the Government's selective and out-of-context quotes), they reveal that the Government alleged only continuing offenses and that its forfeiture claims are barred by the applicable statute of limitations.

First, there is no dispute that the Government alleged continuing violations of law in the Amended Complaint, rather than individual discrete offenses. The Government does not claim otherwise. Instead, the Government argues that its own allegations are of "no moment," and should be set aside in favor of what it "could" have pleaded but did not. That is not the law. The allegations in the Amended Complaint control the nature of the Government's claims, and the Court must apply the statute of limitations to that pleading, not a hypothetical set of facts.

Second, the Government's decision to pursue forfeiture on the basis of continuing offenses was strategic: the only way for the Government to forfeit proceeds of unlawful activity or property involved in a money laundering transaction dating back to 1995 was to allege continuing violations that extend back to that time. The Government cannot now argue that its claims are based on individual transactions between 2004 and 2009 for purposes of the statute of

1

limitations, but attempt to forfeit property based on conduct dating back to 1995. The Government is bound to its strategic decision and must face the consequences of that decision.

Finally, unable to escape the law establishing that the statute of limitations bars the Government's claims if it knew or should have known of the alleged offenses before November 2004, the Government attempts to argue that it had no such knowledge. That is simply not the case. The undisputed facts show that the Government knew or should have known of all of the alleged services giving rise to forfeiture before November 2004. But to the extent the Court finds that the Government knew or should have known of only *some* of the alleged services, then the Court still should grant Claimants' motion for summary judgment with respect to those services and not allow those services to serve as a basis for forfeiture at trial.

## ARGUMENT

### I. The Statute of Limitations Is Governed by the Offenses Actually Alleged, Not by Offenses the Government *Could Have* Charged but Did Not

The Government concedes that the Amended Complaint alleged only continuing violations against Claimants. (Gov't Br. at 6-7 ("In choosing to characterize the continuous chain of offense as an ongoing scheme rather than enumerate each individual occasion . . .").) Having acknowledged—as it must—this decisive fact, the Government attempts to argue that its pleading decisions are simply of no consequence, asserting that the "limitations period is not governed by how the Government characterizes the continuing offense in its pleadings, but how it *could* be charged." (Gov't Br. at 6 (emphasis added).) The argument that the Court should apply the forfeiture statute of limitations based on what the Government hypothetically could have alleged is both legally and logically meritless.

The Government attempts to justify this brazen assertion by relying on a single sentence from *United States v. Kivanc*, 714 F.3d 782 (4th Cir. 2013), that it lifted out of context

2

and distorted to fit its ends.  But the Fourth Circuit in *Kivanc* did not hold that the Government's charging decisions are irrelevant to the statute of limitations, as the Government intimates.  Instead, the Fourth Circuit reached the *opposite* conclusion, explaining that its decision allowing some of the Government's forfeiture claims to proceed was because the Government "separately indicted Dr. Kivanc for each crime."  *Id.* at 790 (noting that the government charged Dr. Kivanc with nineteen counts of distributing and conspiring to distribute controlled substances, and twenty-three counts of health care fraud and conspiring to commit health care fraud).  In holding that "the limitations period starts afresh with each new offense," the Fourth Circuit in *Kivanc* relied on the fact that the Government actually charged "multiple, distinct underlying crimes that independently could support forfeiture of the same property."  *Id.*; *see also* Claimants' Mem. of Law in Opp'n at 8-9, Apr. 26, 2017, Dkt. No. 1605.

Though the Government may have had the option to plead the offenses allegedly giving rise to forfeiture as continuing in nature *or* as distinct individual transactions, it is bound by its decision.  The cases the Government relies upon do not hold otherwise.  For instance, in *United States v. Jasper*, No. 00-CR-825, 2003 U.S. Dist. LEXIS 4098 (S.D.N.Y. Mar. 19, 2003), the court noted that "acts that could be charged as separate counts of an indictment may *instead* be charged in a single count."  *Id.* at *1 (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989)).  "Instead" means that the Government must choose one or the other.  (*See Webster's Third New International Dictionary* (2002) ("instead" defined as "as a substitute or equivalent" or "as an alternative").)  It cannot do both, nor can it retroactively claim the benefits of the pleading option it did not choose.  Indeed, the Government acknowledged as much in its cross-motion for summary judgment when it argued that, "where a case involves numerous prohibited transactions that are part of a single unlawful scheme, the Government remains free to

3

charge *either* a continuing offense *or* multiple unlawful individual transactions." (Gov't Mot. for Summary Judgment at 14, Apr. 13, 2017, Dkt. No. 1563 (emphasis added).) Either is not the same as both.

