**17-3278(L)**

*Havlish v. 650 Fifth Ave. Co.*

N.Y.S.D. Case #
13-cv-1825(KBF)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term 2018

(Argued: May 1, 2019 | Decided: August 9, 2019)

Docket Nos. 17-3278(L), 17-3243(Con), 17-3251(Con),
17-3254(Con), 17-3255(Con), 17-3260(Con), 17-3261(Con), 17-3262(Con),
17-3264(Con), 17-3265(Con), 17-3267(Con), 17-3268(Con), 17-3269(Con),
17-3271(Con), 17-3272(Con), 17-3276(Con)

FIONA HAVLISH, ET AL.,

*Plaintiffs-Appellees*,

v.

650 FIFTH AVENUE COMPANY, ALAVI FOUNDATION,

*Defendants-Appellants*,

ASSA CORPORATION, ASSA CO. LTD.,

*Defendants.*[*]

_____

Before:

PARKER, WESLEY, and CHIN, *Circuit Judges*.

_____

[*] The Clerk of the Court is directed to amend the official caption as set forth above.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 09 2019

CERTIFIED COPY ISSUED ON 08/09/2019

These consolidated appeals ask whether two entities (the "Defendants") must turn over substantial real and financial property interests to hundreds of terrorism victims holding default judgments against the Islamic Republic of Iran. The victims allege that the Defendants should be treated as the "foreign state" of Iran under § 1610(b)(3) of the Foreign Sovereign Immunities Act ("FSIA") and as a "terrorist party" under § 201 of the Terrorism Risk Insurance Act ("TRIA"). Following a bench trial, the United States District Court for the Southern District of New York (Forrest, *J.*) ordered the turnover of the Defendants' property under both statutes.

We hold that the district court violated the mandate we issued in a previous decision instructing it not to send the FSIA claims to trial. We also hold that the court violated the law of the case by finding that 650 Fifth Avenue Company is a foreign state under the FSIA. We **REVERSE** the judgment on these claims and **REMAND** for the court to enter judgment for the Defendants.

Without reaching the merits of the TRIA claims, we hold that the district court abused its discretion by precluding two of the Defendants' witnesses from testifying at trial. We therefore **REVERSE** the underlying order and **VACATE** the judgment on the TRIA claims. We also **REMAND** for a new trial on these claims.

The Defendants additionally challenge the district court's decision to deny them a jury trial on the TRIA claims upon finding that the Defendants waived their alleged jury right. Without reaching the court's waiver finding, we hold that TRIA § 201 litigants lack the right to a jury trial in actions against a state sponsor of terrorism, including its agencies or instrumentalities. We **AFFIRM** the court's decision denying a jury trial on this ground.

We therefore **AFFIRM** in part, **REVERSE** in part, **VACATE** in part, and **REMAND** for a new trial on the TRIA § 201 claims.

_____

> JAMES L. BERNARD, Stroock & Stroock & Lavan LLP, New York, NY (Curtis C. Mechling, Patrick N. Petrocelli, Pamela S. Takefman, Stroock & Stroock & Lavan LLP, New York, NY; Liviu Vogel, Salon Marrow Dyckman Newman & Broudy LLC, New York, NY; Timothy B. Fleming, Wiggins Childs Pantazis Fisher Goldfarb PLLC, Washington, DC; Ralph P.

Dupont, Barbara J. Dupont, Dupont Law Firm LLP, Stamford, CT; Dale K. Cathell, Richard M. Kremen, DLA Piper LLP (US), Baltimore, MD; Peter R. Kolker, Zuckerman Spaeder LLP, Washington, DC; Anant Kumar, Zuckerman Spaeder LLP, New York, NY, *on the brief*), *for Plaintiffs-Appellees*.

DANIEL S. RUZUMNA, Patterson Belknap Webb & Tyler LLP, New York, NY (Diana M. Conner, Leigh E. Barnwell, Patterson Belknap Webb & Tyler LLP, New York, NY; John Gleeson, Matthew E. Fishbein, Debevoise & Plimpton LLP, New York, NY, *on the brief*), *for Defendants-Appellants*.

