```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| IN RE: 650 FIFTH AVENUE AND RELATED PROPERTIES | 08 Civ. 10934 (LAP)<br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Claimant 650 Fifth Avenue's (the "Partnership") request for clarification with respect to whether it may pay its legal fees directly from the net income of the Building, imposing a new 50/50 split of the Partnership's legal fees.  (Dkt. no. 2229).  For the reasons set out below, the Court finds that it may not.

As the Partnership's initial letter (dkt. no. 2229) sets out, until relatively recently, the Partnership was owned by Alavi, eventually a 60% owner, and Assa, eventually a 40% owner.  The Partnership also acknowledged that "[f]or much of this litigation, the legal fees and expenses of the [Partnership] were paid from the distributions to its major partner, Alavi."  (Id. at 3).  Now, when the Judgment Creditors (and the Government) are the beneficiaries of the remaining 40% interest in the Partnership--and not necessarily aligned in interest with Alavi as to all things legal--Alavi seeks to

change the arrangement and allocate all legal fees of the Partnership on an artificial 50/50 basis, without regard to the nature of the specific legal fee.  Alavi urges the change on the basis of "the scarcity of funds to pay for the defense the forfeiture and TRIA claims."  (Id.)

The Partnership Agreement provides: "Except as specifically set forth in Section 2(a) of this Article XII, all actions to be taken by the Partnership shall be taken on behalf of the Partnership by the Partners having a <u>Percentage Interest of not less than 80%</u>." (Agreement, Art. XII § 1(a) (emphasis added).) Because Alavi only has a 60% "Percentage Interest" in the Partnership, it cannot take unilateral actions on behalf of the Partnership unless those actions are authorized by Section 2(a) of Article XII. The exception in Section 2(a) of Article XII, in turn, only authorizes Alavi to act on behalf of the Partnership in "prosecuting, defending and/or resolving by settlement all disputes" that "would <u>not</u> require payment by the Partnership of consideration reasonably valued at more than One Hundred Thousand Dollars ($100,000) (subject to indexing . . . )." (Agreement, Art. XII § 2(a)(iv) (emphasis added).) Even assuming that a decision to allocate payment of attorney fees in the manner that Alavi proposes constitutes an action which amounts to "prosecuting [or] defending" this action, there is no question that Alavi's proposed allocation <u>would</u> "require payment

by the Partnership of consideration reasonably valued at more than One Hundred Thousand Dollars ($100,000) (subject to indexing . . . )." Alavi does not argue otherwise. Instead, it quibbles about whether the Judgment Creditors, now in the shoes of Assa, can enforce the Partnership Agreement, calling it a "governance issue."  However one characterizes it, though, Alavi's ability to act on behalf of the Partnership is controlled by the Partnership Agreement.  Here that Agreement precludes Alavi's unilateral action.

Alavi argues that an unrelated provision concerning the effect of a transfer of ownership "by operation of law or judicial proceeding" in Article XVIII section 7 of the Partnership Agreement, under these circumstances, impairs the Judgment Creditors' ability to enforce their rights under the Agreement.  Whatever the answer to that question, Alavi does not explain how that provision overcomes Article XII's requirement for the approval of 80% of the Partnership for the entity to incur more than $100,000 in legal fees.  In short, Article XVIII section 7 does not expand Alavi's power as a 60% partner.

Alavi also argues that if the Judgment Creditors do not agree to Alavi's proposal, they will violate their fiduciary duties to Alavi and the Partnership.  Alavi fails to explain, however, how following the plain language of the Partnership Agreement, including the requirement for 80% agreement for

expenditure of more than $100,000 in legal fees, could constitute a violation of the Judgment Creditors' fiduciary duties.  If that were the case, then one might well ask if the proposed split of legal fees would constitute a breach of Alavi's fiduciary duty to the Judgment Creditors.

Finally, as noted above, Alavi attributes its proposed change to "scarcity of funds to pay for the defense against the forfeiture and TRIA claims."  That scarcity of funds, however, is Alavi's scarcity, not the Partnership's.  Indeed, as Alavi acknowledges, the Building, the Partnership's primary asset, "is in a very financially-sound position."  (See id. at 2 n. 2).  The proposed new 50/50 allocation would impose Alavi's needs unfairly on the Partnership and the Judgment Creditors.

Accordingly, the request to impose a new 50/50 allocation on payment of the Partnership's legal fees (dkt. no. 2229) is denied.

**SO ORDERED.**

Dated:    New York, New York
          April 29, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge