UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

In re 650 Fifth Avenue and Related Properties       :        08 Civ. 10934 (LAP)
                                           :

                                           :        ECF Case
                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S MOTION FOR A STAY PENDING APPEAL**

 

 

 

 

                                             GEOFFREY S. BERMAN
                                             United States Attorney for the
                                             Southern District of New York

Michael D. Lockard
Martin S. Bell
Daniel M. Tracer
Samuel L. Raymond
Assistant United States Attorneys
*- Of Counsel -*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

DISCUSSION ............................................................................................................... 1

    I.    The Government's Motion Is In Good Faith, and Not
          Vindictive or Malicious ..................................................................... 1

    II.   A Stay Pending Appeal is Warranted ................................................. 4

        A.     The Motion Presents a Substantial Case on the Merits ............................ 4

        B.     Irreparable Harm ............................................................................ 7

        C.     Injury to Other Parties .................................................................... 8

        D.     Public Interest ............................................................................... 9

CONCLUSION............................................................................................................. 10

The Government respectfully submits this reply memorandum of law in further support of its motion ("Govt. Mem.") for a stay pending appeal of the Court's Release Orders.

## DISCUSSION

### I.    The Government's Motion Is In Good Faith, and Not Vindictive or Malicious

Claimants' opposition to the motion for a stay pending appeal ("Cl. Br.") devotes considerable attention and rhetoric to the allegation that the motion is improperly motivated. (Cl. Br. 1-2, at 19-20). That allegation is false. Indeed, the argument appears to be an attempt to distract from the legal and factual issues with *ad hominem* attacks on Government counsel.

The Government seeks to uphold the law and the rights of victims. The wrongdoer's interest is forfeitable at the moment the crime giving rise to forfeiture is committed. 18 U.S.C. § 981(f); 21 U.S.C. § 853(c). Congress has mandated that forfeitable funds not be dissipated. *See*, 18 U.S.C. §§ 983(f)(7), (j), 985(d)(f); 21 U.S.C. § 853(e). The Supreme Court has affirmed that mandate, even when a criminal defendant desires to use forfeitable assets to pay attorneys' fees, and before a final judgment. *United States v. Monsanto*, 491 U.S. 600 (1989); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989). And, as Claimants themselves have argued, a stay pending appeal is mandated where "necessary to preserve the right of the appealing party to the full value of the property at issue."  (Dkt. Entry No. 1989). Here, the rental income is not only subject to forfeitable, but also represents one of the few avenues of recovery for victims of Iran state-sponsored terrorism.

Since late 2013, the Government has maintained the position that the Building and its rental income should be restrained. The Government sought just such a restraining order in 2013, and the district court—after notice and opportunity to be heard in connection with summary judgment briefing—found probable cause to restrain Claimants' assets. (Dkt. Entry No. 1023). That probable cause finding was never appealed or vacated. The district court nonetheless, at

Claimants' urging, adopted a compromise framework permitting Claimants to dissipate assets for specific purposes (*id.*), and that ruling was law-of-the-case until the district court's erroneous application of *Monsanto* and *Caplin & Drysdale* was abrogated by the Second Circuit.[1]

The Government, accordingly, has properly sought to apply that law on remand. The Government first sought an interim protective order, forthrightly disclosing Claimants' opposition to its request, to maintain the *status quo* and preserve the defendant properties. The Court ultimately disagreed with the Government's position, but noted that the "Government's . . . fighting to remunerate victims of Iranian state-sponsored terrorism is, without doubt, commendable," and that "[t]he Government's willingness aggressively to litigate its case through two separate remands from the Court of Appeals demonstrates an admirable dedication to achieving that praiseworthy goal." (Mar. 2, 2020 Order at 18). The Court invited a probable cause hearing or an *ex parte* application demonstrating probable cause and exigency (*id*. at 18 & n.7) and the Government has pursued both, despite the Claimants' express request that the Court *not* hold a probable cause hearing. (Dkt. Entry No. 2176 at 18-20). The Government filed an application based on voluminous, trial-tested evidence, showing exigent circumstances and probable cause to restrain the Building and its income. (Dkt. Entry No. 2200). It is the same record the Government will rely on at a probable cause hearing. (Dkt. Entry No. 2214 at 17 & n.10). Though such applications are statutorily *ex parte*, the Government did not object to its public filing and the Court converted the application into a motion on notice. (Dkt. Entry No. 2196). Claimants opposed (Dkt. Entry Nos. 2205, 2206), and have had notice and opportunity to be heard. Accordingly, neither an exigency finding nor live evidentiary hearing are required, but

