UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: 650 FIFTH AVENUE AND
RELATED PROPERTIES

08 Civ. 10934 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the Government's motion to stay the above-captioned action pending its appeal of the Court's prior orders directing the release of funds generated from the building at 650 Fifth Avenue (the "Building") from December 12, 2019 until the date of an eventual probable cause hearing.[1]  For the reasons detailed below, that motion is GRANTED.

I.   FACTUAL BACKGROUND

The parties here are well-versed in the facts underlying the instant motion.  A streamlined version of the relevant facts follows.

After the Court of Appeals issued its mandate on December 12, 2019 vacating this Court's prior judgment of forfeiture against

---

[1] (See Memorandum of Law in Support of Government's Motion for a Stay Pending Appeal ("Govt. Br."), dated April 29, 2020 [dkt. no. 2254]; see also Claimants' Memorandum of Law in Opposition to the Government's Motion for a Stay Pending Appeal ("Opp."), dated May 13, 2020 [dkt. no. 2262]; see also Government's Reply Memorandum of Law in Further Support of Motion for a Stay Pending Appeal ("Reply Br."), dated May 20, 2020 [dkt. no. 2270].)

Claimants Alavi Foundation and the 650 Fifth Avenue Company ("Claimants"), the Government requested that the Court immediately enter an Interim Protective Order. (See Letter Motion for Protective Order, dated December 12, 2019 [dkt. no. 2161].) The Court entered the Interim Protective Order on the same day. In relevant part, the Interim Protective Order restrained Claimants' ability to receive rental income generated by the Building, including to use such income to fund their legal defense in the present action. (See Protective Order, dated December 12, 2020 [dkt. no. 2162].)

Shortly thereafter, Claimants moved for modification of the Interim Protective Order. Claimants primarily argued that, without additional proceedings, the Interim Protective Order amounted to a pretrial seizure of their real property interest in the Building in violation of 18 U.S.C. Section 985 and the Due Process Clause of the Fifth Amendment of the Constitution. (See Memorandum of Law in Support of Motion to Modify Protective Order, dated January 8, 2020 [dkt. no. 2176].) The Court held oral argument on that motion on February 12, 2020. (See ECF Minute Entry, dated February 12, 2020.) On February 13, 2020, the Court issued a summary order finding: (1) that rental income generated by the Building constituted an interest in real property subject to the limitations set forth in 18 U.S.C. Section 985; (2) that the restraints imposed by the Interim Protective Order constituted

2

a pretrial seizure of that interest in real property; (3) that additional proceedings would be necessary to effect the restraints imposed by the Interim Protective Order; and (4) that rental income generated by the Building since December 12, 2019, the date of issuance of the Court of Appeals' mandate, should be released to Claimants until further proceedings are held. (See Order, dated February 13, 2020 [dkt. no. 2191].) The Court released an opinion explaining its reasoning on March 2, 2020. (See Opinion & Order, dated March 2, 2020 [dkt. no. 2197].)

On April 10, Claimants appealed the Court's February 13 ruling they were to receive rental income generated by the Building from the date of the Court of Appeals' mandate and not an earlier date. (See Claimants' Notice of Appeal, dated April 10, 2020 [dkt. no. 2240].) The Government filed notice of a cross-appeal of the Court's decision to vacate the Interim Protective Order several days later. (See Cross Notice of Appeal, dated April 13, 2020 [dkt. no. 2243].)

On April 29, 2020, the Government filed the instant motion seeking to stay the release of rental income--as mandated by this Court's February 13 ruling--pending the cross-appeal. (See Govt. Br. at 1.) The motion was fully briefed as of May 20, 2020. (See Reply Br., dkt. no. 2270.)

II.  LEGAL STANDARDS

Determining whether to enter a stay pending appeal is within the discretion of the District Court.  Sutherland v. Ernst & Young LLP, 856 F. Supp.2d 638, 640 (S.D.N.Y. 2012) (citations omitted). In evaluating the need for a stay, the Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009).  This test operates on a sliding scale, such that "the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other." In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (internal quotations omitted).  Generally, the first two factors are considered the most critical in the analysis.  Nken, 556 U.S. at 434.

III. DISCUSSION

In considering the balance of the four factors discussed above, the Court concludes that a stay pending the parties' various appeals is appropriate.

4

a. Probability of Success

This factor weighs strongly in favor of a stay. Notably, in this Circuit "the movant need not always show a 'probability of success' on the merits" to justify a stay. LaRouche v. Kezer, 20 F.3d 68, 72 (2d Cir. 1994). Instead, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." Natural Resources Def. Council, Inc. v. U.S. Food & Drug Admin., 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012).

