UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: 650 FIFTH AVENUE AND RELATED PROPERTIES

08 Civ. 10934 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the Government's motion to dismiss the claims filed by Assa Corp., the former owner of a 40% partnership interest in the 650 Fifth Avenue Company, and by Assa Corp.'s parent company, Assa Co. Ltd. (together with Assa Corp., "Assa"), related to properties subject to forfeiture in this action.[1] Assa does not oppose the Government's motion.[2] Two groups of judgment creditors do, however: (1) Edwena R. Hegna, Steven A. Hegna, Craig M. Hegna, and Lynn Marie Hegna

[1] (See Notice of Motion to Dismiss Assa Corp. and Assa Co. Ltd's Claims and to Enter a Judgment of Forfeiture, dated Apr. 24, 2020 [dkt. no. 2249]; see also Memorandum of Law in Support of the Government's Motion to Dismiss Assa Corp. and Assa Co. Ltd.'s Claims, dated Apr. 24, 2020 [dkt. no. 2250]; Reply Memorandum of Law in Support of the Government's Motion to Dismiss Assa Corp. and Assa Co. Ltd.'s Claims, dated May 22, 2020 [dkt. no. 2271].)

[2] (See Letter from Donald F. Luke, dated May 14, 2020 [dkt. no. 2266].)

(collectively, the "Hegnas")[3] and (2) Dr. Lucille Levin and the Trustee of the Jeremy Levin Trust (together, the "Levins").[4]

For the reasons described below, the Government's motion is GRANTED.

## I. Background

### 1. Factual

As alleged in the Government's Amended Complaint,[5] in the 1970s the Pahlavi Foundation of New York--an institution formed by the former Shah of Iran--purchased the land where 650 Fifth Avenue (the "Building") is currently located and constructed the Building using a $42 million loan from Bank Melli Iran, which was funded by Bank Markazi, Iran's Central Bank. (Id. ¶ 24.) After the Ayatollah Ruhollah Khomeini assumed power as Supreme Leader of the Islamic Republic of Iran in 1979, a new board at Pahlavi was installed that was controlled by the Bonyad Mostazafan va Janbazan (the "Bonyad"). (Id. ¶¶ 25-30.) Ayatollah Khomeini formed Bonyad to centralize, take possession of, and manage property expropriated by the revolutionary

---

[3] (See Response in Opposition to Motion, dated May 20, 2020 [dkt. no. 2266]; Hegna-Claimants' Corrected Response to Motion ("Hegna Opp."), dated June 19, 2020 [dkt. no. 2286]; Hegna-Claimants' Supplemental Memorandum in Opposition to United States' Reply Memorandum ("Hegna Supp. Opp."), dated June 19, 2020 [dkt. no. 2287].)

[4] (See Levin Response to Government Motion to Dismiss Assa Corp. and Assa Co. Ltd's Claims and to Enter a Judgment of Forfeiture, dated May 7, 2020 [dkt. no. 2260].)

[5] (Amended Complaint ("AC"), dated Nov. 16, 2009 [dkt. no. 51].)

government. (Id. ¶¶ 25-30.) The Pahlavi Foundation was renamed "Mostazafan Foundation of New York" and, eventually, again renamed as "Alavai Foundation of New York" ("Alavi") in 1992. (Id. ¶ 27.)

For tax purposes, Bonyad Mostazafan officials worked with Iranian officials to convert Bank Melli's mortgage interest into a partnership interest, and Bank Melli used front companies, including Assa, to conceal that partnership interest. (Id. ¶¶ 32-42.) Bank Melli, through Assa, eventually increased its interest in Alavi to 40%. (Id. ¶ 20.)

