UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: 650 FIFTH AVENUE AND
RELATED PROPERTIES

08 Civ. 10934 (LAP)
09 Civ. 4614 (LAP)
09 Civ. 553 (LAP)
09 Civ. 4784 (LAP)
09 Civ. 564 (LAP)
09 Civ. 165 (LAP)
09 Civ. 166 (LAP)
10 Civ. 2464 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the Peterson Judgment Creditors'
("Peterson Creditors") motion for a preliminary injunction
pursuant to Rule 65 of the Federal Rules of Civil Procedure.[1]
The Peterson Creditors seek to restrain Defendant 650 Fifth
Avenue Company ("650 Fifth") from paying to Defendant Alavi
Foundation ("Alavi") Alavi's distributive share of rental income
generated by the building located at 650 Fifth Avenue, New York,
New York (the "Building") from January 5, 2018 through October
13, 2020, until a final judgment in this action. The Peterson

---

[1] (Motion for Temporary Restraining Order and Motion for
Preliminary Injunction, dated Apr. 29, 2021 [dkt. no. 2345];
Memorandum of Law in Support of Temporary Restraining Order and
Preliminary Injunction ("Peterson Mot."), dated Apr. 29, 2021
[dkt. no. 2346].) Unless otherwise noted, docket entries
referenced in this order correspond to 08 Civ. 10934.

Creditors' motion follows the Court of Appeals' issuance of a per curiam opinion that affirmed this Court's finding of probable cause for forfeiture of the Building, as well as other assets owned by Alavi and 650 Fifth, and ordered release of the rental income generated from the Building from January 5, 2018 until October 13, 2020.  In re 650 Fifth Ave. Co., 991 F.3d 74, 80 (2d Cir. 2021).

One day before the Court of Appeals' mandate issued, the Peterson Creditors filed an application with this Court seeking temporarily to restrain, and preliminarily enjoin, release to Alavi of that rental income.  The Court temporarily restrained that rental income's release to allow the parties to submit briefing on the Peterson Creditors' application for a preliminary injunction.  Alavi opposed the preliminary injunction,[2] and the Peterson Creditors and Hegna Judgment Creditors filed replies in support of the Peterson Creditors' application.[3]  The Court held a show cause hearing on May 7, 2021, during which it heard oral argument.

_____

[2] (Alavi Foundation and 650 Fifth Avenue Company's Opposition to the Peterson Creditors' Motion for a Temporary Restraining Order and Preliminary Injunction ("Alavi Opp."), dated May 4, 2021 [dkt. no. 2352].)

[3] (Peterson Judgment Creditors' Reply Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction ("Peterson Reply"), dated May 6, 2021 [dkt. no. 2356]; Hegna Claimants' Reply to Alavi Foundation and 650 Fifth

For the reasons stated below, the Peterson Creditors'
application for a preliminary injunction (dkt. nos. 2345, 2346)
is <u>DENIED</u>, and the Court's April 30, 2021 Order (dkt. no. 2347)
is <u>VACATED</u>.

I.    <u>Factual Background</u>

Because the facts and circuitous procedural history of
these cases have been recounted at length in prior orders,[4] the
Court summarizes only the context most relevant to the instant
application.

These consolidated proceedings began in 2008, when the
Government commenced a civil forfeiture action against Assa
Corporation's ("Assa") properties.  On November 16, 2009, the
Government amended the forfeiture complaint to include claims
against properties belonging to Defendants, including Alavi's
60% interest in 650 Fifth Avenue and the Building. (<u>See</u> Amended
Compl., dated Nov. 12, 2009 [dkt. no. 51].)

Thereafter, various parties holding judgments against Iran
brought suits seeking to attach and execute against Defendants

_____

Avenue Company Response to Peterson Motion for Temporary
Restraining Order and for Preliminary Injunction, dated May 6,
2021 [dkt. no. 2355].)