The Government's notion that the allegations in the Amended Complaint have no impact on the limitations period is also contrary to law. *See United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 502-03 (6th Cir. 1998) (statute of limitations runs from date of discovery of a continuing offense); *Kivanc*, 714 F.3d at 789 (statute of limitations runs from date when government "discovers or possesses the means to discover the alleged wrong"). The relevant limitations period is the one specified for the offense that is actually charged or alleged, not the limitations period for offenses that the Government could have charged but chose not to. *Cf. Turner v. Sabourin*, 217 F.R.D. 136, 145 (E.D.N.Y. 2003) (noting the "overwhelming weight of authority" that the Government cannot convict a defendant for a lesser included offense that was not charged where the statute of limitations for that offense—but not the greater offense—had run).[1] The Government made a strategic choice to pursue forfeiture based on a continuing violation rather than to allege discrete offenses occurring after November 2004; the fact that it *could* have done otherwise does not make up for the fact that it did not.

---

[1] Under Rule G, in a complaint for civil forfeiture, the Government "must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P., Supp. R. G(2)(f). The Complaint does not meet this standard for individual discrete offenses after November 2004. *See United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No.*, 255 F. Supp. 2d 56, 70 & n.21 (E.D.N.Y. 2003) (forfeiture complaint was adequate where it "offered specific information about the transactions at issue" and contained "considerable detail as to the amount of money the claimant received through criminal conduct, as well as the amounts and dates of the transfers and the properties purchased"); Fed. R. Civ. P., Supp. R. G, note 2 (case law on the standard for a forfeiture complaint under Rule E(2)(a) is "carrie[d] . . . forward without change" under Rule G(2)(f)).

4

## II. The Government Cannot Simultaneously Allege Continuing Offenses for Forfeiture Purposes and Discrete Offenses for Limitations Purposes

The Government seeks to have its proverbial cake and to eat it too by asserting the existence of multiple, discrete violations after November 2004 for statute of limitations purposes while, at the same time, relying on a purported decades-long scheme when seeking to calculate the proceeds of the alleged crimes in determining the extent of property to be forfeited. It cannot have it both ways.

The Government seeks forfeiture of the proceeds of alleged violations of the International Emergency Economic Powers Act ("IEEPA") and of property involved in money laundering transactions going back to 1995. (Compl. ¶¶ 1-2 144-57.) In so doing, it relies on allegations of continuing offenses from 1995 to the time of filing the Amended Complaint. When challenging Claimants' statute of limitations defense, however, the Government reverses course and asks the Court to consider the Amended Complaint as if it alleged discrete offenses that occurred after November 2004. The Government made a strategic choice and must live with the consequences. *See Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) (party bound by "a deliberate strategic choice" even if he later determines that "his assessment of the consequences was incorrect"). Having chosen to allege a continuing violation, the Government's claims are barred if it knew or should have known of the alleged continuing offenses before November 2004. *See $515,060.42 in U.S. Currency*, 152 F.3d at 502-03. The Government's attempt to claim the benefits of both the allegations it made and those it did not—while selectively avoiding the consequences of the allegations it made and those it did not—must be rejected.

The Government's argument here would undermine the very purpose of statutes of limitation, reward delay rather than discouraging it, and prejudice forfeiture claimants by forcing them to defend claims with stale evidence. *See, e.g.*, *United States v. Yashar*, 166 F.3d

5

873, 879 (7th Cir. 1999) ("[U]nder the government's position . . . the statute of limitations, designed as a control on governmental action, would instead be defined by it. . . . This approach would transform the limitations period from a check on governmental delay in prosecution to a function of prosecutorial discretion."). If it had its way, the Government could knowingly watch and wait for decades while an offense continued, and later seek forfeiture of proceeds dating back to the inception of the offense. The law does not permit that result.

### III. Undisputed Evidence Shows That the Government Knew or Should Have Known of the Alleged Offenses Before the Limitations Period

The undisputed evidence shows that the Government knew or should have known of the alleged offenses by the late 1990s. In arguing otherwise, the Government ignores the underlying facts that it has admitted and the pertinent legal standard.