————————

WESLEY, *Circuit Judge*:

Over the past few decades, hundreds of terrorism victims have obtained default judgments against the Islamic Republic of Iran in federal court. Iran has yet to satisfy these judgments, and the victims have returned to the courts seeking to execute their judgments through the attachment of Iranian assets located within the United States. Among these individuals are the hundreds of Plaintiffs-Appellees in these consolidated appeals (the "Judgment Creditors"). In the actions below, the Judgment Creditors sued the Alavi Foundation and 650 Fifth Avenue Company (the "Defendants"), alleging that the Defendants are sufficiently close to Iran that their assets are subject to attachment and execution under the Foreign Sovereign Immunities Act ("FSIA") and the Terrorism Risk

Insurance Act ("TRIA"). After nearly a decade of litigation, including a 2016
appeal to this Court[1] and a month-long bench trial, the United States District
Court for the Southern District of New York (Forrest, *J.*) found for the Judgment
Creditors on their claims under both statutes. The court ordered the Defendants
to turn over substantial property interests, including their stakes in 650 Fifth
Avenue (the "Building"), a 36-story commercial skyscraper in Midtown
Manhattan. *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 257 F. Supp. 3d 463
(S.D.N.Y. 2017).

The Defendants argue that the district court committed several errors
requiring us to reverse or vacate the judgment. We agree.

*First*, the district court violated both the mandate from our 2016 decision
and the law of the case by sending the FSIA claims to trial. We reverse the
judgment on the FSIA claims and remand for the court to enter judgment on
these claims for the Defendants.

*Second*, the district court abused its discretion by precluding two former
Alavi board members from testifying at trial. We reverse the underlying order.

---

[1] *See Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 106 (2d Cir. 2016), *abrogated
in part by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018).

This holding requires us to vacate the judgment and remand for a new trial on the Judgment Creditors' TRIA § 201 claims.

The Defendants also argue that the district court erroneously held that they waived their alleged right to a jury trial on the TRIA claims. We need not reach this question because no right to a jury trial attaches in TRIA § 201 actions pled against a state sponsor of terrorism, including its agencies or instrumentalities.

We therefore affirm in part, reverse in part, vacate in part, and remand for a new bench trial on the TRIA § 201 claims.

## BACKGROUND[2]

### A. The Parties

The Judgment Creditors are direct and indirect victims of terrorist attacks linked to the Islamic Republic of Iran. *Kirschenbaum*, 830 F.3d at 117. While we do not mean to look past the stories giving rise to each of their claims, the relevant

---

[2] In 2016, we vacated the district court's order granting summary judgment to the Judgment Creditors in this action. *See Kirschenbaum*, 830 F.3d 107. A more complete version of the facts giving rise to this litigation is found in that opinion.

5

Case 1:17-5945, Document 274, 08/26/2019, 2638849, Page6 of 24

fact for the purpose of these appeals is that these individuals all have unsatisfied judgments for money damages against Iran.[3]

Alavi is a New York not-for-profit corporation created in 1973 by Mohammad Reza Pahlavi, then Shah of Iran.[4] Among other properties and interests spread throughout the United States, Alavi owns 60% of 650 Fifth Ave. Co., a real estate partnership that owns the Building. Alavi's partner, the Assa Corporation, owns the remaining 40%. As we previously found, and reaffirm in a companion opinion, both Assa Corporation and its parent Assa Co. Limited (collectively, "Assa") are ultimately owned and controlled by the Government of Iran. *See id.* at 118.

---

[3] Unless otherwise noted, the resolution of the Judgment Creditors' claims turns on the same analysis. One exception is that some Judgment Creditors pursued relief under either the FSIA or TRIA, but not both statutes. Thus, while this opinion speaks of the Judgment Creditors collectively, it does so with the caveat that, at times, the term "Judgment Creditors" refers only to those Judgment Creditors who pursued the claim under discussion.

[4] Alavi was originally known as the Pahlavi Foundation and later as the Mostazafan Foundation of New York. We refer to all iterations of the entity as Alavi.

Case 1-cv-31797, Document 274, 06/25/2015, 1528894, Page 7 of 24

### B. Pleadings, Early Developments, and Summary Judgment

#### 1. The Complaints

The Judgment Creditors began filing the turnover lawsuits giving rise to these appeals in December 2008, shortly after the Government initiated a civil-forfeiture action against Assa's real and financial property interests. Their complaints allege that the Defendants, through their connections to Iran, are a "foreign state" under the FSIA and a "terrorist party" under TRIA. Under both statutes, the Judgment Creditors seek to enforce their judgments against Iran through the attachment and execution of the Defendants' domestic properties and interests.