---

[1] The restraining provisions in Second Circuit's stay orders were not based on the forfeiture judgment (Cl. Br.at 4); those orders stayed enforcement of the judgment. They were entered after contested proceedings, based on the application of *Monsanto* and *Caplin & Drysdale.*

the Government has asked that a hearing be scheduled promptly if the Court concludes otherwise. (Dkt. Entry No. 2214 at 17 & n. 10). The motion remains pending.

Claimants also argue that the Government's supposed vindictiveness is shown by the fact that litigation concerning the preservation of assets has preceded other issues to be resolved on remand. (Cl. Br. 19). This argument is decidedly hypocritical. Claimants have argued that their access to funds for attorneys' fees should be resolved first, and have asked the Government agree to stay all proceedings pending their interlocutory appeal. The Claimants themselves are in no hurry to litigate other matters until issues concerning the restraint of funds have been resolved, but try to paint the Government as vindictive for not having challenged their preference.

In short, the record demonstrates the Government's good faith, transparency, and diligence in pursuing legally and factually supported relief. Claimants try to latch on to the Government's statement that its cross-appeal from the Court's Release Orders was filed in light of the Claimants' affirmative appeal (Cl. Br. 2, 19), but cannot explain why the cross-appeal is vindictive. It is not. The Government did not initially file an appeal as a matter of discretion and efficient use of prosecutorial resources. But with Claimants having filed an affirmative appeal, that judgment has been mooted. The parties will be presenting the same or overlapping arguments in opposing Claimants' appeal as in pressing the cross-appeal.

The Government's efforts to preserve forfeitable property, after a judicial finding of probable cause following notice and an opportunity to be heard, in vindicated reliance on *Monsanto* and *Caplin & Drysdale*, and having affirmatively proposed probable-cause proceedings and submitting voluminous and detailed evidence in support of its request; is hardly vindictive or malicious. The Government is confident of the merits of the forfeiture claims regardless of what counsel represents Claimants or how much money Claimants spend on

3

lawyers. The Claimants are entitled to spend as much as they wish on attorneys' fees; but they are not entitled to spend forfeitable assets.[2] It is not vindictive or malicious for the Government to seek to preserve those assets, with appropriate process for the Claimants, so they remain available for forfeiture and victim recovery.

## II.    A Stay Pending Appeal Is Warranted

In opposing the requested stay, Claimants argue that the Government's appeal does not have a likelihood of success, that neither the Government nor the public will suffer irreparable harm absent a stay but that the requested stay poses a "critical threat" to the Claimants, and that the public interest weighs against the stay. Each of these arguments is mistaken.

### A.    The Motion Presents a Substantial Case on the Merits

Claimants argue that the Government's appeal does is not likely to succeed because this Court rejected the Government's arguments. (Cl. Br. 8). But a stay pending appeal always issues after the appellant's arguments were not rejected by the district court. Claimants' other arguments do not contradict that the appeal presents a "substantial case on the merits," *LaRouche v. Kezer*, 20 F.3d 68, 72-73 (2d Cir. 1994).