The Court "is not persuaded to tacitly abandon its ruling and find that the defendants are likely to succeed on appeal," Project Vote/Voting for Am., Inc. v. Long, 275 F.R.D. 473, 474 (E.D. Va. 2011), but finds that such a substantial case exists here. The Court acknowledges that there is a paucity of precedent applying and interpreting the civil forfeiture provisions that were the subject of the February 13 order and the March 2 opinion--namely, 18 U.S.C. Sections 983 and 985--and the interplay between them. The Government, as is its right, will argue on appeal that the Court's original read of those provisions was incorrect for two reasons: first, that the relevant restraining provisions are governed by 18 U.S.C. Section 983(j) rather than Section 985, (Govt. Br. at 11); and second, that the pre-seizure procedure

5

provisions of Section 985 do not apply to "interests in real property," such as Claimants' interest in the rental income generated by the Building, (Govt. Br. at 12).  Whatever the Court of Appeals decides on those issues, it will have a material impact on the buffet of remedies available to the Government in this and other civil forfeiture proceedings. Accordingly, the Court finds that the Government's appeal presents an issue of sufficient import to warrant a stay.

     b. Irreparable Harm

    This factor militates strongly in favor of a stay.  Most importantly, the Court agrees with the Government that irreparable harm results where "assets that are the subject to a potential judgment . . . are subject to dissipation."  (See Govt. Br. at 14.)  For purposes of discerning the existence of irreparable harm, the present situation is similar to the one at issue in In re All Funds in Accounts in Names Registry Pub., Inc.  There, the Court of Appeals evaluated the Government's motion for a stay pending appeal[2] of a district judge's ruling (1) vacating a criminal

---

[2] Names Registry Pub. involved a request for a stay under 28 U.S.C. § 1355(c), which permits "the district court or the court of appeals" to "issue any order necessary to preserve the right of the appealing party to the full value of the property at issue, including a stay of the judgment of the district court pending appeal."  The Court of Appeals applied "the usual standards for determining whether to grant a stay pending appeal," 58 F.3d at 856, i.e., the same factors that the Court is balancing on the instant motion.

warrant due to lack of probable cause and (2) releasing to the defendants over $270,000 in funds seized pursuant to the faulty warrant.  See 58 F.3d 855 (2d Cir. 1995).  While on balance the Court of Appeals denied the request for a stay, it noted that irreparable harm prong of the inquiry favored a stay because the government would "be unable to recover . . . funds" released after the order vacating the warrant for lack of probable cause.  Id. at 856.[3]

Here, the Government faces the same issue.  Should this Court deny their request for a stay and release the Building's rental income to Claimants while the Government's cross-appeal is pending, and should the Court of Appeals subsequently reverse the Court's February 13 ruling, it will be impossible to put the genie back in the bottle.  Given claimants' stated intent to use the released funds to pay their mounting legal fees, (Opp. at 18-19), it is not only possible that the Government will be unable to

---

[3] Courts in this circuit have also found irreparable harm in the preliminary injunction context where "it has been shown that [a party] 'intended to frustrate any judgment on the merits' by transferring its assets out of the jurisdiction."  Local 1303-362 of Council 4 v. KGI Bridgeport Co., No. 12 Civ. 1785 (AWT), 2014 WL 555355, at *2 (D. Conn. Feb. 10, 2014) (citations omitted). This concept is admittedly less relevant because the Court does not believe Claimants are in any way operating in bad faith, but the baseline principle--that irreparable harm can exist where assets potentially available for satisfaction of a judgment may become inaccessible during the pendency of an appeal--is applicable here.

recover the funds, it is a near certainty. Accordingly, irreparable harm to the Government is all but guaranteed should the Court not enter a stay.

Claimants counter by arguing that a stay would "result in an ongoing violation of Claimants' due process rights" which itself amounts to irreparable harm. (Opp. at 17.) The Court finds that this concern does not militate strongly against a stay. While Claimants suggest that, as a per se matter, "a constitutional violation constitutes irreparable harm," Basank v. Decker, No. 20 Civ. 2518, 2020 WL 1481503, at *4 (S.D.N.Y. Mar. 26, 2020), the Court of Appeals has endorsed a decidedly more flexible inquiry based on the factual nature of the supposed violation. See Time Warner Cable v. Bloomberg, LP, 118 F.3d 917, 924 (2d Cir. 1997) (noting that, in injunction context, "it often will be more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends").

In accordance with this principle, our sister Courts have noted that findings of irreparable harm on procedural due process claims "have generally hinged on the fact that the movant could be made whole with money damages." South Lyme Property Owners Ass'n, Inc. v. Town of Old Lyme, 121 F. Supp.2d 195, 204 (D. Conn. 2000)(citing cases); see also Pinckney v. Board of Ed., 920 F. Supp. 393, 400 (E.D.N.Y. 1996). For example, in Pinckney, Judge Spatt of the Eastern District of New York evaluated whether a

preliminary injunction[4] should issue in a case where plaintiff--a former school superintendent--contended that his constitutional due process rights were violated when the school district suspended him without pay pending a determination regarding various disciplinary charges. Id. at 395. There, as Claimants do here, plaintiff argued that "where a constitutional violation is alleged, no other showing of irreparable injury is needed," id. at 399-400, and that "he [was] entitled to his salary and benefits until a hearing is held regarding the merits of the pending disciplinary charges," id. Judge Spatt disagreed, finding that the alleged due process infringement did not constitute irreparable harm because plaintiff's claim was "at its core . . . a claim for money damages" that could be ameliorated at a later date. Id. at 400.