In 1993, Bank Melli transferred legal ownership of Assa to itself, using a holding company. (Id. ¶¶ 118-119.) After the Iran sanctions took effect in 1995, Bank Melli again transferred its Assa interest to two Iranian straw owners and continued managing Assa's affairs through its representatives. (Am. Compl. ¶¶ 47, 112-17.) From 1995 through 2008, Bank Melli received millions of dollars of rental income from the Building through this arrangement. (Id. ¶¶ 120-21.) Since the filing of the Government's initial complaint in 2008, income attributable to Assa's 40% interest has been deposited into accounts designated by the Government. (Mot. at 3.)

**2. Procedural**

On December 17, 2008, the Government commenced this action, and, on November 12, 2009, filed the Amended Complaint seeking

forfeiture of the interests of Assa, Alavi, and the Partnership in the Building and proceeds traceable to the Building, as well as other properties, pursuant to: (1) 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C), as proceeds of violations of the International Emergency Economic Powers Act ("IEEPA"); (2) 50 U.S.C. §§ 1701-1705; (3) the Iranian Transactions and Sanctions Regulations ("ITSRs"), 31 C.F.R. Part 560; and (4) 18 U.S.C. §§ 1956 and 1957, as property involved in, and proceeds traceable to property involved in, money laundering.

Assa filed its claims asserting its ownership interests with respect to the properties in response to the Government's initial complaint on January 20, 2009, and, on April 1, 2010, Assa filed amended claims asserting its ownership interest with respect to certain properties referenced in the Amended Complaint, specifically, the Building, 40% of the Partnership (including 40% of the net revenue realized by the Partnership), and funds seized from various bank accounts held in Assa's name (the "Defendant Properties").[6] On June 15, 2011, Assa filed an answer to the Amended Complaint contesting the claims of

[6] (Claim, dated Jan. 14, 2009 [dkt. no. 5]; Assa Limited's Amended Verified Statement of Interest in Defendant Properties, dated Mar. 26, 2010 [dkt. no. 120]; Assa Corp.'s Amended Verified Statement of Interest in Defendant Properties, dated Apr. 1, 2010 [dkt. no. 121].)

forfeiture and setting forth various affirmative defenses, including its innocent owner defense.[7]

On September 16, 2013, Judge Forrest granted summary judgment for the Government as to Bank Melli's ownership and control of Assa and the forfeitability of Assa's interests in the Partnership, the Building, and Assa's income from the Partnership as the proceeds of sanctions violations and property involved in, or traceable to property involved in, money laundering, and dismissed Assa's statute-of-limitations defense sua sponte. In re 650 Fifth Ave., No. 08 Civ. 10934 (KBF), 2013 WL 5178677, at *36-38 (S.D.N.Y. Sept. 16, 2013).

After a jury trial in 2017 as to the forfeitability of Alavi's and the Partnership's property interests in the Defendant Properties, final judgment was entered. (See Judgment ("Judgment"), dated Oct. 4, 2017 [dkt. no. 2089].) Assa timely appealed the Judgment. (See Assa Notice of Appeal, dated Nov. 3, 2017 [dkt. no. 955 in 9 Civ. 553].) The Court of Appeals affirmed various discovery rulings, see United States v. Assa Co., 774 F. App'x 51, 52 (2d Cir. 2019) (summary order), and the summary judgment as to Bank Melli's ownership and control of Assa, see Kirschenbaum v. Assa Corp., 934 F.3d 191, 200 (2d Cir. 2019). The Court of Appeals dismissed the sua sponte grant of

[7] (Answer to the Amended Complaint for Forfeiture in Rem, dated June 15, 2011 [dkt. no. 182].)

summary judgment dismissing Assa's statute of limitation defense and remanded for further proceedings. United States v. Assa Co., 934 F.3d 185, 191 (2d Cir. 2019).