    [4] (<u>See e.g.</u> Opinion & Order, dated Mar. 2, 2020 [dkt. no.
2197]); <u>In re 650 Fifth Ave. & Related Properties</u>, No. 08 CIV.
10934 (LAP), 2020 WL 995886, at *3 (S.D.N.Y. Mar. 2, 2020); <u>In
re 650 Fifth Ave. & Related Properties</u>, 934 F.3d 147, 153-156
(2d Cir. 2019).

Assa, Alavi, and 650 Fifth's assets in satisfaction of those judgments.[5]  The Peterson Creditors, who hold unsatisfied money judgments against Iran for Iran's role in the October 23, 1983 terrorist bombing of a United States Marine Barracks in Beirut, filed their initial complaint on March 1, 2010. (Compl., dated Mar. 1, 2010 [dkt. no. 1 in 10-cv-1627].)  The Peterson Creditors seek a judgment of turnover of certain properties of the Defendants in partial satisfaction of their money judgment against Iran pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA").  The Peterson Creditors filed a Second Amended Complaint on April 13, 2012, identifying Defendants' properties to be turned over including, inter alia, the real property located at 650 Fifth Avenue, New York, New York with improvements and attachments thereon and all property traceable thereto. (See Second Amended Compl., Ex. 1 to the Decl. of Liviu Vogel, dated Apr. 13, 2012 [dkt. no. 2345-2].)

In April 2010, the Government and Defendants agreed upon a consent order that appointed a monitor and permitted

---

[5] To settle disputes among themselves, in 2014 the Government and various judgment creditors entered into a settlement agreement according to which the judgment creditors agreed not to take any position in this consolidated litigation adverse to the positions taken by the Government in exchange for pro rata distributions of any recovery.  (Stipulation & Order of Settlement Between the United States and Certain Third-Party Claimants, dated Apr. 16, 2014 [dkt. no. 1122].)

distributions from the Building's rental income to Alavi, which allowed Alavi to spend such distributions subject to the monitor's review and approval to ensure that those proceeds were not used for improper purposes. (Consent Order for Appointment of Monitor Pursuant to 18 U.S.C. § 983(i), dated Apr. 29, 2010 [dkt. no. 136].)

In 2017, Judge Katherine Forrest of this Court held a jury trial as to the forfeitability of Alavi's and 650 Fifth Avenue's interests.  Judge Forrest simultaneously held a bench trial on claims by the judgment creditors for turnover of certain property, including the Building, pursuant to Section 201(a) of the TRIA and Section 1610(b)(3) of the Foreign Sovereign Immunities Act of 1976 ("FSIA").  On June 29, 2017, the Court entered a Memorandum and Opinion finding that the judgment creditors had proven entitlement to attach and execute upon the Defendant Property in partial satisfaction of those judgments pursuant to TRIA and, in the case of 650 Fifth Avenue, also pursuant to § 1610(b)(3) of the FSIA.  (See Opinion & Order, dated June 29, 2017 [dkt. no. 1895]; Kirschenbaum v. 650 Fifth Ave., 257 F. Supp. 3d 463, 466 (S.D.N.Y. 2017), vacated and remanded sub nom. In re 650 Fifth Ave. & Related Properties, 934 F.3d 147 (2d Cir. 2019), and rev'd and remanded sub nom. Havlish v. 650 Fifth Ave. Co., 934 F.3d 174 (2d Cir. 2019).)  On October 4, 2017, the Court entered a judgment of forfeiture in favor of

the Government on the basis of the jury verdict as to the forfeitability of Alavi's and 650 Fifth Avenue's interests. (Judgment, dated Oct. 4, 2017 [dkt. no. 2089].)  The Court also issued an amended protective order which terminated Alavi's ability to access funds from the Building.  (Amended Protective Order and Monitor Order, dated Sept. 29, 2017 [dkt. no. 2078].)

On August 9, 2019, the Court of Appeals issued opinions vacating the 2017 posttrial judgments with respect to Alavi and the 650 Fifth and remanding for further proceedings, while affirming the Turnover Judgment with respect to Assa.  See In re 650 Fifth Ave., 934 F.3d 147, 173-74 (2d Cir. 2019); Havlish v. 650 Fifth Ave. Co., 934 F.3d 174, 184 (2d Cir. 2019).  When the mandate issued in the forfeiture action, the Government sought, and this Court issued, a protective order that continued restrictions prohibiting Defendants from accessing the Building's income. (Protective Order and Trustee Order, dated Dec. 12, 2019 [dkt. no. 2162].)