Contrary to the Government's assertions, the trigger for the statute of limitations is not when the Government "could have prosecuted the action." (Gov't Br. at 7-8.) Rather, it is when the Government knew or should have known of the alleged offenses. *Kivanc*, 714 F.3d at 789 ("Courts apply a knew or should-have-known standard to § 1621"). As the record evidence demonstrates, the Government knew of the allegations underlying its forfeiture claims by the late 1990s. And even if the Government's knowledge was not clear, it cannot reasonably be disputed that the Government should have known of the alleged offenses by that time. *See Kivanc*, 714 F.3d at 789 (relevant standard for statute of limitations is when the Government "possesses the means to discover the alleged wrong"); *United States v. 9167 Rock's Rd.*, No. C-94-20004, 1995 U.S. Dist. LEXIS 7843, at *12 (N.D. Cal. Feb. 10, 1995) (quoting *United States v. R.I.T.A. Organics, Inc.*, 487 F. Supp. 75, 77 (N.D. Ill. 1980)) ("[Section 1621] imposes upon the government a duty 'of reasonable care and diligence in seeking facts which would disclose' the wrongdoing."); *Gilvar v. United States*, No. 09-CV-8941, 2011 U.S. Dist. LEXIS 57640, at *9-

6

11 (S.D.N.Y. May 26, 2011) (statute of limitations barred claims where plaintiffs "knew or should have known the critical facts"), *aff'd* 468 F. App'x 31 (2d Cir. 2012); *see also* Claimants' Mot. at 15-18, Apr. 12, 2017, Dkt. No. 1558; Claimants' Opp'n at 10-14, 16, Apr. 26, 2017, Dkt. No. 1605.

Claimants have reviewed the evidence establishing that the Government knew or should have known of the allegations underlying its forfeiture claims at length in prior briefing, and do not repeat it all here. Such repetition is not necessary because the Government does not dispute many of the key underlying facts. For example, the Government does not dispute the existence or contents of the public reports about the Foundation that circulated before 2004. (*See generally* Gov't 56.1 Counter-Statement ¶¶ 6, 7, 14, 16, 17, 19, 21, 23-25, 27-28, Apr. 26, 2017, Dkt. No. 1609.)[2] Nor does it dispute that its own records contained these same allegations, which later appeared in the Amended Complaint. (*See id.* ¶ 8 (undisputed that IRS determined that the trustees of the Foundation "have been appointed by the government of Iran" and that the Foundation may be controlled by the Government of Iran); ¶ 9 (undisputed that OFAC believed the Foundation's properties constituted "properties in which Iran has an interest"); ¶ 13 (undisputed that FBI received and translated a letter sent from Habib Zobaidi to the Foundation's board outlining a possible plan to form a partnership with Bank Melli, and undisputed that the document included handwritten notes made by the FBI indicating that such a transaction would be illegal); ¶ 15 (undisputed that by the early 1990s, the FBI had received information that it believed indicated the Foundation was giving support to Iran and that it continued to investigate

---

[2] The Government argues that the Court should not consider news reports because they are hearsay. (Gov't Br. at 8.) That is not so. The news articles are not hearsay because Claimants do not rely on them to prove the truth of the matter asserted therein. *See* Fed. R. Evid. 801. Rather, they are offered to prove that the Government was on notice of the allegations. As Claimants have explained previously, numerous courts have held that material published in news articles triggers the statute of limitations. (Claimants' Mot. at 16 n.7; Claimants' Opp'n at 17 n.9.)

the Foundation's link to Iran and its control by the Iranian Ambassador to the United Nations);
¶ 21 (undisputed that the FBI received a copy of Kenneth Timmerman's article and asked its New York office to "conduct thorough indices searches and analysis of names and organizations mentioned" therein).) Instead, the Government asks the Court to ignore this evidence in a series of failed arguments.

The Government first contends that any information it received before 1995 is irrelevant because the conduct was not unlawful at the time. But the Government does not argue that the key facts changed in 1995, or that its investigations of Alavi and the Fifth Avenue Company ended that year. In 1996—and later—the Government "possesse[d] the means to discover the alleged wrong" based on the abundant information in its own files and the public record. *See Kivanc*, 714 F.3d at 789. That is enough to trigger the statute of limitations. *Id.* Moreover, the Government is wrong to suggest that the relevant information appeared exclusively before the sanctions went into effect. As just one example, the Government admits that it received a copy of Kenneth Timmerman's December 1995 article, and that it conducted further investigation in April 1996 and later. (*See* Gov't 56.1 Counter-statement ¶ 21; *see also* Claimants' Opp'n at 12-13.) Both the article and the FBI's request for further investigation came *after* President Clinton's Executive Orders were issued, on March 15, 1995 and May 6, 1995. *See* Exec. Order 12, 957, 60 Fed. Reg. 14,615; Exec. Order 12,959, 60 Fed. Reg. 24,757.