#### 2. Early Developments

In 2010, the United States District Court for the Southern District of New York (Holwell, *J.*) consolidated these actions for pretrial purposes. In 2012, the Southern District reassigned the cases to Judge Forrest.

The Judgment Creditors eventually moved for summary judgment and turnover of the Defendants' properties on their FSIA and TRIA claims, with the exception of their FSIA § 1610(b) claims, which they reserved. The district court granted the motion.

Much of the summary judgment opinion focused on whether the district court had subject matter jurisdiction under the FSIA and TRIA. The court concluded on three alternative grounds that it did. First, it held that the Defendants could be treated as Iran itself, which suffices for jurisdiction under both statutes. *In re 650 Fifth Ave. & Related Props.*, No. 08 Civ. 10934 (KBF), 2014 WL 1516328, at *10–11 (S.D.N.Y. Apr. 18, 2014) (citing 28 U.S.C. § 1603(a)). Second, it held that the Defendants are an "agency or instrumentality" of Iran. *Id.* at *13 (citing 28 U.S.C. § 1603(a)). While holding that FSIA § 1603(a)'s definition of "agency or instrumentality" did not formally apply to the Defendants because they are citizens of New York, *see* 28 U.S.C. § 1603(b)(3), the court concluded that it could disregard this problem and treat the Defendants as Iran under an alter-ego theory drawn from *First National City Bank v. Banco Para El Comercio Exterior de Cuba* (*Bancec*), 462 U.S. 611 (1983), *superseded in part by statute as stated in Rubin*, 138 S. Ct. 816. *In re 650 Fifth Ave.*, No. 08 Civ. 10934 (KBF), 2014 WL 1516328, at *13–14. Third, and outside of the "agency or instrumentality" context, the court held that *Bancec*'s equitable principles directly authorized jurisdiction because the Defendants are Iran's alter ego and could therefore be treated as Iran. *Id.* at *12.

Even where a court has jurisdiction over a turnover action involving a foreign state, the FSIA makes "the property in the United States of a foreign state . . . immune from attachment arrest and execution [subject to certain exceptions]." 28 U.S.C. § 1609. The court found that three attachment-immunity exceptions applied here: two in the FSIA, 28 U.S.C. §§ 1610(a)(7) and 1610(g), and one in § 201 of TRIA, codified at 28 U.S.C. § 1610 note. *In re 650 Fifth Ave.*, No. 08 Civ. 10934 (KBF), 2014 WL 1516328, at *14–21.

### 3. The First Appeal

In 2016, we vacated the judgment. *See Kirschenbaum*, 830 F.3d at 117. We found error in each of the district court's three alternative bases for jurisdiction. On the first ground, we rejected the court's definition of "foreign state," noting that the court had improperly drawn it from an executive order and federal regulations. *Id.* at 123–25. Applying the definition outlined in our precedent, we concluded that the Defendants are not foreign states "as a matter of law" under the FSIA. *Id.* at 141. On the third ground, we rejected "as a matter of law" the court's theory that the Defendants are Iran's alter egos under *Bancec*, finding a "lack of evidence demonstrating Iran's day-to-day control of Alavi." *Id.* at 130.

Much of our analysis turned on the second ground: the court's "agency or instrumentality" finding under the FSIA. *See id.* at 127–28. Looking to FSIA § 1603(b)'s definition of that term, we focused on subsection (b)(3)'s requirement that an agency or instrumentality must be "neither a citizen of a State of the United States as defined in [28 U.S.C. §§ 1332(c) and (e)], nor created under the laws of any third country." *Id.* at 126. The district court had found that the Defendants were Iran, and were therefore Iranian citizens, under *Bancec*'s alter-ego theory. *Id.* In the court's view, this was the *only* reason the Defendants satisfied § 1603(b)(3).

We first explained that, because Alavi is incorporated in New York, it "is unequivocally a 'citizen of a State of the United States' that falls outside the ambit of agency or instrumentality status under § 1603(b)(3). *See* 28 U.S.C. § 1332(c)." *Id.* at 127 n.10.