The Government's appeal presents a substantial case that § 985(d) governs only "seizures" of "real property," and not "restraining orders" concerning "interests in real property" or funds. (Govt. Mem. 11-12). Claimants cite no cases rejecting this straightforward reading of the statute. Claimants argue that differences between "real property" and "interests in real

_____

[2] To the extent Claimants presently have no untainted source of funds for attorneys' fees, that is a consequence of that fact that providing unlawful services to Iran and laundering IEEPA proceeds was the core purpose of Alavi. Assa, and the Partnership for decades. It is not a consequence of Government action. Moreover, the Government is skeptical that, if the Building's income is restrained, Claimants will be unrepresented (*contra* Cl. Br. 2) when assets worth at least hundreds of millions of dollars are at issue. Claimants also could not become unrepresented without the Court's permission. Local Civ. R. 1.4; 22 NYCRR § 1200.0, Rule 1.16(b)(3) & (d).

4

property," and between "seizures" and "restraining orders," are meaningless because the statute was intended to "codify the precepts of *James Daniel Good*." (Cl. Br. 11). But *James Daniel Good* addressed a direct seizure of real estate, not a restraint of funds. 510 U.S. at 59. Moreover, Claimants' argument ignores the specific language Congress used. Courts "presume Congress intends different terms in the same statute to have different meanings." *WNET, Thirteen v. Aereo, Inc.*, 722 F.3d 500, 507 (2d Cir. 2013). Similarly, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 (1987) (quotation and alteration omitted). Thus, "real property and interests in real property" in § 985(a) has a distinct meaning from "real property" in § 985(d); similarly, "seized" in § 985(d) has a distinct meaning from "restraining order" in §§ 985(f) and 983(j). The Government's interpretation gives effect to these fundamental principles and presents a substantial case on the merits. Claimants also, perplexingly, argue that this argument is waived on appeal (Cl. Br. 11-12), but the Government expressly argued that § 985(d) applies only to seizures of real property, and not to funds or restraining orders, which are governed by § 983(j). (Dkt. Entry No. 2181 at 15-16).

Second, Claimants argue that, independent of statutory requirements, pre-seizure (or pre-restraint) notice and opportunity to be heard was constitutionally required. (Cl. Br. 10-11). As a threshold matter, the Interim Order mirrored the Second Circuit's January 2018 order, which followed substantial adversarial process and thus satisfied *James Daniel Good*'s requirement for pre-seizure process. Moreover, *James Daniel Good* is not squarely on point with this case. In *James Daniel Good*, the government obtained a warrant of arrest *in rem* authorizing it to seize and take physical custody of the real property. That authority included "the right to prohibit sale,

. . . to evict occupants, to modify the property, to condition occupancy, to receive rents, and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property." 510 U.S. at 54. Here, the Government never had any of those rights—the Interim Order placed the Partnership and the Building under the authority of a court-appointed Trustee, but the Partnership always retained complete custody and control of the Building, subject to the Trustee's authority.[3] Unlike in *James Daniel Good*, the Government had no right to take custody, evict occupants, modify the property, receive rents, or any other rights of ownership, and never received the Building's income; it remained in the Partnership's custody and use. Thus, there is a substantial case whether *James Daniel Good* applies.

Third, Claimants argue there has never been a valid probable cause finding supporting a seizure or restraint. (Cl. Br. 12; *see also id*. at 3). But the district court previously made one. Claimants argue that the district court "did not make a separate finding" of probable cause and "a vacated decision cannot serve as the basis for a finding of probable cause." This argument is particularly puzzling. The district court granted partial summary judgment in September 2013. (Dkt. Entry No. 865). In a separate opinion, the district court found probable cause to restrain the Building and its income. (Dkt. Entry No. 1023). That finding followed inevitably from the fact that probable cause is a lower standard of proof than the absence of a genuine issue of material fact, but it was a separate finding that Claimants never appealed. Similarly, the vactur of summary judgment did not vacate the probable cause finding, because they do not rely on the same standard of proof. This, too, shows that the appeal presents a substantial case on the merits.