Here, Claimants themselves acknowledge that the ongoing harm they are suffering is monetary in nature. (See Opp. at 17 ("That [rental income] still has not been released to Claimants.")) Claimants further suggest that "[a] stay would cut off [their] only source of income, thereby depriving them from funding their legal defense or their operations for months" in the absence of a

---

[4] The Court of Appeals has noted that the standard for a stay pending appeal "overlap[s] substantially with the preliminary injunction standard." Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35-38 (2d Cir. 2010). The Court accordingly relies on cases applying the preliminary injunction analysis where appropriate.

probable cause determination. (Opp. at 16.).   As a practical matter, the Court acknowledges the understandable--and likely immense--frustration of both Claimants and Claimants' counsel in this situation.  But the reasoning of cases like Pinckney leads to the conclusion that a stay would not cause injury that is "irreparable" in nature because the Building's rental income will be released down the road if the Court of Appeals affirms the Court's February ruling.  This stands in stark contrast to the risk faced by the Government: should the funds be released prior to an overruling of the February order, the Government will have no way to recover the money.

Accordingly, the Court concludes that the irreparable harm prong of the stay inquiry counsels in favor of a stay.

c.  Injury to Other Parties

Claimants will be injured if a stay is issued, which weighs against a stay.  While the Court concludes that Claimants' present inability to pay legal fees is not an irreparable harm, see supra at 9-10, that "Claimants have been unable to pay their counsel for more than twenty-eight months" is without a doubt an injury that deserves some weight, (Opp. at 17).  This is especially the case if Claimants' counsel is forced to withdraw after a stay is issued and Claimants are faced with the prospect of having to select (and orient) replacement counsel.  That outcome is by no means a certainty, however--as the Government points out, Claimants'

repeated claims that they would be unable capably to participate in this litigation save for the immediate release of funds have never panned out.  (Govt. Br. at 15.)  Moreover, the Court's concerns about the ability of Claimants' counsel to continue their representation are somewhat mollified by the fact that the Government is seeking an expedited appeal.  Thus, the Court concludes that this factor weighs against a stay, but not strongly so.

        d. Public Interest

   The Court finds that this factor weighs slightly in favor of a stay.  The Court has already noted the critically important stakes of this litigation from the Government's perspective, as the Government is "fighting to remunerate victims of Iranian state-sponsored terrorism." (See March 2 Order at 18.)  Claimants argue that the public interest in a stay is dampened by the fact that those victims' recoveries are governed by a "private settlement" with the Government.  (Opp. at 18.)  Regardless of how the arrangement with the Judgment Creditors came about, however, the public undoubtedly as a strong interest in (1) holding foreign governments accountable for acts of terror that impact American citizens and (2) making victims of terrorism whole to the fullest extent possible.  A stay pending appeal would serve to facilitate both of those interests.

On the other side of the coin, those strong interests are somewhat weakened--but not eliminated--in this case.  First, the Government acknowledges that the released rental income will be used to pay Claimants' attorneys and will not find its way back to the Iranian regime.  (See Govt. Br. at 14; see also Opp. at 18.) Thus, the Government's argument that a stay protects against the "unusual and extraordinary threat" that Iran poses to "the national security, economy, and foreign policy of the United States," (Govt. Br. at 18), is not the haymaker that it otherwise would be.  Second, Claimants note that "[t]he funds at issue represent a tiny fraction of the value of the properties the Government seeks to forfeit," (Opp. at 15), a fact the Government does not appear to dispute, (Reply Br. at 8).  While Claimants raised this issue in the context of the irreparable harm inquiry, the fact that the denial of a stay will not necessarily impact severely the Judgment Creditors' potential recovery slightly undermines the Government's case that a stay is strongly in the public interest.

On balance, the Court concludes that the public interest favors a stay.

*        *        *

To review, the Court concludes that (1) the Government's appeal presents a substantial case on the merits that supports a stay; (2) the possibility of irreparable harm to the Government should a stay not issue favors a stay; (3) the likelihood of injury

to Claimants militates slightly against a stay; and (4) the public interest weighs in favor of a stay.  Considering all four factors, and given the first two factors of the analysis--probability of success and irreparable harm--are considered the most critical in the analysis, Nken, 556 U.S. at 434, the Court concludes that a stay pending appeal is warranted here.[5]

IV.  CONCLUSION

For the foregoing reasons, the Government's motion to stay this litigation pending appeal [dkt. no. 2253] is GRANTED.

**SO ORDERED.**

Dated:   New York, New York
         June 4, 2020

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge

---

[5] The Court rejects Claimants' argument that the Government's motion should be denied because its decision to seek a stay was "improperly motivated."  (Opp. at 19-20.)  This is a hard-fought litigation where tensions between the parties will often be at a fever pitch.  Claimants have not demonstrated anything beyond that.