After the Government commenced this action, a number of victims of state-sponsored terrorism who held unsatisfied judgments against Iran (the "Judgment Creditors") also filed turnover actions, seeking to execute on their judgments against Assa's interests under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (2002) (codified as a note to 28 U.S.C. § 1610), and Section 1610(b)(3) of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Pub. L. No. 94-583, 90 Stat. 2891 (codified, as amended, at 28 U.S.C. §§ 1602 et seq.). (Mot. at 5.) By Order dated April 18, 2014, Judge Forrest found that Assa is owned and controlled by the government of Iran and that its property interests are subject to turnover. In re 650 Fifth Ave., No. 08 Civ. 10934 (KBF), 2014 WL 1516328, at *14 (S.D.N.Y. Apr. 18, 2014). Following the 2017 trial, on October 4, 2017, Judge Forrest entered a final judgment of turnover in favor of Judgment Creditors against Assa and Assa's co-defendant, Alavi, pursuant to Section 201 of the TRIA, section 1608 of the FSIA, and other statutes. (See Judgment ("Turnover Judgment"), dated Oct. 4, 2017 [dkt. no. 925 in 9 Civ. 166].) Pursuant to the Turnover Judgment, "[a]ll right, title, and interest of Assa

Corporation and Assa Company Limited in the [Defendant] Property shall be, and the same hereby are, extinguished." (Turnover Judgment at 7.) The Assa Property includes Assa's 40% partnership interest and its interest in the previously seized funds. (Id. at 5-6.)

On April 16, 2014, this Court entered a Stipulation and Order of Settlement Between the United States and Certain Third-Party Claimants, in which the United States and additional Judgment Creditors agreed, in sum and substance, that (1) the net proceeds from the forfeiture of any of the Defendants-in-rem, including Assa, to the United States would be distributed to the Judgment Creditors on a pro rata basis based on the unsatisfied amount of the compensatory damages portions of the Judgment Creditors' judgments against the Government of Iran; (2) the Judgment Creditors would not assert that the TRIA takes precedence over the forfeiture action except as necessary to protect their interests . . . against non-settling judgment creditors; and (3) upon the completion of the distribution of funds to the Judgment Creditors, they will withdraw their claims and answers in the forfeiture action. (See Stipulation and Order of Settlement Between the United States and Certain Third-Party Claimants ("Settlement Agreement"), dated Apr. 16, 2014 [dkt. no. 1122].)

The Hegnas entered into an agreement on September 29, 2017 with the United States and Judgment Creditors pursuant to which they agreed to be held to the same terms as the Judgment Creditors under the aforementioned Settlement Agreement. (See First Codicil to the Stipulation and Order of Settlement Between the United States and Certain Third-Party Claimants ("Codicil"), dated Oct. 4, 2017 [dkt. no. 2088].)

### 3. **The Instant Motion**

In its motion, the Government seeks dismissal of Assa's innocent ownership claims to properties subject to forfeiture in this action. (Mot. 1.) The Government contends that because Assa no longer has any interest in the properties to which it filed claims it no longer has standing to maintain a claim in this action, and Assa's claims should be dismissed and a judgment of forfeiture should be entered. (Id. at 1, 10-11.) In opposition, the Levins, who hold partially satisfied judgments against Iran,[8] argue that their pending claims against the Assa property in an individual Terrorism Risk

[8] The Levins additionally argued that the Court should not rule on the Government's motion before ruling on the Levins' Motion for Summary Judgment against Assa. (See Levin Opp. at 1.) The Court denied the Levins' Motion for Summary Judgment on July 28, 2020. (Memorandum & Order, dated July 28, 2020 [dkt. no. 2296].)

Insurance Act ("TRIA") turnover action take priority over any forfeiture claims, and that because the Levins have a writ of execution against the Defendant Properties they have a priority claim over any other judgment creditor claims, as well as any claim by the Government. (Levin Opp. at 6.) They also argue that the Government is seeking impermissibly to use the Kirschenbaum turnover judgment against Assa to support a motion for a forfeiture judgment against Assa's assets. (Id. at 8.) The Hegnas assert that they have a first priority lien and that the Levins have not shown that they have "anything more than a temporary lien." (Hegna Opp. at 2-3.) They also assert that the Government is not entitled to forfeiture of the rents in the custody of a United States Marshal's account earned after December 18, 2008, because those funds are not criminal proceeds and because the Government did not identify this property specifically in its forfeiture complaint. (Id. at 5; Hegna Supp. Opp. at 4.)