On February 13, 2020, the Court modified its prior protective orders by releasing Building rental income generated between December 12, 2019 and the date of any eventual judicial determination of probable cause of forfeiture, (Order, dated Feb. 13, 2020 [dkt. no. 2191] ¶ 5), and on March 2, 2020 issued an Opinion as to its February 13 decision, (Opinion & Order, dated Mar. 2, 2020 [dkt. no. 2197]).  On March 5, 2020, the

Government presented its basis for probable cause in an ex parte application for a restraining order preventing the dissipation of rents from the Building that had been withheld from Alavi and 650 Fifth since January 5, 2018. (See Memorandum of Law in Support of the Government's Ex Parte Application for a Restraining Order, dated Feb. 28, 2020 [dkt. no. 2200].)

In April 2020, Alavi appealed the Court's February 13, 2020 Order and March 2, 2020 Opinion & Order on the issue of whether it should be entitled to the release of rental income generated since January 5, 2018, as opposed to the date of the December 2019 mandate. (Notice of Appeal, dated Apr. 10, 2020 [dkt. no. 2240].)

On October 13, 2020, the Court held a hearing pursuant to 18 U.S.C. § 985(d)(1) and determined that probable cause existed to forfeit the Building. After the Government and Alavi cross-appealed that decision, on March 9, 2021, the Court of Appeals affirmed the Court's finding of probable cause but modified this Court's order in part by releasing to Alavi its share of the Building rental income generated from January 5, 2018 through October 13, 2020 because the Government had not made a probable cause showing before seizing the property. In re 650 Fifth Ave. Co., 991 F.3d 74, 80 (2d Cir. 2021).

On April 29, 2021, the Peterson Creditors sought a temporary restraining order and preliminary injunction from this

Court to prevent release of Alavi's share of the Building rental income generated from January 5, 2018 through October 13, 2020, (see Motion for Temporary Restraining Order and Motion for Preliminary Injunction, dated Apr. 29, 2021 [dkt. no. 2345]; Peterson Mot.).  The Court granted a temporary restraining order to allow briefing, (see Order to Show Cause for Temporary Restraining Order and Preliminary Injunction, dated Apr. 30, 2021 [dkt. no. 2347]), and held a show cause hearing.  With Alavi's consent,[6] the temporary restraining order was extended to May 17 to permit the Court to issue this opinion.

## II.  **Legal Standards**

"A decision to grant or deny a preliminary injunction is committed to the discretion of the district court."  Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 78 (2d Cir. 1994) (citation omitted).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  Sussman v. Crawford, 488 F.3d 136, 139–40 (2d Cir. 2007) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)) (alteration in original).

"The standard[s] for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal

---

[6] (Letter from Daniel S. Ruzumna, dated May 13, 2021 [dkt. no. 2359].)

Rules of [Civil] Procedure are identical." <u>Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6</u>, 368 F. Supp. 3d 723, 726 (S.D.N.Y. 2019) (quoting <u>Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.</u>, 190 F.Supp.2d 577, 580 (S.D.N.Y. 2002)). "To obtain such relief, the moving party must 'demonstrate[ ] (1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party.'" <u>Id.</u> (quoting <u>Weaver v. Schiavo</u>, 750 F. App'x 59, 60 (2d Cir. 2019).

### III. **Discussion**

#### A. **The Court of Appeals' Mandate**

As an initial matter, Alavi and the Peterson Creditors disagree about whether the Court of Appeals' mandate already resolves the issue before the Court.