The Government next contends that the activity referenced in public reports and its own files "was very clearly not the activity that formed the basis of the civil forfeiture action." (Gov't Br. at 7.) But this is demonstrably untrue. The fact that the relevant documents contain statements regarding tax violations and espionage does not negate the fact that these same reports *also* contained the allegations that *did* appear in the Amended Complaint and form the basis of

8

the Government's claims.  For example, the Timmerman article specifically reported that the "Foundation has sent money to Iran" even though it was unlawful for U.S. entities to do so.  (*See* Ex. 29 at ALV_00000080.)  These are precisely the allegations that appeared a decade-and-a-half later in the Amended Complaint.  (*See* Compl. ¶ 21; *see also* Claimants' Opp'n at 18.)  The Government cannot simply point to *additional* facts and allegations of which it was aware to argue that it was not aware of other facts and allegations that appear in those very same reports.

Finally, the Government argues that the evidence does not establish that it "should have been aware" of "Alavi's knowledge of Assa's conduct and dealings with them despite that awareness."  (Gov't Br. at 8; *see also* Gov't Br. at 4.)  This, too, is incorrect.  The Government admits that it was aware that the Foundation considered entering into a partnership with Bank Melli with respect to ownership in the Building at 650 Fifth Avenue, and that *post-sanctions* news reports discussed Alavi's partnership with Assa and Assa's connection to Bank Melli.  (*See* Gov't 56.1 Counter-statement ¶¶ 13, 16, 17.)  The Government also admits that "Claimants offer evidence" regarding allegations that "the Government of Iran had exercised varying degrees of control over the Foundation's activities."  (Gov't Br. at 3-4.)  These facts are sufficient to establish that the Government was aware of Alavi's purportedly unlawful services for Assa.  And they are certainly sufficient evidence to trigger the Government's "duty of reasonable care and diligence in seeking facts which would disclose the wrongdoing" on which it now bases its forfeiture claims.  *See United States v. 9167 Rock's Rd.*, 1995 U.S. Dist. LEXIS 7843, at *12.

Even if the Court were to accept the Government's argument that it was not on notice of *some* of the alleged services to Iran in the Amended Complaint, that would not rescue the Government's *other* allegations from the statute of limitations.  The Government admits, for example, that "Claimants offer evidence" regarding allegations that "the Government of Iran had

9

exercised varying degrees of control over the Foundation's activities." (Gov't Br. at 3-4.) If the Court finds that the Government was (or should have been) aware of the facts underlying its allegations that Alavi was controlled by the Government of Iran and ran a charity on Iran's behalf prior to November 2004, then the Court must grant summary judgment with respect to those claims. Here, the evidence shows that the Government was or should have been aware of all of the alleged services in the Amended Complaint, and so Claimants' motion for summary judgment should be granted in its entirety.

## CONCLUSION

For the reasons stated above, in its initial memorandum of law (Dkt. No. 1558), and in its memorandum of law opposing the Government's cross-motion for summary judgment (Dkt. No. 1605), Claimants' motion for summary judgment on its affirmative statute of limitations defense should be granted.

Dated:  May 3, 2017

          Respectfully submitted,

           /s/ Daniel S. Ruzumna_____
          Daniel S. Ruzumna
          Melissa R. Ginsberg
          Leigh E. Barnwell
          PATTERSON BELKNAP WEBB & TYLER LLP
          1133 Avenue of the Americas
          New York, New York 10036
          Telephone 212-336-2000
          Facsimile 212-336-2222
          druzumna@pbwt.com
          mginsberg@pbwt.com
          lbarnwell@pbwt.com

          DEBEVOISE & PLIMPTON LLP
          John Gleeson
          Matthew E. Fishbein
          919 Third Avenue
          New York, NY 10022

Telephone: (212) 909-6000
Facsimile: (212) 909-6836
jgleeson@debevoise.com
mfishbein@debevoise.com

*Counsel for the Alavi Foundation and 650 Fifth Avenue Company*

9706094v.1