We reached the same conclusion with respect to 650 Fifth Ave. Co., albeit on a different ground. We noted that 650 Fifth Ave. Co. appeared to satisfy subsection (b)(3) because as a *partnership*—as opposed to a corporation like Alavi—it is not a "citizen of a State" under § 1332(c). *Id.* However, the Judgment Creditors had not challenged the district court's holding that, absent *Bancec*'s

alter-ego theory, 650 Fifth Ave. Co. is a "citizen of a State." We therefore
"assume[d] without deciding that § 1603(b)(3) exempts . . . 650 Fifth Ave. Co.
from agency or instrumentality status under the FSIA." *Id.* After holding that the
*Bancec* theory was incorrect, we concluded that the "Defendants do not qualify,
as a matter of law, as the agencies or instrumentalities of the foreign state of Iran
. . . [under] 28 U.S.C. § 1603(b)." *Id.* at 141.[5] This decision left TRIA § 201 as the
only basis for recovery available to the Judgment Creditors.

We reached a different conclusion on the TRIA claims. For TRIA § 201 to
apply, the defendant must be a "terrorist party" or an "agency or
instrumentality" thereof. *See* TRIA § 201(a). Although Iran is a terrorist party
under the statute, we held that the Defendants could not be treated as Iran itself
under TRIA for the same reasons that we rejected such treatment under the FSIA.
*Kirschenbaum*, 830 F.3d at 131–32. Turning then to the "agency or
instrumentality" issue, we found that this phrase has a different definition in

---

[5] In 2018, the Supreme Court abrogated our decision to the limited extent that it treated
FSIA § 1610(g) as a freestanding exception to attachment immunity. *See Rubin*, 138 S. Ct.
at 816, 827. Instead, the Court held, § 1610(g) "operates only when the property at issue
is exempt from immunity as provided elsewhere in § 1610." *Id.* at 820. This holding has
no bearing on the issues currently before us.

TRIA than it does in the FSIA. *Id.* at 132–35.[6] We remanded for further

proceedings because the issue of whether the Defendants fit TRIA's "agency or

instrumentality" definition turned on material questions of fact. *Id.* at 135–37. We

identified two specific material questions that the district court needed to

resolve: "(1) [whether the] Defendants are, indeed, agencies or instrumentalities

for TRIA purposes, and (2) [whether] their properties are 'blocked assets' [under

§ 201 of TRIA]." *Id.* at 131. Our remand instruction stated that these two TRIA

issues were "the *only* issues returning to the [district court] for further

proceedings." *Id.* at 142 (emphasis added).

## C. Proceedings on Remand

On remand, the Judgment Creditors sought permission to pursue FSIA

§ 1610(b)(3) claims against 650 Fifth Ave. Co. at trial. The district court granted

this request. It acknowledged our holding that the Judgment Creditors waived

their ability to argue that 650 Fifth Ave. Co. is not a "citizen of a state" under

---

[6] "To demonstrate that [the] Defendants are 'agencies or instrumentalities' of a terrorist party under the TRIA . . . [the Judgment Creditors] must show that each Defendant (1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, *or* (3) was owned, controlled, or directed by the terrorist party." *Id.* at 135.

§ 1603(b)(3). However, the court found that neither its summary judgment opinion nor our decision addressed the Judgment Creditors' FSIA § 1610(b)(3) claims. In the district court's view, the Judgment Creditors had "expressly reserved" these claims in their summary judgment motion. *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, No. 09 Civ. 165 (KBF), 2017 WL 8638863, at *1 (S.D.N.Y. May 4, 2017). Reasoning that "the waiver that foreclosed the argument as to citizenship status was limited to the issues that had been litigated and decided"—meaning the §§ 1610(a)(7) and 1610(g) claims, but not the § 1610(b)(3) claims—the court found it "patently clear that there was no legal ruling by the Second Circuit with regard to the availability of Section 1603(b)(3) for a Section 1610(b)(3) claim. That claim was not before it." *Id.* at *2.