---

[3] Claimants argue that they were divested of all property rights. (Cl. Br. 9). The Partnership was prohibited from transferring the Building, but otherwise retained ownership and control, subject to the Trustee's authority; it was prohibited from distributing funds to the partners but otherwise retained full use the income. Alavi could not receive distributions or exercise management under the Partnership Agreement, but those are corporate rights, not real property owner's rights.

Finally, Claimants contest a stay because "the remedy for the unlawful seizure of the Building is the release of the wrongfully-withheld income generated during the seizure." (Cl. Br. 12; *id.* at 12-14). But Claimants rely on out-of-Circuit precedent while failing to address binding Second Circuit precedent. (Govt. Mem. 12-13 (citing cases)). *James Daniel Good* does not mandate any particular remedy for an unlawful *ex parte* seizure of real property, and the Second Circuit has held that funds restrained without adequate process should not simply be released. *United States v. Cosme*, 796 F.3d 226, 236 (2d Cir. 2015). Thus, even if the Building's income was restrained without adequate process, the remedy is to hold the necessary proceedings. Claimants insist that this case is governed by two decisions from other Circuits that *did not involve restraints on currency*. In *United States v. 1461 West 42nd Street, Hialeah, Fla.*, 251 F.3d 1329 (11th Cir. 2001) (Cl. Br. 13), the action was brought under 21 U.S.C. § 881(a)(6), which authorizes the forfeiture of real property, but not proceeds. In the second of Claimants' cases, *United States v. 51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d 1306 (10th Cir. 1994) (Cl. Br. 13), the action was brought under a statute authorizing the forfeiture of proceeds, but the government never obtained an order restraining income. In both cases, rents were collected only by virtue of unlawful *ex parte* arrest warrants *in rem*. 17 F.3d at 1308-09. Neither case addressed the arguments presented in the Government's appeal.

In sum, Claimants' disagreements with the Government's arguments on appeal fail to contradict that the appeal presents a substantial case on the merits.

### B.    Irreparable Harm

The Government's motion demonstrates irreparable harm, where property subject to forfeiture is subject to dissipation in the absence of a stay. (Govt. Mem. 14). Claimants' responses are irrelevant or misleading.

Claimants argue that the Government has waived any irreparable harm argument based on protective orders entered in 2016 and 2017 that permitted the dissipation of the Building's income. (Cl. Br. 14). This is a disingenuous: the Government sought to restrain the Building's income in 2013 based on the same arguments concerning the preservation of forfeitable assets under *Monsanto* and *Caplin & Drysdale*. (Dkt. Entry Nos. 911 & 972). The district court found probable cause, but rejected the mandatory preservation of forfeitable property and instead adopted a balancing test. (Dkt. Entry No. 1023). That framework, though erroneous, was the law of the case until abrogated by the Second Circuit in 2018. That forfeitable funds were dissipated under an erroneous framework imposed over the Government's objection in no way diminishes the irreparable harm from the further dissipation of assets.

In an attempt at misdirection, Claimants argue that the stay is not necessary to preserve the value of *other* property, such as the Building. (Cl. Br. 15). But the Building is not at issue, the funds are, and their dissipation represents irreparable harm. Claimants go on to argue that the value of the funds is small relative to other assets subject to forfeiture, apparently contending the Court should determine that the magnitude of the harm is relatively small, and therefore not irreparable. But even a comparatively small harm that cannot be remedied is an irreparable harm. Moreover, the value of the funds is not small: millions of dollars are at issue. These millions of dollars will be, after forfeiture, distributed to individual victims of terrorism, whose claims collectively exceed the value of the Building and other assets. To these individuals, the loss of millions of dollars of potential recovery is not a small matter.