## II. Legal Standard

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." United States v. Cambio Exacto, S.A., 166 F.3d 522, 526 (2d Cir. 1999). Standing is a threshold issue. "Before a

claimant can contest a forfeiture, he must demonstrate standing." Mercado v. U.S. Customs Serv., 873 F.2d 641, 644 (2d Cir. 1989)

""If the claimant cannot show a sufficient interest in the property to give him Article III standing there is no case or controversy, in the constitutional sense, capable of adjudication in the federal courts." United States v. New Silver Palace Restaurant, Inc., 810 F. Supp. 440, 442 (E.D.N.Y. 1992).

In a forfeiture proceeding, the requirements for standing are:

> 1. The claimant must have suffered an injury in fact of a legally protected interest;
>
> 2. There must be a causal connection between the conduct complained of and claimant's injury; and
>
> 3. It must be likely, as opposed to speculative, that the injury can be redressed by a favorable decision.

In re 650 Fifth Avenue and Related Properties, 2013 WL 4572527, at *3. "Generally, what is required to establish standing . . . in civil forfeiture actions is demonstration of an ownership interest or possessory interest in the seized or forfeited property." United States v. PokerStars, No. 11 Civ. 2564 (LBS), 2012 WL 1659177, at *2 (S.D.N.Y. May 9, 2012). The Government "may move to strike a claim or answer" at "any time before trial" because the claimant lacks standing. Supp. R. for

Admiralty or Maritime Claims and Asset Forfeiture Actions Supp. R. G(8)(c)(i)(B).

## III. Discussion

Before turning to the Government's motion as to Assa's claims, the Court addresses the submissions filed by the two Judgment Creditors.

### 1. The Hegnas

The Hegnas' entry into the Settlement Agreement compels denial of their opposition to the Government's motion. When the Hegnas joined the Settlement Agreement to share in the pro rata distribution of the net proceeds of forfeited property, they agreed to be "bound by the terms and conditions set forth" in the so-ordered Settlement Agreement. (See Codicil, at 3 ¶ 5.) The Government agreed to withdraw its objection to the entry of a judgment of turnover with respect to forfeited property in favor of the Hegnas because the Hegnas agreed to the Settlement Agreement's terms, including to not "take any position in this litigation adverse to the positions taken by the USAO." (Settlement Agreement at 11-12, ¶ 4.) The Hegnas' opposition to the Government's motion here is clearly a position adverse to

the Government's.[9] The Settlement Agreement therefore bars the Hegnas' opposition.

Apart from the Settlement Agreement bar, the Hegnas' claim fails on the merits. The Hegnas' contention that the Government cannot effect a forfeiture of the funds on deposit in the United States Marshal's account because the "'Defendant Properties' specifically identified in the complaints and judgments do not include the funds in the Account" and such accounts must be mentioned "by specific allegation in its civil forfeiture complaint" is belied by the Government's Amended Complaint, which seeks forfeiture of "[a]ll right, title, and interest of [Assa] [and] Bank Melli Iran. . . in 650 Fifth Avenue Company . . . and all property traceable thereto." (See e.g., Gov. Compl. ¶ 3(a) (emphasis added).) This includes the distribution of income due to Assa from its partnership interest. Moreover, and as an additional basis for denial of the Hegnas' opposition, the Hegnas' argument that the post-seizure rents collected do not constitute forfeitable proceeds of a crime has been rejected by this Court previously.

[9] The Hegnas assert in their supplemental brief that the Settlement Agreement is not effective "because certain parties, including the Hegna family, have been unable to reach an agreement among themselves and with the Hegna family on the required Second Codicil that establishes the parties' pro rata shares," (Hegna Supp. at 5), but the Codicil does not appear to contemplate such a requirement to become effective.

Accordingly, the Hegnas' opposition is denied.