It is axiomatic that "[a] district court must follow the mandate issued by an appellate court." <u>Havlish v. 650 Fifth Ave. Co.</u>, 934 F.3d 174, 181 (2d Cir. 2019) (quoting <u>Puricelli v. Republic of Argentina</u>, 797 F.3d 213, 218 (2d Cir. 2015)). "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the

appellate court's mandate." <u>Bronx Household of Faith v. Bd. of
Edu. of City of New York Cmty. Sch. Dist. No. 10</u>, 855 F. Supp.
2d 44, 64 (S.D.N.Y. 2012) (quoting <u>Yick Man Mui v. United
States</u>, 614 F.3d 50, 53 (2d Cir.2010)).  Accordingly, "where an
issue was ripe for review at the time of an initial appeal but
was nonetheless foregone, the mandate rule generally prohibits
the district court from reopening the issue on remand unless the
mandate can reasonably be understood as permitting it to do so."
<u>United States v. Ben Zvi</u>, 242 F.3d 89, 95 (2d Cir. 2001).

        The Peterson Creditors, on one hand, argue that the mandate
rule does not preclude the Court from enjoining release of the
Building's rental income to Alavi because the Peterson Creditors
did not make any TRIA arguments to the Court of Appeals,
disclaimed injunctive relief arguments in their Court of Appeals
briefing, and never sought prior injunctive relief in this case.
(Peterson Reply. at 2-3 (citing Ex. 7 to Decl. of Liviu Vogel
[dkt. no. 2345-8]).)  They further assert that the Court of
Appeals' decision only addressed whether the Building was seized
and any remedy for any period of unlawful seizure.  (Peterson
Reply at 2-3.)  Alavi argues, on the other hand, that the Court
of Appeals already has considered the Peterson Creditors'
position, set forth in the Peterson Creditors' appellate brief,
which, in arguing against release to Alavi of any rental income,
warned that Alavi would "immediately dissipat[e]" any income and

ultimately reduce the amount of any future recovery. (Alavi
Opp. at 7.) Alavi argues that the Court of Appeals impliedly
rejected this dissipation argument when it ordered that "the
rental income generated between January 5, 2018, and October 13,
2020, is to be released to Claimants," and thus the mandate
precludes the Court from enjoining release of the rental income
on this basis. (Alavi Opp. at 7.)

The Court does not read the Court of Appeal's mandate to
sweep as broadly as Alavi insists it does. Although the Court
of Appeals' decision ultimately ordered released the January
2018 through October 2020 rental income to Alavi, the Court
ordered this relief upon determining that Alavi's rental income
had been seized for a period without a showing of probable cause
and after determining that a return of rent remedy was
appropriate. Although the Peterson Creditors warned the Court
of Appeals that release of income would lead to dissipation of
Alavi's available assets, it did so in the context of the
Government's forfeiture action, not the TRIA action. Indeed,
the Court of Appeals' opinion made hardly a reference to the
judgment creditors and, because the Peterson Creditors never
applied for a preliminary injunction, that form of relief was
not ripe for the Court of Appeals' review.

Accordingly, because the Peterson Creditors' entitlement to preliminarily enjoin release of Alavi's income on the basis that Alavi would dissipate these assets was not an issue either "expressly or implicitly part of the decision of the court of appeals," this Court "may consider" these matters now. United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991).

**B. The Court's Power to Issue a Preliminary Injunction**

Alavi contends that the Supreme Court's decision in Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), and its progeny bars the issuance of a preliminary injunction that enjoins distribution of Alavi's rental income. The Court agrees.

In Grupo, Grupo Mexicano de Desarrollo, S.A. ("GMD"), a Mexican holding company, issued notes that ranked pari passu in priority of payment with GMD's other debt. Id. at 310. After GMD missed an interest payment, holders of those notes accelerated the principal amount due and brought suit for breach-of-contract damages. Id. Noteholders also alleged that GMD was preferencing payment by transferring certain other assets to other creditors. Id. at 312. In addition to damages, noteholders sought a preliminary injunction restraining GMD from transferring its interests in certain other notes and receivables to other creditors, arguing that GMD was on the

brink of insolvency and that GMD was dissipating its assets by making these allegedly preferential transfers. Id. The question before the Court in Grupo was whether, "in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." Id. at 310.