Turning to our mandate, the district court quoted our language stating that "the only issues returning" on remand were two questions about whether TRIA applied here. *Id.* at *3 (quoting *Kirschenbaum*, 830 F.3d at 142). However, the court reasoned that our mandate "is properly interpreted in the context of what was before the Second Circuit on appeal. It should not be read as the Second Circuit reaching out beyond those issues to foreclose as yet unlitigated issues that were not before it. Properly read against the appellate issues raised and decided, the

Second Circuit's mandate does not preclude plaintiffs from pursuing their FSIA Section 1610(b)(3) claim now." *Id.*

The district court scheduled a bench trial for May 30, 2017. The court planned for this trial to operate in tandem with the jury trial in a coordinated action involving the Government's civil-forfeiture claims against the Defendants' property. Testimony from the jury trial would also be testimony for the bench trial, and many of the court's orders applied to both trials. Among these overlapping orders was one precluding the testimony of two former Alavi board members.

In March 2017, the Defendants took the position that they were entitled to a jury trial on the TRIA claims. The district court disagreed, finding that the Defendants had waived their alleged right to a jury trial. The court noted that early in these proceedings, at least one party in each of the Judgment Creditor turnover actions had demanded a jury trial. But in 2013, the Judgment Creditors collectively withdrew their jury demands, explaining in a letter to the court that "[t]he FSIA explicitly prohibits jury trials in actions 'against a foreign state.'" J.A. 881 (quoting 28 U.S.C. § 1330(a)). The letter also stated that "Counsel for . . . [the] Defendants have reviewed this letter and approve its contents." *Id.* at 880.

Holding that the Defendants had thereby consented to the Judgment Creditors'
withdrawal of their demands, the court declined to decide whether TRIA
litigants have the right to a jury trial.

### D. The Trial and Judgment

The trial began as scheduled and lasted approximately one month. The
day after the trial ended, the district court issued a 155-page opinion ruling in
favor of the Judgment Creditors on their FSIA § 1610(b)(3) and TRIA § 201
claims. *See Kirschenbaum*, 257 F. Supp. 3d at 466. Its key conclusion was that the
Government of Iran controlled Alavi and 650 Fifth Ave. Co. and used them to
conceal its property holdings within the United States.

The district court began its legal analysis by holding that it had subject
matter jurisdiction under the FSIA and TRIA. On the FSIA claims, it found that
650 Fifth Ave. Co. is Iran's agency or instrumentality under § 1603(b) and its alter
ego under *Bancec*, that 28 U.S.C. § 1605A(a)(1) deprived the partnership of
foreign sovereign immunity, and that its property was not immune from
attachment and execution under § 1610(b)(3). On the TRIA claims, the court
concluded that the Defendants' properties were "blocked assets" within the

meaning of TRIA and that the Defendants were agencies or instrumentalities of Iran under the statute.

Accordingly, the district court entered judgment for the Judgment Creditors on both their FSIA and TRIA claims. The Defendants timely appealed.

## DISCUSSION

There are three issues on appeal. The first is whether the district court erroneously found for the Judgment Creditors on their FSIA § 1610(b)(3) claims. The second concerns the Defendants' objections to several of the court's evidentiary rulings. The third challenges the court's denial of the Defendants' demand for a jury trial on the TRIA claims.

### I. The District Court Violated Our Mandate and the Law of the Case by Allowing the FSIA Claims to Proceed to Trial.

"A district court must follow the mandate issued by an appellate court." *Puricelli v. Republic of Argentina*, 797 F.3d 213, 218 (2d Cir. 2015).[7] "[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as

---

[7] "We review *de novo* whether the District Court has complied with our mandate." *Id.*

permitting it to do so." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).

"Where a mandate limits the issues open for consideration on remand, a district

court ordinarily cannot consider additional issues." *Puricelli*, 797 F.3d at 218.

We directed the district court to consider two TRIA issues—and "only"

those two issues—on remand. *Kirschenbaum*, 830 F.3d at 142. The court violated

our mandate by allowing the Judgment Creditors to bring their FSIA § 1610(b)(3)

claims to trial.

That error alone requires reversal. But even if the mandate had left room

for consideration of the FSIA § 1610(b)(3) claims, we would still reverse because

the district court's legal conclusions were contrary to the law of the case.

"When an appellate court has once decided an issue, the trial court, at a

later stage of the litigation, is under a duty to follow the appellate court's ruling

on that issue." *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 788 (2d Cir.