## C.    Injury to Other Parties

Claimants argue that they will suffer injury if the stay is granted. (Cl. Br. 16-17). This argument boils down to two contentions: that Claimants need access to funds in order to pay their attorneys, and the continued restraint of the funds represents an ongoing violation of their

constitutional rights. Claimants' contention that they require access to funds for ongoing litigation in the district court (Cl. Br. 16) should be rejected: Claimants have argued for over two years that the failure to immediately release of funds would prevent their further participation in the litigation. Every time their request has been denied, Claimants continued to participate vigorously and capably. Moreover, as noted above, it is doubtful that Claimants cannot maintain or secure counsel in a litigation with valuable assets at issue.

Claimants argument that a stay should be denied because the appeal concerns due process rights should also be rejected. This argument would eviscerate *Cosme*. If Claimants were correct, a finding that funds were restrained without sufficient process would require their immediate release. But the Second Circuit has rejected that result, holding that the property should remain restrained while the required proceedings are held. 796 F.3d at 236 ("Cosme is thus not entitled to the relief he requests—*i.e.*, the immediate return of his restrained assets.")

### D.    Public Interest

Finally, the motion for a stay pending the appeal is in the public interest. (Govt. Br. 16-18). Claimants argue that the Judgment Creditors' recovery from forfeited assets is irrelevant because that is the result of a "private settlement." (Cl. Br. 18). That argument ignores the context of this case. Those Judgment Creditors have claims to the defendant property both by dint of their claims in the forfeiture case and their separate turnover actions. The settlement with the Government is a proper mechanism to avoid ancillary disputes over the priority of claims; it was not a gratuitous way of inserting terrorist victims into these proceedings.

Claimants also argue that a stay is not in the public interest because the funds at issue will go to lawyers, not to the Iranian regime. (Cl. Br. 18-19). This argument ignores the overwhelming evidence, a subset of which was submitted in support of the Government's motion for a restraining order, showing that Alavi and the Partnership were created by, controlled by,

and acted at the direction of the Government of Iran from their very inceptions. Whether those entities want to spend illicit proceeds on attorneys or otherwise does not diminish the public interest in preventing the dissipation of assets that are subject to forfeiture.

The purpose of the forfeiture statutes are to punish, deter and disempower criminals. *Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004). The Iran sanctions "deal with the unusual and extraordinary threat to the national security, foreign policy, and economy of the United States posed by the actions and policies of the Government of Iran," particularly "the proliferation of weapons of mass destruction, state-sponsored terrorist activity, and efforts to frustrate Middle East diplomacy." *United States v. Banki*, 685 F.3d 99, 108 (2d Cir. 2012) (quotations omitted). The sanctions "adopt a blunt instrument . . . intended to isolate Iran." *Id*. Forfeitures of proceeds of national security crimes involving sanctions against state-sponsors of terrorism are mandated for victim compensation, 28 U.S.C. § 20144(e)(2), and forfeited assets in this case will be distributed *pro rata* to the settling Judgment Creditors. It is in the public interest to preserve the disputed funds pending the resolution of the appeal.

## <u>CONCLUSION</u>

For the foregoing reasons, and those in the Government's initial memorandum of law, the Court should stay the Release Orders pending appeal.

In the event the Court denies the stay motion, we respectfully request that the Court rule on the Government's motion for a restraining order. That motion both establishes probable cause for forfeiture and exigent circumstances based on Claimants' intention to dissipate the funds at issue. Moreover, because the motion was made on notice to Claimants and they have opposed, the motion satisfies any requirement for pre-restraint notice and an opportunity to be heard and a hearing thus is not required. To the extent that the Court directs a hearing, the Government notes that its motion for a restraining order includes the record it intends to rely on at the hearing, and

respectfully requests that any further proceedings that the Court deems necessary be scheduled as

soon as practicable and Claimants should be directed to promptly identify their requests

concerning the scope of such a hearing.

Dated: May 20, 2020
       New York, New York

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney

                          By:    _____/s/_____

                                 Michael D. Lockard /  Martin S. Bell /
                                 Daniel M. Tracer / Samuel L. Raymond
                                 *Assistant United States Attorneys*