**2. The Levins**

The Levins principally contend that the Government's forfeiture motion seeks improperly to "piggyback[] on the Kirschenbaum Judgment Creditors' turnover judgment against Assa" and that the Levins' claim under TRIA is superior to the Government's claim to Assa's property under the forfeiture statute. (Levin Opp. at 4, 11-13.)

The Court finds these arguments to be meritless. First, the Court's October 4, 2017 Judgment explicitly extinguished "all right, title, and interest" of Assa Corporation and Assa Company Limited in the Assa Property. (See Judgment, dated Oct. 4, 2017 [dkt. no. 940 in 9 Civ. 00165].) Moreover, the Court of Appeals affirmed the Turnover Judgement as to Assa. See Kirschenbaum, 934 F.3d at 198 ("Kirschenbaum held that the same record 'demonstrates as a matter of law that Bank Melli owned and controlled Assa even after 1995.' Although Assa was not a party to that appeal and is not bound by this finding, none of its arguments persuade us to reach a contrary conclusion. Both Assa entities are owned and controlled by Iran. They are Iran's alter egos as a matter of law and are therefore foreign states under the FSIA." (quoting Kirschenbaum v. 650 Fifth Ave. & Related Properties, 830 F.3d 107, 136 (2d Cir. 2016)). Accordingly, Assa no longer has a legal interest in the

Defendant Property, which is the basis for the Government's motion for forfeiture.

Second, the Court of Appeals already has rejected the Levins' reading of TRIA's "notwithstanding clause" that would consider their TRIA action an outstanding claim that prevents the entry of a judgement of forfeiture as to Assa. Levin v. United States, 774 F. App'x 49, 50 (2d Cir. 2019) (summary order) ("The Levins additionally argue that the Terrorism Risk Insurance Act ("TRIA") preempts Rule G(5) in this action. They rely on § 201 of TRIA, which states that '[n]otwithstanding any other provision of law, . . . the blocked assets of [a] terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy [a] judgment [against the terrorist party].' But a different issue is before us: whether the Levins can seek a distribution of property seized by the Government. We do not understand TRIA § 201's 'notwithstanding' clause to extend so far.") Moreover, the Court also observes that the Levins hold no TRIA judgment but only claims that they are currently pursuing.

The Government's citation of Smith ex rel. Estate of Smith v. Federal Reserve Bank of New York, 346 F.3d 264 (2d Cir. 2003), is persuasive. In Smith, the Court of Appeals found that there was no conflict between the TRIA and the President's

confiscation authority under IEEPA to confiscate blocked Iraqi assets. Id. at 271-72. There, the Court found that this was the case even though it rendered the assets unavailable for execution by the Plaintiffs under TRIA. Id. Accordingly, although forfeiture would render Assa's properties unavailable for execution under TRIA, it does not follow that TRIA's "notwithstanding" clause trumps the Government's ability to effect forfeiture here.

Accordingly, the Levins' opposition is denied.

**3. Assa's Claims**

For many of the same reasons discussed above, Assa lacks standing to pursue its claims to the Defendant Properties. The Turnover Judgment categorically extinguished "all right, title, and interest" of Assa in the Defendant Properties, (see Judgment), and the Court of Appeals solidified the termination of Assa's ownership interest, Kirschenbaum, 934 F.3d at 198, a decision from which Assa did not appeal.

Because Assa no longer has any legal interest in the Defendant Properties, it lacks standing to maintain its claim. Accordingly, Assa's forfeiture claim and answer, including its innocent owner claim, is dismissed.

## IV. Conclusion

For the reasons described above, the Government's motion to dismiss Assa Corp and Assa Co. Ltd.'s claims (dkt. no. 2249) is GRANTED. The Clerk of the Court shall close the open motion.

The Government, after conferring with the other parties, shall submit a proposed form of final judgment.

**SO ORDERED.**

Dated: New York, New York
March 31, 2021

Loretta A. Preska

LORETTA A. PRESKA
Senior United States District Judge