The Court held that the district court lacked the power to issue a preliminary injunction and thus could not prevent GMD from disposing of its assets pending adjudication of a contract claim against it for money damages. Because the Judiciary Act conferred upon federal courts jurisdiction over all suits in equity, the Court found the operative question was whether the relief the noteholders sought in Grupo was traditionally accorded by courts of equity. Id. at 318-19. The Court held that district courts did not have the power to issue preliminary injunctions preventing a defendant from transferring assets without an asserted lien or equitable interest because "such a remedy was historically unavailable from a court of equity." Id. at 333. In doing so, the Court applied "the well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." Id. at 321.

Courts within this Circuit have applied <u>Grupo</u> to bar
preliminary injunctions sought by judgment creditors who bring
actions to enforce their money judgments against third parties
(<u>i.e.,</u> those other than the judgment debtor).   Alavi points to,
among other cases, <u>JSC Foreign Economic Association</u>
<u>Technostroyexport v. International Development & Trade Services,</u>
<u>Inc.,</u> 295 F. Supp. 2d 366, 370 (S.D.N.Y. 2003).   In <u>JSC</u>, the
plaintiff creditor sought a preliminary injunction freezing the
assets of defendants, who were alleged to be alter egos of the
judgment debtor and to have fraudulently conveyed property to a
third party.   <u>Id.</u> at 373-74.   The Court concluded that the alter
ego action was an action for money damages, even though it was
brought as part of an action to enforce an existing judgment,
and that the Court lacked the power to impose a preliminary
injunction as a result:

> Because the plaintiff's action is one for money damages,
> and because the plaintiff asserts no lien or equitable
> interest in the assets it seeks to restrain, this Court
> lacks the power to grant the preliminary injunction it
> seeks.  The plaintiff's argument that <u>Grupo Mexicano</u> is
> inapplicable here because its action is primarily
> equitable in nature is unpersuasive.   The equitable
> relief that the plaintiff seeks, including the setting
> aside of alleged fraudulent conveyances, is incidental
> to, and indeed contingent upon the success of, the
> plaintiff's alter ego action.  Before the plaintiff can
> seek equitable relief in enforcing the prior judgment,
> it must prove the legal liability of [defendants] as
> alter egos. <u>See</u> <u>Zenith Radio Corp. v. Hazeltine</u>
> <u>Research, Inc.</u>, 395 U.S. 100, 112, (1969) (finding

injunction issued against alleged alter ego of judgment debtor improper where alter ego status had not yet been litigated). Thus, the final relief that the plaintiff seeks is the imposition of legal liability on [defendants] for the money judgment against [the judgment debtor]; the equitable relief the plaintiff seeks is designed to effectuate the collection of money in satisfaction of that alleged legal liability. A preliminary injunction in this case would be issued in aid of the collection of a money judgment, not final equitable relief, an outcome barred by Grupo Mexicano.

Id. at 389.

As in JSC, the Peterson Creditors must first establish legal liability of Alavi as an agency or instrumentality of Iran before it can execute upon Alavi's assets to satisfy its unpaid judgment against Iran. The Peterson Creditors argue that their claims under TRIA are distinct here because "TRIA establishes statutory liability of agencies and instrumentalities of a terrorist state and does not require a new money judgment against a third-party found liable under alter ego or other legal theories like corporate veil piercing." (Peterson Reply at 4 n. 2.) The Court does not find this distinction persuasive. As with claims under TRIA, a claimant seeking to impose liability for an unpaid judgment under an alter ego theory of liability need not show that the alter ego was independently liable for the underlying conduct that gave rise to the judgment. Indeed, "[t]he Court of Appeals observed that once alter ego status is established, 'the previous judgment is

15

then being enforced against entities who were, in essence, parties to the underlying dispute; the alter egos are treated as one entity.'" JSC, 295 F. Supp. 2d at 376 (quoting William Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d 131, 143 (2d Cir. 1991)).  Accordingly, the Court does not agree that the Peterson Creditors can avoid application of Grupo on the basis that "TRIA does not recognize any juridical distinction between a terrorist state and its agencies or instrumentalities."  (Peterson Reply at 4 (citing Weininger v Castro, 462 F. Supp 2d 457, 485-86 (S.D.N.Y. 2006) (emphasis omitted).)