1983) (quoting *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977)). Our 2016

decision held that the "Defendants do not qualify, *as a matter of law*, as the foreign

state of Iran . . . *see* 28 U.S.C. § 1603(a)," or as "agencies or instrumentalities of the

foreign state of Iran . . . *see* 28 U.S.C. § 1603(b)," or as "alter egos of Iran under

*Bancec.*" *Kirschenbaum*, 830 F.3d at 141 (emphasis added). Those holdings are the

17

law of the case. They prevent the Judgment Creditors from pursuing *any* FSIA claim, because *every* FSIA claim requires that the defendant meet the definition of a foreign state under § 1603.[8]

Presented with the same issues on remand, the district court reached the opposite conclusions: that 650 Fifth Ave. Co. *is* a foreign state because it is Iran's "agency or instrumentality" under FSIA § 1603 and its alter ego under *Bancec*. The court's theory that our holdings applied only to the §§ 1610(a)(7) and (g) claims, leaving it free to consider the issues anew for the § 1610(b)(3) claims, seriously misperceives the law-of-the-case doctrine. When the Court of Appeals remands a matter to a district court, the lower court is bound not only by our resolution of the *claims* before us, but also of the legal *issues* we decided in the course of resolving those claims. We decided these issues "as a matter of law." The district court lacked the authority to disagree with our holdings.

---

[8] *See, e.g.*, 28 U.S.C. § 1330(a) (authorizing jurisdiction over "any nonjury civil action against a foreign state as defined in section 1603(a)"); *id.* § 1610(b)(3) (abrogating immunity over "property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States" where "the agency or instrumentality is not immune by virtue of [§ 1605A]"); *id.* § 1605A (abrogating immunity over certain "foreign state[s]").

We reverse the judgment in favor of the Judgment Creditors and remand for the court to enter judgment for 650 Fifth Ave Co. on the FSIA § 1610(b)(3) claims.

## II.     The District Court Abused Its Discretion by Precluding Testimony from Two Former Alavi Board Members.

In a companion opinion involving the Government's overlapping civil-forfeiture trial against the Defendants, we conclude that the district court abused its discretion by precluding testimony from two former Alavi board members. *See In re 650 Fifth Ave. & Related Props.*, No. 17-3258(L) (2d Cir. 2019). As the same issue arose in the bench trial below, we reach the same conclusion here. This error was prejudicial to the Defendants. It therefore requires us to vacate the judgment as to the TRIA claims and order a new trial. *See id.*

We thus decline to consider the Defendants' arguments that the district court erroneously ordered the turnover of their property under TRIA.[9]

---

[9] The Defendants also raise numerous challenges to the district court's evidentiary rulings and ask that we reassign the case to a different judge on remand. Because we vacate the judgment, and this case has already been reassigned, these issues are moot. To the extent the parties believe that any of the challenged evidentiary issues will arise once more on remand despite our decision to vacate the judgment, they may raise their concerns with the district court.

### III. No Right to a Jury Trial Attaches in TRIA Actions Seeking to Turn Over Property Belonging to a State Sponsor of Terrorism or an Agency or Instrumentality Thereof.

The final issue is whether the district court erroneously denied the Defendants' demand for a jury trial on the TRIA claims. Although our holding vacating the judgment renders any error harmless, we must address this issue because we have ordered a new trial and the issue will most likely present itself again. "We review a district court's decision to deny a jury trial de novo." *Eberhard v. Marcu*, 530 F.3d 122, 135 n.13 (2d Cir. 2008).

There are two issues here. The first is whether parties litigating under TRIA § 201 have the right to a jury trial when the defendant is "foreign state designated as a state sponsor of terrorism." TRIA § 201. The second is whether, if they do, the district court erroneously held that the Defendants waived their jury right. We begin and end our discussion with the first question.[10]

The right to a jury trial in a civil action may come from either a statute or the Seventh Amendment. Where a statute creates the right, the inquiry stops

---

[10] Although the district court addressed only the waiver issue, "we may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the District Court." *Ferran v. Town of Nassau*, 471 F.3d 363, 365 (2d Cir. 2006).

there. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998). Where a statute does not authorize jury trials, we look to the Seventh Amendment. TRIA is silent on the right to a jury trial.