The Peterson Creditors contend that their preliminary injunction application fits into an exception to Grupo's rule because "the objective of the turnover action is of the same character as the preliminary injunction."  (Peterson Reply at 5.)  In Grupo, the Supreme Court recognized that its prior decisions, specifically De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212 (1945), carved out such an exception.  De Beers is not applicable here, however.  The Grupo Court noted that, in De Beers, the government brought suit against defendants "seeking equitable relief against alleged antitrust violations."  Grupo 527 U.S. at 326 (emphasis added). Here, by contrast, seeking to enforce an already-obtained, unpaid money judgment against a third-party amounts to legal

relief.  See Fischer Diamonds, Inc. v. Andrew Meyer Designs,
L.L.C., No. CV-06-2737 (CPS), 2006 WL 1720431, at *2 (E.D.N.Y.
June 21, 2006) ("Although plaintiff here has already obtained a
judgment against Andrew Meyer LLC, this circumstance does not
change the legal character of the instant action against
defendants AMD, AMJ and Meyer.").

As Alavi points out, the Court of Appeals' characterization
of TRIA claims, including in the context of this litigation,
appears to confirm the determination that these claims are legal
in nature.  In determining whether a right to a jury trial
attaches to a TRIA action seeking turnover of property belonging
to an agency or instrumentality of a state sponsor of terrorism,
the Court of Appeals observed that "a TRIA § 201 claim is not a
suit for a judgment, but rather one to enforce a judgment
already obtained."  Havlish v. 650 Fifth Ave. Co., 934 F.3d 174,
184 (2d Cir. 2019).  Although the Court determined that no jury
trial right attached to such claims because citizens
historically lacked the ability to sue foreign states or their
agencies and instrumentalities, "the more important remedy
factor points in favor of a jury trial."  Id. at 184-85.  In
doing so, the Court cited Passalacqua, 933 F.2d at 136, where
the Court of Appeals held that "attachment suits are actions at
law for Seventh Amendment purposes because they primarily seek

money damages." Havlish, 934 F.3d at 184 n.12 (citing

Passalacqua, 933 F.2d at 136).

The Peterson Creditors also have asserted that they have

served writs of execution on the U.S. Marshal in the Southern

District of New York which has provided them with a lien upon

Alavi's rental income and allows for a preliminary injunction

restraining distribution of that income.  (Peterson Reply at 5-

6.)  In Grupo, the Court distinguished its holding from its

prior decision in United States v. First National City Bank, 379

U.S. 378 (1965), where the Court upheld the issuance of a

preliminary injunction, including because in First National the

plaintiffs had asserted an equitable lien on the property (and

because the statute there specifically authorized the issuance

of an injunction).  See Grupo, 527 U.S. 308, 325 (1999) (citing

United States v. First Nat. City Bank, 379 U.S. 378, (1965)).

The Peterson Creditors also point to the Grupo Court's citation

of Adler v. Fenton, 65 U.S. 407 (1860), where the Court

described how a creditor obtains a vested pre-judgment right in

the property of a debtor.  As evidence of this lien on Alavi's

rental income, the Peterson Creditors cite their Amended

Complaint and their Opposition to the Hegna's Cross-Motion for

Partial Summary Judgment.  (Peterson Reply at 5 (citing Am.