The Seventh Amendment preserves the right to a jury trial in "Suits at common law" where the amount in controversy exceeds twenty dollars. U.S. Const. amend. VII; *see also Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 135 (2d Cir. 2017). "In assessing whether a given statutory provision entitles a party to a jury trial under the Seventh Amendment, we look both [1] to the historical treatment of analogous cases and [2] to the type of remedy available to determine whether a cause of action is one of law (thus triggering the jury right) or one of equity (in which case no jury right is available)." *Brown v. Sandimo Materials*, 250 F.3d 120, 126 (2d Cir. 2001). We apply these factors by balancing them, mindful that "[t]he more important of these two questions is that of the available remedy." *Id.*

We need not pore through the English Reports to understand how the first factor applies here. In *Ruggiero v. Compania Peruana de Vapores "Inca Capac Yupanqui,"* 639 F.2d 872 (2d Cir. 1981) (Friendly, *J.*), the plaintiffs argued that § 1330(a) of the FSIA unconstitutionally deprived them of a jury right preserved

by the Seventh Amendment. *See id.* at 878. We disagreed. Finding "nothing to show that a right of jury trial existed under the common law in 1791 with respect to a suit against a foreign government or an instrumentality thereof," we noted that "such a suit could not be maintained at all." *Id.* at 879.[11]

A TRIA § 201 claim is not a suit for a judgment, but rather one to enforce a judgment already obtained. But *Ruggiero* makes clear that in eighteenth-century England, the judgment giving rise to a § 201 claim pled against a state sponsor of terrorism could not have existed because citizens lacked the ability to sue foreign states or their agencies and instrumentalities. No lawsuit meant no judgment, and no judgment meant no attachment and execution of the foreign state's property.

---

[11] *See also, e.g., Arango v. Guzman Travel Advisors*, 761 F.2d 1527, 1534 (11th Cir. 1985) ("[I]t is clear that suits against foreign governments or commercial entities controlled by them only recently have been permitted to go forward. Even now, these lawsuits have been allowed only because of a change in executive and legislative policy, not by operation of common law principles—the law of liability of foreign sovereigns is in fact *sui generis*. If these suits were not permitted in 1791, it is inexorably clear that no right to a jury trial attached under the seventh amendment. . . . [T]he FSIA's nonjury trial requirement does not offend the seventh amendment." (citations omitted)); *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 426–27 (5th Cir. 1982) ("[S]uits against foreign states were as unknown to the common law in 1791 as were suits against the United States.").

This finding is dispositive. The Seventh Amendment does not *create* a right to a jury trial, but merely *preserves* the right that existed at common law. *See* U.S. Const. amend. VII; *Ruggiero*, 639 F.2d at 879. It is impossible to say the Seventh Amendment preserved a jury right in an action not maintainable at common law. *See Ruggiero*, 639 F.2d at 879. For this reason, it is irrelevant that the more important remedy factor points in favor of a jury trial.[12]

No right to a jury trial exists in TRIA § 201 actions seeking the attachment and execution of property belonging to a state sponsor of terrorism, including its agencies or instrumentalities.[13] For this reason, we hold without addressing the waiver finding that the district court did not erroneously deny the Defendants a jury trial.

---

[12] *Cf. Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 136 (2d Cir. 1991) (holding that attachment suits are actions at law for Seventh Amendment purposes because they primarily seek money damages).

[13] Our analysis here focuses on the common law history of actions against foreign states and their agencies or instrumentalities. TRIA § 201 also allows for lawsuits against terrorists and terrorist organizations. *See* TRIA § 201(d)(4). We need not and do not decide whether the Seventh Amendment preserves a jury right in such cases.

## CONCLUSION

*1.* We **REVERSE** the judgment on the FSIA § 1610(b)(3) claims and **REMAND** for the district court to enter judgment for 650 Fifth Ave. Co. on these claims.

*2.* We **REVERSE** the district court's orders precluding the former Alavi board members from testifying. If these cases return to trial, the court shall permit the Defendants to call them as witnesses.[14]

*3.* We **VACATE** the judgment on the TRIA § 201 claims, **AFFIRM** the court's decision denying a jury trial, and **REMAND** for a new bench trial on these claims and only these claims.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[14] If the Judgment Creditors wish to depose the former board members before trial, the court shall ensure that the Defendants make them available.

24