Compl., Ex. 1 to the Decl. of Liviu Vogel, dated Apr. 13, 2012

[dkt. no. 2345-2], at 6-8. and Peterson Plaintiffs' Memorandum

of Law in Opposition to Hegna Plaintiffs' Cross-Motion for Partial Summary Judgment Regarding Priority, dated Nov. 4, 2014 [dkt. no. 1243]).) However, the portions of the Amended Complaint to which the Peterson Creditors cite describe that a Writ of Execution was issued and served as to the assets of the Judgement Debtors, defined as "the Islamic Republic of Iran" and the "Ministry of Information and Security of Iran." (Am. Compl. 1.) Moreover, the Peterson Creditors' June 12, 2008 writ of execution is directed to the "Islamic Republic of Iran, who has an interest in the accounts held by Citibank, N.A.," and the "Islamic Republic of Iran and/or the Iranian Ministry of Information and Security." (Ex. B. to Decl. of Liviu Vogel, Writ of Execution and Receipt, dated June 12, 2008 [dkt. no. 1243-3]; Ex. C. to Decl. of Liviu Vogel, Writ of Execution and Receipt, dated Oct. 17, 2008 [dkt. no. 1234-4].) Because these are writs of execution directed against Iran, not a lien secured against Alavi's rental income, Grupo still bars issuance of a preliminary injunction here.

Accordingly, the legal relief that the Peterson Creditors seek precludes issuance of an order enjoining release of rental income to Alavi.

**C. The Peterson Creditors' Motion for a Preliminary Injunction**

Even if the Court did hold the power to issue the applied-for injunction, the Court finds that the Peterson Creditors' application to enjoin disbursement to Alavi of rental income generated from the Building is, in any case, not at all timely. "Significantly, a court must consider a plaintiff's delay in seeking relief when analyzing whether the plaintiff will suffer irreparable harm in the absence of relief." Monowise Ltd. Corp. v. Ozy Media, Inc., No. 17-CV-8028 (JMF), 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018) (Furman, J.) (citation omitted). "There is no bright-line rule for how much delay is too much, but courts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'" Id. (quoting Gidatex, S.r.L. v. Campaniello Imports, Ltd., 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)).

As Alavi points out, during much of the pendency of this litigation Alavi has received its regular distributions of rental income from the Building and dissipated that rental income (subject to approval by the Court-appointed monitor). The Peterson Creditors' instant application for preliminary relief enjoining distribution to Alavi of rental income from the Building marks the first such attempt to do so--nearly thirteen years after these consolidated cases commenced and over eleven

years after the Peterson Creditors filed their initial complaint.

The Peterson Creditors' attempts to excuse this delay are unpersuasive. The Settlement Agreement that the Peterson Creditors (and other judgment creditors) entered into with the Government provided that the Peterson Creditors "shall not take any position in this litigation adverse to the positions taken by the [government]." (Stipulation & Order of Settlement Between the United States and Certain Third-Party Claimants, dated Apr. 16, 2014 [dkt. no. 1122].) The Peterson Creditors do not explain how enjoining the release of rental income to Alavi through the end of this litigation could be construed as adverse to the Government's action seeking forfeiture of Alavi's interest in the building. Indeed, the Peterson Creditors are not claiming that they are in the breach of their settlement agreement, which is purportedly still binding, by filing the instant preliminary injunction application. The Peterson Creditors' explanation for not filing a preliminary injunction application for over two years after they filed this action but before entering into the settlement agreement with the Government is not persuasive, either. In light of this delay, the Court finds that the Peterson Creditors have not made the requisite showing of irreparable harm.

Accordingly, the Court lacks the power to issue a preliminary injunction in this case, where the Peterson Creditors seek a money judgment and claim no lien or equitable interest in the assets sought to be restrained. Moreover, even if the Court had the power, the Court would not exercise its discretion to grant a preliminary injunction because the Peterson Creditors have failed to make the requisite showing of irreparable injury.

### IV. Conclusion

For the foregoing reasons, the Peterson Creditors' application for a preliminary injunction (dkt. nos. 2345, 2346) is DENIED, and the Court's April 30, 2021 Order (dkt. no. 2347) is VACATED.

The Clerk of Court shall close the open motion (dkt. no. 2345).

The Parties, including the Government, shall confer and propose by letter, not later than May 28, 2021, how they propose to proceed in light of the Court of Appeal's issuance of its Mandate. (See dkt. no. 2348.)

**SO ORDERED.**

Dated:  New York, New York
        May 17, 2021

LORETTA A. PRESKA